Annie Ticknor (Bar No. 340510)
annie.ticknor@haynesboone.com
HAYNES AND BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
T: (949) 202-3000
F: (949) 202-3001

Specially Appearing for Defendant
LAIRD SUPERFOOD, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWRENCE SCHALLERT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>LAIRD SUPERFOOD, INC.,<br><br>Defendant. | Case No.: 2:25-cv-12407-SPG-PVC<br><br>Assigned to Hon. Sherilyn Peace Garnett U.S. District Judge<br><br>**DEFENDANT LAIRD SUPERFOOD, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with Declaration of Annie Ticknor, and (Proposed) Order.]*<br><br>**Date: 4/8/2026**<br>**Time: 1:30 p.m.**<br>**Courtroom: 5C** |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 8, 2026, or as soon thereafter as the matter may be heard before Honorable Sherilyn Peace Garnett of the above-entitled Court, located at 350 W. 1st Street, Courtroom 5C, 5th Floor, Los Angeles, California 90012, Defendant Laird Superfood Inc. ("Laird") will and hereby does move the Court to dismiss Plaintiff Lawrence Schallert's Complaint. This Motion is pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (the "Motion"), on the grounds that: (1) no personal jurisdiction exists, (2) no standing exists, and (3) that the Complaint fails to state a claim upon which relief can be granted for several independent reasons.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on February 10, 2026, when the parties discussed the potential resolution of the filed motion. See Declaration of Annie Ticknor, ¶¶ 2-3. The parties thoroughly discussed the substance and potential resolution of the filed motion via Zoom. *See id.*

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the declaration of Annie Ticknor, the pleadings and papers on file in this action, all matters of which the Court may take judicial notice, and such other evidence and argument as may be properly received by the Court. A Proposed Order is filed simultaneously herewith for the Court's consideration.

Date: February 20, 2026

HAYNES AND BOONE, LLP

By: */s/ Annie Ticknor*
Annie Ticknor
Specially Appearing for Defendant
LAIRD SUPERFOOD, INC.

## TABLE OF CONTENTS


I. INTRODUCTION. .....1

II. SCHALLERT'S ALLEGATIONS RELEVANT TO DISMISSAL. .....3

III. SCHALLERT DOES NOT HAVE STANDING TO SUE UNDER ARTICLE III. .....4

A. Schallert does not allege a particularized injury in fact. .....4

B. Schallert does not allege a traditionally recognized injury. .....6

C. Schallert Has No Reasonable Expectation of Privacy. .....7

IV. THIS COURT LACKS PERSONAL JURISDICTION OVER LAIRD UNDER Fed. R. Civ. P. 12(b)(2). .....9

A. Laird is not Subject to General Jurisdiction. .....9

B. Laird is not Subject to Specific Jurisdiction. .....10

1. Laird did not purposefully avail itself of California jurisdiction as it relates to Schallert's claim. .....10

2. Schallert's claim does not arise out of Laird's California-related activities. .....13

3. Schallert alleges only that Laird operates a website, which is not sufficient to establish that Laird "targeted" Schallert in California. .....13

V. SCHALLERT FAILS TO STATE A CLAIM UNDER CIPA. .....14

A. Schallert Does Not Allege an Actionable CIPA Injury. .....14

B. Section 638.51 applies only to telephone communications, not website technologies. .....14

C. The Software Does Not Qualify as a "Trap and Trace Device" Under California Penal Code § 638.50(c). .....17

D. CIPA's trap and trace provision does not apply extra-territorially. .....18

E. Schallert has not plausibly pleaded facts sufficient to allege that Laird or the Software actually "fingerprinted" Him. .....20

VI. THE DEFICIENCIES IN THE COMPLAINT CANNOT BE CURED. .....21

VII. CONCLUSION. .....22

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................14

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008)....................10

*Bostick v. Gen. Motors, LLC*,
No. 19-CV-02451, 2020 WL 13283478 (C.D. Cal. July 22, 2020)....................3

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025)....................12

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)....................2, 7

*Carolus v. Nexstar Media Inc.*,
No. 24-CV-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025)....................6

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sept. 9, 2024)....................15

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....................16

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)....................9

*Diamond Multimedia Sys., Inc. v. Super. Ct.*,
19 Cal. 4th 1036 (1999)....................18

*Eng. v. Gen. Dynamics Mission Sys., Inc.*,
808 F. App'x 529 (9th Cir. 2020)....................19

*Ferry v. DF Growth REIT*,
No. 22-cv-02001, 2024 WL 5011949 (S.D. Cal. Dec. 6, 2024)....................4

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021)....................9

*Friddle v. Epstein*,
16 Cal. App. 4th 1649 (1993) ........................................................................14

*Hammerling v. Google LLC*,
No. 21-CV-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022).........18, 20

*Hanley v. Int'l Ass'n of Machinists & Aerospace Workers*,
No. CV206058CBMAGRX, 2022 WL 2117805 (C.D. Cal. June 1, 2022)...........19

*Heiting v. FKA Distrib. Co.*,
No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025)........5

*Hughes v. Vivint, Inc.*,
No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12, 2024) ............5

*In re Outlaw Laboratories, LP Litigation*
No. 18-CV-840-GPC-BGS, 2023 WL 6522383 (S.D. Cal., Oct. 5, 2023) .............1

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945)..........................................................................................9

*Janicki Logging Co. v. Mateer*,
42 F.3d 561 (9th Cir. 1994) ..............................................................................21

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ........ passim

*Kuhmstedt v. Enttech Media Grp., LLC*,
No. 221CV10032SVWJEM, 2022 WL 1769126 (C.D. Cal. Apr. 11, 2022)...........2

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) ...................16

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..........................................................................................4

*M Seven Sys. Ltd. v. Leap Wireless Int'l Inc.*,
No. 12-CV-1424 CAB (BLM), 2013 WL 12072526 (S.D. Cal. June 26, 2013) ...18

*Mejia v. Reed*,
31 Cal. 4th 657 (2003) ......................................................................................16

*MGA Ent., Inc. v. Cabo Concepts Ltd.*,
No. CV2010170FMOJPRX, 2021 WL 4733784 (C.D. Cal. June 7, 2021) ........... 13

*Mitchener v. Talkspace Network LLC*,
No. 2:24-CV-07067-JAK (BFMX), 2026 WL 84466 (C.D. Cal. Jan. 7, 2026) ........... passim

*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) ........... 12

*Moody v. Textron Inc.*,
No. 2:25-CV-01032-MWC-E, 2025 WL 2828109 (C.D. Cal. Sept. 24, 2025) .... 11, 12

*Morrison v. Nat'l Australia Bank*,
561 U.S. 247 (2010) ........... 18

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ........... 19

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .......... 7

*Rodriguez v. Culligan Int'l Co.*,
No. 25-CV-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ........... 7

*Rounds v. Case-Mate Inc.*,
No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999 (C.D. Cal. July 2, 2025) ........... passim

*San Diego County Credit Union v. Citizens Equity First Credit Union*,
325 F. Supp. 3d 1088 (S.D. Cal. 2018) ........... 9

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ................ 15, 16

*Scharon v. Paramount Global*,
No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Oct. 03, 2025) .................... 16

*Sexton v. Spirit Airlines, Inc.*,
No. 2:21-CV-00898-TLN-AC, 2023 WL 1823487 (E.D. Cal. Feb. 8, 2023) ........ 19

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) .......... 14

*Spokeo, Inc. v. Robins*,
578 U.S. 330, 338 (2016) .......... 4

*Steinle v. City & Cnty. of San Francisco*,
230 F. Supp. 3d 994 (N.D. Cal. 2017) .......... 14

**Statutes**

Cal. Civ. Proc. § 410.10 .......... 9

Cal. Penal Code § 638.52 .......... 15

Cal. Penal Code § 638.53 .......... 15

Cal. Penal Code § 638.50(c) .......... passim

Cal. Penal Code § 638.51 .......... passim

Cal. Penal Code § 637.2 .......... 14

**Rules**

Fed Rule Civ. Proc. 12 .......... 1, 2, 4, 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Lawrence Schallert alleges that Laird Superfood, Inc. ("Laird"), a plant-based nutrition company, violated the California Invasion of Privacy Act ("CIPA"), because it allegedly used software created by TikTok (the "Software") on its Website. Mr. Schallert alleges that Laird deployed this Software to "spy" on Americans at the behest of a foreign power. As is obvious from the claims itself, Laird provided Schallert a declaration that his "spy" allegation is patently false, however, he refused to withdraw it.

The Complaint, which is rife with implausible, conspiratorial accusations, is just one among a deluge of virtually identical lawsuits currently flooding the courts. *See Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *2 (N.D. Cal. June 24, 2025) (describing this phenomenon); *Mitchener v. CuriosityStream, Inc.,* No. 25-CV-01471-NW, 2025 WL 2272413, at *2, *4-5 (N.D. Cal. Aug. 6, 2025) (same). This is at least the sixteenth nearly identical CIPA case filed by Tauler Smith that has been shunted into federal court in the last year alone (*see Kishnani*, 2025 WL 1745726 at *2)—and this number would increase exponentially if state court filings were included. Based on a similar pattern of misconduct, Mr. Schallert's law firm, Tauler Smith, has already been held liable for violating federal RICO statutes; with a jury finding that the firm engaged in "a scheme to defraud small businesses by mailing baseless demand letters to obtain a quick settlement." *In re Outlaw Laboratories, LP Litigation*, No. 18-CV-840-GPC-BGS, 2023 WL 6522383, at *1-2 (S.D. Cal., Oct. 5, 2023). The firm and its counsel have been repeatedly sanctioned and admonished by courts all over the United States for egregiously unprofessional and unethical behavior, calling them "the essence of what makes the public have low regard for lawyers." *Kuhmstedt v. Enttech Media Grp., LLC*, No. 221CV10032SVWJEM, 2022 WL 1769126, at *6

(C.D. Cal. Apr. 11, 2022).[1] Despite Rule 11 sanctions, numerous judicial admonishments, and civil RICO liability, Tauler Smith and its litigious client remain undeterred. The firm continues to send meritless CIPA demand letters and subsequently file baseless lawsuits. This suit has reached the point when "all reasonable people should agree the practice has gone too far," *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1060 (C.D. Cal. 2023) (describing similar CIPA situation with prolific CIPA counsel), and Laird respectfully requests that the Court dismiss the Complaint with prejudice, for several, independently sufficient reasons.

***First,*** the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because Schallert fails to allege a concrete, particularized injury; the information allegedly collected does not implicate a legally protected privacy interest; and, as a serial plaintiff who actively seeks out the very violations he alleges, Schallert cannot establish a reasonable expectation of privacy.

***Second,*** the Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. Schallert does not make a prima facie case of why Laird is subject to the jurisdiction of California courts merely for allegedly using the Software on its Website.

***Third,*** the Complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim. The Complaint falls short for several independent reasons: (1) CIPA's trap and trace provision does not apply extraterritorially; (2) the Software does not qualify as a "trap and trace device" under California Penal Code § 638.50(c); (3) Section 638.51 applies only to telephone communications, not website technologies; (4) Schallert does not allege an actionable CIPA injury; and

[1] As recently as January 7, 2026, Tauler Smith was "admonished" for violating Rule 11 by "advancing unfounded and irrelevant allegations" related to CIPA and engaging in behavior that was "improper, unprofessional, and contrary to the California Rules of Professional Conduct and Federal Rules of Civil Procedure." *Mitchener v. Talkspace Network LLC*, No. 2:24-CV-07067-JAK (BFMX), 2026 WL 84466, at *4 (C.D. Cal. Jan. 7, 2026).

(5) Schallert has not plausibly pleaded facts sufficient to allege that Laird or the Software actually "fingerprinted" him.

None of these fatal problems can be cured by amendment, dismissal should be with prejudice.

## II. SCHALLERT'S ALLEGATIONS RELEVANT TO DISMISSAL.

Schallert is a California citizen residing in the Central District. *See* Compl. ¶ 7. Laird is a producer and retailer of plant-based creamers, supplements, and functional food products, operating www.lairdsuperfood.com (the "Website"). *Id.* at ¶¶ 1, 11. Schallert alleges Laird is a Colorado corporation, *id.* at ¶ 8, but this is incorrect—Laird is a Nevada corporation with its principal place of business in Colorado. Dkt 1-5, Declaration of Jason Vieth, ¶ 3. [2] Schallert has been advised of this, but refuses to amend his Complaint.

Schallert alleges that Laird installed the Software on the Website, which sends information to TikTok about pages visited and user clicks. Compl. at ¶¶ 18-19. According to the Complaint, the Software operates through "fingerprinting," collecting data about anonymous visitors and matching it with information TikTok "has acquired and accumulated about hundreds of millions of Americans." *Id.* at ¶ 15. Schallert alleges he visited the Website on April 2, 2025 in California, after the Software was installed, *id.* at ¶ 14, and that the Software gathers device and browser information, geographic data, referral tracking, and URL tracking by running scripts that transmit user details—including his information—to TikTok. *Id.* at ¶ 16. He further alleges that the Software identifies users' "phone number, email, routing, addressing and other signaling information of website visitors," *id.* at ¶ 30 and accuses Laird of failing to disclose its alleged collaboration "with the Chinese

[2] This Court may consider "declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction." *Bostick v. Gen. Motors, LLC*, No. 19-CV-02451, 2020 WL 13283478, at *2 (C.D. Cal. July 22, 2020).

government to obtain their phone number and other identifying information." *Id.* at ¶ 21.

Schallert brings a single claim, on behalf of himself only, for violation of California Penal Code Section 638.51. Though the Complaint centers on the Website, it lacks any allegations regarding how Schallert accessed the Website, what device he used, how long he remained, how many times he visited, what information he provided, whether he was aware of Laird's tracking practices, or the purpose of his visit.

## III. SCHALLERT DOES NOT HAVE STANDING TO SUE UNDER ARTICLE III.

Under Federal Rule 12(b)(1), this Court must dismiss any action in which the plaintiff lacks Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). Standing requires three elements: (1) an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." *Ferry v. DF Growth REIT*, No. 22-cv-02001, 2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024).

### A. Schallert does not allege a particularized injury in fact.

To establish the injury prong of standing, Schallert must plausibly allege that he "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Kishnani*, 2025 WL 1745726, at *2 (cleaned up). This requires Schallert to show that he was injured "in a personal and individual way." *Id.* (quoting *Spokeo*, 578 U.S. at 339). In the privacy context, "the nature of the injury turns on whether a plaintiff has a legitimate expectation of privacy." *Id.* at *3 (citation omitted). Thus, "[t]o survive a motion to dismiss, [Schallert] must identify the 'specific personal information [he] disclosed that implicates a protectable privacy interest.'" *Id.* at *3 (citation

omitted). Schallert fails to allege any harm – physical, economic, or otherwise – resulting from his use of the Laird's website.

Rather than describing Schallert's own interactions with the Website, the Complaint describes hypothetical "users" and "visitors" and attaches general screenshots of unknown origins. *See, e.g.*, Compl. ¶¶ 18-19, 30. Schallert's general allegations about what might happen if someone else visits the website cannot state a "concrete and particularized" injury that Schallert himself suffered.

As to himself, Schallert only alleges that Laird used the Software to "identify" him, Compl. ¶¶ 2, 13, as well as his "device and browser information, geographic information, referral tracking, and URL tracking." *Id.* ¶ 16. Schallert does not allege he suffered any concrete harm from the alleged trap and trace process. More fundamentally, he utterly fails to allege any basic facts from which this Court could infer a concrete injury —such as when and how many times he visited the Website, what information he provided, what specific, harmful information about him was collected, whether he was aware of Laird's alleged tracking practices, or if he has any reason to believe that he was de-anonymized. Critically, there are no allegations that Laird misused any allegedly protected information.

At least four courts within this circuit, analyzing substantially similar complaints filed by Schallert's counsel, have dismissed complaints with nearly identical allegations. *See Heiting v. FKA Distrib. Co.*, No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) ("She fails to allege any basic facts from which the Court could infer a concrete injury, like when and how many times she visited the site, what information she provided, what information Defendant captured, whether she was aware of Defendant's tracking practices, or if she has any reason to believe that she was indeed de-anonymized"); *see also Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (stating "Plaintiff's Complaint is vague as to many, if not all, of the details

surrounding her use of the Website and what specific information was captured by the TikTok Software. Plaintiff does not allege any of the basic facts concerning her interaction with the Website, including when she visited it and what occurred during her visit" and "only conclusory allegations regarding Defendant's use of the TikTok Software, and such bald allegations of statutory violations are insufficient to confer standing."); *Kishnani*, 2025 WL 1745726, at *3 (same, stating "Plaintiff cannot establish constitutional standing based on conclusory statements."); *Mitchener*, 2025 WL 2272413, at *3-4 (same).

**B. Schallert does not allege a traditionally recognized injury.**

Schallert also fails to allege the invasion of a legally protected right. In privacy cases, "whether that interest is infringed depends on whether the information at issue is actually personal and private" and whether it bears a "'close relationship' to a 'harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (refusing to find an injury in fact where plaintiffs alleged only that defendant tracked "browser and device data" and "other identifying information" alongside IP addresses). Indeed, courts are clear that "[t]he mere collection of basic contact information by ... software[,] or where the plaintiffs merely visited the website[,] are not concrete harms." *Kishnani*, 2025 WL 1745726, at *4.

Schallert's allegations fall squarely within this category of non-actionable data collection. As to him, he alleges only that the Software gathered his "device and browser information, geographic information, referral tracking, and URL tracking." Compl. at ¶ 16. This is not enough. Multiple courts addressing similar complaints have held that "device and browser information" and "geographic information" do not implicate a legally protected interest." *Kishnani*, 2025 WL 1745726, at *4; *see also Mitchener*, 2025 WL 2272413, at *4; *Rodriguez v. Culligan Int'l Co.*, No. 25-CV-00225-AJB-KSC, 2025 WL 3064113, at *5 (S.D. Cal. Nov.

3, 2025) ("courts have rejected the idea that an internet user's contact information that is 'designed to be exchanged to facilitate communication'—such as their email address or webpage username—constitutes private information.").

While allegations concerning "name, date of birth, and address" could potentially intrude upon a plaintiff's right to privacy, the Complaint fails to convert that hypothetical into concrete harm as to Schallert. There are simply no allegations that Laird collected any such information from him. Multiple courts have recognized this precise deficiency in the form complaints routinely filed by Plaintiff's counsel. *See Kishnani*, 2025 WL 1745726, at *4; *see also Mitchener*, 2025 WL 2272413, at *5. Absent any allegation that his own sensitive personal information was collected, Schallert cannot establish the invasion of a legally protected interest.

**C. Schallert Has No Reasonable Expectation of Privacy.**

Courts dismiss privacy claims for lack of standing where serial plaintiffs actively "seeks out privacy violations." *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025). This is because privacy claims "depend on the plaintiff's reasonable expectations". *Id.* A plaintiff that "that visited and entered information into [a] Defendant's website expecting the information to be accessed, recorded, and disclosed, [] cannot claim an injury when [their] expectations were ultimately met." *Id.* (dismissing serial plaintiff's CIPA claim); *see also Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *4, fn 4 (C.D. Cal. Apr. 5, 2023) (dismissing privacy claims for lack of standing because the serial plaintiff had no expectation of privacy stating the Court's analysis did not depend on the plaintiff being a self-described "tester" as "the undisputed fact that she filed numerous similar lawsuits before visiting Defendant's website casts doubt on any suggestion that she was surprised by surreptitious recording of her information."); *see also Rodriguez v. Autotrader.com. Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387, at *3 (C.D. Cal. Mar. 14,

2025) ("Plaintiff's injury squarely depends on her expectations, as an invasion of privacy requires a reasonable expectation of privacy to have been violated. And as a tester seeking to file lawsuits for invasions of her privacy, she had no expectation of privacy, and thus, no injury in fact.")

There is no doubt that Schallert seeks out privacy violations. He has filed at least five other cases in the Central District alone, each asserting a single CIPA Section 638.51 claim. *See Lawrence Schallert v. Tundra Restaurant Supply, LLC et al*, 2:25-cv-09723-CAS-MAR (C.D. Cal. filed on 10/10/2025); *Lawrence Schallert v. StockX, LLC et al*, Case No. 2:26-cv-01015-JFW-KS (C.D. Cal. filed on 1/30/2026); *Lawrence Schallert v. Quantum Health, Inc. et al*, Case No. 2:25-cv-09621-PD (C.D. Cal. filed on 10/8/2025); *Lawrence Schallert v. Super ATV, LLC et al*, Case No. 2:25-cv-00108-SK (C.D. Cal. filed on 1/6/2025); *Lawrence Schallert v. SonderMind Inc. et al*, Case No. 2:25-cv-00383-SPG-SSC (C.D. Cal. filed on 1/15/2026). Including state court adds another at least 30 cases to Schallert's count of privacy related lawsuits. *See*, *e.g.*, *Lawrence Schallert vs Octane, AI, Inc.*, Case No. 25STCV35087 (Cal. Super. Court filed 12/1/2025); *Lawrence Schallert vs Rocketgenius, Inc.*, Case No. 25STCV35081 (Cal. Super. Court filed 12/2/2025); *Lawrence Schallert vs Dubb, Inc.*, Case No. 25STCV34343 (Cal. Super. Court filed 11/24/2025); *Lawrence Schallert vs ABC Legal Services, Inc.*, Case 25STCV3162 (Cal. Super. Court filed 10/30/2025); *Lawrence Schallert vs Equitybee, Inc.*, 25STCV29400 (Cal. Super. Court filed 10/8/2025); *Lawrence Schallert vs My Place Hotels of America, LLC*, 25STCV29349 (Cal. Super. Court filed 10/7/2025).[3]

Schallert—who chooses to visit websites and then sues companies about that very information—had no reasonable expectation of privacy and therefore suffered no injury in fact.

---

[3] Out of brevity counsel has not included all case cites herein, however, should this Court like a complete list of the case cites, counsel will provide such upon request.

## IV. THIS COURT LACKS PERSONAL JURISDICTION OVER LAIRD UNDER Fed. R. Civ. P. 12(b)(2).

Schallert bears the burden of establishing personal jurisdiction over Laird. *See San Diego County Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1094-1095 (S.D. Cal. 2018). Personal jurisdiction over a nonresident defendant is tested by a two-part analysis: it must satisfy the applicable state long-arm statute and federal due process. *See Rounds v. Case-Mate Inc*., No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999, at *3 (C.D. Cal. July 2, 2025). But California's long arm statute is coextensive with due process limits, requiring a single analysis. *See id.*; *see also* Cal. Civ. Proc. § 410.10. Due process requires that a defendant have minimum contacts with the forum state such that exercising jurisdiction does not offend traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021).

### A. Laird is not Subject to General Jurisdiction.

General personal jurisdiction can be established only if defendant's contacts with the forum state are "continuous and systematic," such that a defendant is considered "at home" in the state. *Daimler AG v. Bauman*, 571 U.S. 117, 128 (2014). For a corporation, like Laird, the place of incorporation and principal place of business are "paradig[m] ... bases for general jurisdiction." *Id.* at 137. Otherwise, only "in an exceptional case" should a court find a corporation's operations in the forum to be "so substantial and of such a nature as to render the corporation at home in that State," such that personal jurisdiction is appropriate. *Id.* at 139 n.19.

Here, Laird is a Nevada corporation with its principal place of business in Colorado. Dkt. 1-15, Declaration of Jason Vieth, ¶ 3. Schallert alleges nothing that changes this analysis; he does not allege that Laird is "at home" in California, nor

could he. *See* Compl. ¶¶ 5-6. Because Laird is not "at home" in California it is not subject to the general jurisdiction of this Court.

**B. Laird is not Subject to Specific Jurisdiction.**

Nor is Laird subject to specific jurisdiction in California based on Schallert's allegation that he visited Laird's website. Specific jurisdiction over a defendant exists only where there is "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Rounds*, 2025 WL 1873999, at *4. The Ninth Circuit has established a three-part test for analyzing a claim of specific personal jurisdiction:

> (1) the defendant must have purposefully availed itself of the privilege of conducting activities in the forum;
>
> (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities;
>
> (3) third, the exercise of jurisdiction must be reasonable.

*See Rounds*, 2025 WL 1873999 at *4. Schallert bears the burden of proving the first two prongs, but the burden then shifts to Laird for prong three. *Id.* However, if plaintiff fails to carry its burden, then "the jurisdictional inquiry ends and the case must be dismissed." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

***1. Laird did not purposefully avail itself of California jurisdiction as it relates to Schallert's claim.***

First, Schallert fails to establish specific personal jurisdiction under the purposeful direction test. In the Ninth Circuit, purposeful direction is analyzed under the "effects" test which "requires that the defendant allegedly ha[s] (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Rounds*, 2025 WL 1873999, at *4. "[A]n interactive platform 'expressly aims' its wrongful

conduct toward a forum state when its contacts are 'its own choice and not random, isolated, or fortuitous." *Moody v. Textron Inc.*, No. 2:25-CV-01032-MWC-E, 2025 WL 2828109, at *4 (C.D. Cal. Sept. 24, 2025). Operating a website that can be accessed in California is—without more—not enough. *See id.* Instead, the case law requires "something more". *Id.* (internal quotation omitted). "As to what constitutes 'something more,' this Circuit considers several factors, including 'the interactivity of the defendant's website ...; the geographic scope of the defendant's commercial ambitions ...; and whether the defendant individually targeted a plaintiff known to be a forum resident ....'" *Id.*

There is precedent precisely on point. In *Rounds v. Case-Mate Inc.*, No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999, at *2, *5-6 (C.D. Cal. July 2, 2025), Tauler Smith, representing Rounds, brought an essentially identical claim to this one: a CIPA cause of action based on TikTok Software collection. Rounds alleged that he "visited Defendant's Website on March 4, 2024," while "physically located in the state of California," and that the "TikTok Software had already been installed and was operational." *Id.* Like Laird, the defendant was not a California corporation, and the court held that it lacked personal jurisdiction over that defendant because Rounds did not "plausibly allege that [defendant] purposefully directed its conduct at California." *Id.*

Here too, Schallert does not allege Laird's passive website was "something more"; namely, he does not allege that Laird's purported use of the Software was aimed at California. He instead alleges that Laird's essentially operated a website, which is not enough under the case law. Specifically, Schallert contends that (1) he visited Laird's website "while in California," Compl. ¶ 14, (2) TikTok is "headquartered in Culver City, CA," *id.* at ¶ 12, and (3) Laird "has sufficient minimum contacts in the State of California or otherwise purposefully avails itself of the California market". *Id.* at ¶ 4. The fact that Schallert happened to be in California when he visited Laird's website is not evidence that Laird expressly

aimed its conduct at California, as specific jurisdiction requires. *See Moody*, 2025 WL 2828109, at *3 (requiring contacts that are "its own choice and not random, isolated, or fortuitous"); *Briskin v. Shopify, Inc.*, 135 F.4th 739, 756 n 12 (9th Cir. 2025) (expressly disavowed "look[ing] only to where [the plaintiff] was located at the time" to subject a defendant to specific personal jurisdiction). Schallert does not allege that Laird "engaged with him" through its website—for instance, he does not allege that he ordered anything or entered any information. This is not a chatbot case. Similarly, the location of TikTok's headquarters is immaterial to whether Laird—a separate corporate entity based in Colorado and Nevada—purposefully directed any conduct toward California. *See Rounds*, 2025 WL 1873999, at *7 (C.D. Cal. July 2, 2025) (granting motion to dismiss for lack of personal jurisdiction as "The Court agrees with Defendants and reiterates its conclusion that where TikTok has its headquarters is irrelevant, as it is not a party to this action.").

Further, there are no allegations that Laird *knew* Schallert was a California resident. Schallert does not allege that Laird sold or shipped its products to him in California. Simply put, the Complaint "alleges no reason for the contact between Plaintiff and Defendant other than Plaintiff's choice to utilize the website, lacking an allegation that it was Defendant's own choice that caused its contacts with California." *Moody*, 2025 WL 2828109, at *5 (granting motion to dismiss for lack of personal jurisdiction); *see also Moledina v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941, 950 (C.D. Cal. 2022) (granting motion for judgment on the pleadings for lack of personal jurisdiction for CIPA claim, stating "the Court finds Plaintiff's unilateral decision to reach out of California to contact Defendant located elsewhere and Defendant's recording of that communication, without more, cannot satisfy the express aiming requirement.").

///

///

///

***2. Schallert's claim does not arise out of Laird's California-related activities.***

Schallert does not allege any California-specific conduct by Laird related to his Complaint, and thus he cannot satisfy the second prong for specific jurisdiction. "The second prong of the test requires that the plaintiff's claim arises out of or relates to the defendant's contacts with the forum." *Rounds*, 2025 WL 1873999, at *7. As noted above, Schallert's Complaint only contains boilerplate personal jurisdiction allegations. Compl., ¶¶ 4-5. Critically, he has entirely failed to allege any causal link whatsoever between Laird's alleged contacts with the State of California and his CIPA claims. *See Rounds*, 2025 WL 1873999, at *7-*8 (dismissing similar Tauler Smith CIPA complaint for lack of personal jurisdiction under second prong).

***3. Schallert alleges only that Laird operates a website, which is not sufficient to establish that Laird "targeted" Schallert in California.***

Finally, the Complaint fails under the third prong, which requires personal jurisdiction consistent with Due Process as:

> [T]hat a website is commercial in nature and interactive does not necessarily mean there is personal jurisdiction. If the defendant merely operates a website, even a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.

*MGA Ent., Inc. v. Cabo Concepts Ltd.*, No. CV2010170FMOJPRX, 2021 WL 4733784, at *5 (C.D. Cal. June 7, 2021). Here, Schallert has alleged no facts suggesting that Laird's website specifically targeted California users, was designed to attract California customers, or contained any California-specific content, advertisements, or functionality. The passive accessibility of a website from within

California—which would be true of virtually any website on the internet—cannot serve as a basis for personal jurisdiction without eviscerating the constitutional limitations on a court's jurisdictional reach. To hold otherwise would subject every website operator in the country to jurisdiction in every state, a result fundamentally at odds with due process principles.

## V. SCHALLERT FAILS TO STATE A CLAIM UNDER CIPA.

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a claim if it fails to state a claim upon which relief can be granted. To survive dismissal, a complaint must contain sufficient factual matter to state a facially plausible claim to relief; threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

### A. Schallert Does Not Allege an Actionable CIPA Injury.

Schallert's Section 638.51 claim fails for the independent reason that he does not allege an injury as required to bring a claim under Section 637.2. California Penal Code Section 637.2 only creates a private right of action for a person who "has been injured by a violation of" the statute. Schallert must, at a minimum, show that his privacy was invaded. *See Friddle v. Epstein*, 16 Cal. App. 4th 1649, 1660 (1993) (holding that Section 637.2 was intended to provide monetary recovery "for persons whose privacy has been invaded"). Here, Schallert's failure to allege a privacy injury demonstrates not only his lack of Article III standing (as discussed above), but also his lack of statutory standing to assert a Section 637.2 claim in any court.

### B. Section 638.51 applies only to telephone communications, not website technologies.

Because Schallert's CIPA claim presents a question of state law, this Court should look to state court decisions to predict how the California Supreme Court

would decide the issue. *See Steinle v. City & Cnty. of San Francisco*, 230 F. Supp. 3d 994, 1015 fn 8 (N.D. Cal. 2017) ("Federal district courts confronted with questions of state law must follow precedent set by the state's highest court or, where no such precedent exists, predict how that court would decide the issue. Holdings of lower state courts are often persuasive authority in conducting the latter inquiry."). Lower California courts have consistently recognized that Section 638.51 does not regulate the collection of internet data. *See Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (dismissing CIPA pen register claim based on alleged "software used by a website to improve its user functionality and the effectiveness of its marketing" because "plain language and legislative intent" do not extend to "internet communications"); *see also Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *2 (Cal. Super. Sept. 9, 2024) ("Section 638.50 does not address the privacy rights of Internet users.").

The statutory text and structure confirm this interpretation. Specifically, Cal. Penal Code 638.51 states that "a person may not install or use a … trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." A trap and trace device is a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Pen. Code § 638.50(c). Although this definition does not expressly reference website technologies, the statutory scheme makes clear that a trap and trace device can only operate on a telephone line.

Section 638.52 sets forth the procedure for obtaining a court order to install a trap and trace device. Such an order must specify, among other things, "[t]he identify, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached"

and "[t]he number and, if known, physical location of ***the telephone line*** to which the pen register or trap and trace device is to be attached[.]" Cal. Pen. Code § 638.52(d) (emphasis added). Additionally, Section 638.52(c) provides that "[i]nformation acquired solely pursuant to the authority for . . . a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the ***telephone number***." (emphasis added). These provisions, when read together, clearly indicate the legislature's understanding that trap and trace devices can only be attached to telephone lines—that is, lines or wires associated with telephone numbers—and not to computers accessing the internet. *See Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003) (Related statutory provisions "must be read together and so construed as to give effect, when possible, to all the provisions thereof."). And California courts have accordingly held that "the legislative history of the CIPA suggests that 'pen register' and 'track and trace devices' refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites." *Sanchez*, 2025 WL 487194, at *3.[4]

Recent case law reinforces this interpretation. In *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *3 (Cal. Super. Mar. 13, 2024), the court dismissed a claim under Section 638.51 and held that "[l]egislative updates

---

[4] Moreover, the Legislature has amended CIPA multiple times and has declined to expand the CIPA's trap and trace provision to apply to the transmission of data between computers. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (finding that the statute at issue did not predate internet technology, and the plaintiff "fails to account for CIPA's multiple amendments" when arguing "that CIPA should be interpreted to apply to new technologies"); *see also Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1080 (C.D. Cal. 2023) ("[t]he fact that the Legislature has had an opportunity to amend section 631(a) to take into account privacy issues raised by new technologies like internet messaging is indicative of its intent not to expand protections").

and commentary continue to explicitly cover cordless and cellular phone technology without reference to internet based communications." Other courts hold the same. *See Scharon v. Paramount Global*, No. 25STCV10585, 2025 WL 2996812, at *2 (Cal. Super. Oct. 03, 2025) (granting demurrer, stating "The proper reading is that section 638.51 prohibits installation of pen registers and trap and trace devices on telephone lines."); *see also Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Sep. 24, 2024) (the court dismissed a claim under Section 638.51 and refused to expand the definition of a trap and trace device to include internet communications). This Court should likewise decline to extend the statute beyond its intended scope.

**C. The Software Does Not Qualify as a "Trap and Trace Device" Under California Penal Code § 638.50(c).**

By definition, a "trap and trace device" captures identifying information about a communication "but not the contents of a communication." § 638.50(c); *Mitchener*, 2025 WL 2272413, at *5 (same). As noted by *Mitchener*:

> the crucial distinction from other devices is that ... 'trap and trace devices' are designed to capture information ***about the communication***, but ***not the content of the communication*** itself. Indeed, other devices accomplish that, and a host of statutes and caselaw are directed at those other devices too. For purposes of Section 638.51, 'trap and trace devices' by definition are tools which provide information about the 'who,' 'when,' and 'where' of communications—but not the 'what.'

*Id.* (citations omitted).

*Mitchener* is directly on point. There, as here, Tauler Smith brought a CIPA claim which "alleges that the TikTok Software "fingerprint[s]" Website visitors to "collect[ ] as much data as it can about a normally and otherwise anonymous Website visitor." *Id.* And the complaints both here and in *Mitchener*, alleged that the Software runs on virtually every page. *Id.* The *Mitchener* Court stated "[a]ny

'fingerprint' that reveals biographical information is 'the content' of any communication between visitor and Website, and thus, the claim and the case cannot survive." *Id.* The court went on to state:

> Though neither party discusses the distinction between information ***about*** a communication versus information ***within*** a communication, it crystalizes the futility of Plaintiff's suit (and the myriad identical cases Plaintiff's counsel has filed in both federal and state courts). If Defendant only collects information regarding the "metadata" of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location). If Defendant instead collects content information from communication between the parties (e.g., information provided from Plaintiff to Defendant directly), then the TikTok software is not a trap and trace device and § 638.50 does not apply.

*Id.* (granting motion to dismiss with prejudice); *see also Kishnani*, 2025 WL 2943080 at *4-5 (same). Under this already decided precedent, the Software is not a trap and trace device.

**D. CIPA's trap and trace provision does not apply extra-territorially.**

The California Penal Code—which includes the CIPA—is not "intended to reach . . . extra-territorial activity." *M Seven Sys. Ltd. v. Leap Wireless Int'l Inc.*, No. 12-CV-1424 CAB (BLM), 2013 WL 12072526, at *3 (S.D. Cal. June 26, 2013); *Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (dismissing plaintiff's CIPA claim because plaintiff failed to allege that the data in question was intercepted in California). CIPA contains no express language providing that its prohibition on trap and trace devices extends to extraterritorial conduct. *See Morrison v. Nat'l Australia Bank*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none").

Schallert fails to plausibly allege that the challenged conduct occurred in

California, as opposed to where Laird is located—Colorado or Nevada. An offense is committed in the location where "the conduct which gives rise to liability" occurs. *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059 (1999). "To avoid an impermissible extraterritorial application of state law, a 'crucial element' of [the plaintiff's] claim must have occurred in California." *Eng. v. Gen. Dynamics Mission Sys., Inc.*, 808 F. App'x 529, 530 (9th Cir. 2020); *Sexton v. Spirit Airlines, Inc.*, No. 2:21-CV-00898-TLN-AC, 2023 WL 1823487, at *4 (E.D. Cal. Feb. 8, 2023) (finding that "material elements of the cause of action" must take place in California, and dismissing claim of California resident where material conduct occurred outside of California). Courts have recognized that a website is physically located where the servers that host the website are located. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007) ("the HTML instructions on the webpage provide an address for where the images are stored, whether in the webpage publisher's computer or some other computer").

The "crucial element" of Schallert's claim is the alleged installation or use of a trap and trace device. *See* Cal. Penal Code § 638.51. Any installation or use of a trap and trace device necessarily occurs where Laird's website is located. *See* Cal. Penal Code § 638.50(c) (a "trap and trace device" "captures the incoming electronic or other impulses . . . of a wire or electronic communication"). While Schallert alleges that he was in California when he visited the Website, simply accessing the Website from California—or being a California resident—is insufficient to establish that the material conduct occurred in-state. *See Eng. v. Gen. Dynamics Mission Sys., Inc.*, 2019 WL 2619658, at *6 (C.D. Cal. May 8, 2019) (dismissing claims seeking to apply California law extraterritorially even though the plaintiff was a California resident, performed a significant amount of her work assignments in California, and was terminated in California); *Hanley v. Int'l Ass'n of Machinists & Aerospace Workers*, No. CV206058CBMAGRX, 2022 WL 2117805, at *7 (C.D. Cal. June 1, 2022) ("Plaintiff's residency in California, and the fact that Plaintiff

was in California when the termination decision was made and when he was informed of his termination, are insufficient to overcome the presumption against extraterritorial application of FEHA."). Moreover, courts routinely grant motions to dismiss when a complaint remains silent as to where the challenged conduct occurred. *Sexton*, 2023 WL 1823487, at *4 (noting that failure to affirmatively plead the location of the alleged conduct warranted dismissal).

Here, Schallert does not allege that Laird's servers are located in California, and concedes that Laird is an out of state corporation. Compl. ¶ 8. He does not allege that the Software was installed in California; he merely alleges that TikTok, who is not a defendant in this lawsuit, maintains its headquarters in California. *Id.* ¶ 12. That a non-party is headquartered in California is not tantamount to plausibly alleging that the material elements of a CIPA violation occurred in California. *See Hammerling*, 2022 WL 17365255, at *11 (dismissing plaintiff's CIPA claim because plaintiff failed to allege that the data in question was intercepted in California). Because Schallert fails to allege that the challenged conduct occurred in California, his claim should be dismissed.

**E. Schallert has not plausibly pleaded facts sufficient to allege that Laird or the Software actually "fingerprinted" Him.**

Schallert has not alleged any facts demonstrating that he was actually identified or that his browsing data was successfully matched with any preexisting TikTok data. The Complaint's own theory of liability depends on the alleged "fingerprinting" process, which the Complaint defines as a process whereby the Software "collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." Compl. ¶ 15. According to Schallert's own allegations, therefore, the fingerprinting process can only "de-anonymize" a website visitor if TikTok possesses preexisting data about that individual—data that could only be "acquired and accumulated" through a TikTok account or other prior

engagement with TikTok's platform. Critically, the Complaint is silent as to whether Schallert has ever had a TikTok account, used the TikTok platform, or otherwise provided any data to TikTok that would be available for matching. The Software cannot match Schallert's device information with "existing data TikTok has acquired" if no such existing data about Schallert exists.

The Complaint's allegations regarding the types of data collected by the Software underscore this deficiency. Schallert alleges that the Software "gathers device and browser information, geographic information, referral tracking, and URL tracking." Compl. ¶ 16. These data points—standing alone—do not identify any particular individual. The Complaint acknowledges this reality by describing visitors as "otherwise anonymous" prior to the fingerprinting match. *Id.* at ¶ 15. Thus, without a preexisting TikTok profile against which to match this anonymous browsing data, the information allegedly collected about Schallert would remain anonymous.

Further, the Complaint's claim that the TikTok Software is "reasonably likely to identify the source of incoming electronic impulses" is equally unavailing. Compl. ¶ 22. Even accepting this allegation as true for purposes of this motion, "reasonably likely" does not mean actually did. Schallert must still allege that the purported trap and trace device was deployed against him and functioned as alleged with respect to his specific visit. Because Schallert has failed to allege that TikTok possesses any preexisting data about him—the essential predicate to the fingerprinting process he describes—he cannot plausibly allege that the Software identified him or captured information "reasonably likely to identify" him as the source of communications to the Website. As such, he has not shown the necessary elements to bring suit.

## VI. THE DEFICIENCIES IN THE COMPLAINT CANNOT BE CURED.

The Court should grant Laird's Motion and dismiss Plaintiff's claim with prejudice because Plaintiff cannot cure these fatal pleading deficiencies. *Janicki*

*Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994) (leave to amend "need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay") (citation omitted).

## VII. CONCLUSION.

For the foregoing reasons, the Court should grant Laird's Motion to Dismiss in its entirety with prejudice.

Date: February 20, 2026

HAYNES AND BOONE, LLP

By: */s/ Annie Ticknor*
Annie Ticknor
Specially Appearing for Defendant
LAIRD SUPERFOOD, INC.

## L.R. 11-6 CERTIFICATION

The undersigned, counsel of record for Laird Superfood, Inc. certifies that this brief contains 6,803 words, which complies with the word limit of L.R. 11-6.1.

By: */s/ Annie Ticknor*
Annie Ticknor
Specially Appearing for Defendant
LAIRD SUPERFOOD, INC