Annie Ticknor (Bar No. 340510)
annie.ticknor@haynesboone.com
HAYNES AND BOONE, LLP
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
T: (949) 202-3000
F: (949) 202-3001

Brent R. Owen (Admitted *Pro Hac Vice*)
brent.owen@haynesboone.com
HAYNES AND BOONE, LLP
675 15th Street, Suite 2200
Denver, Colorado 80202
T: (303) 382-6200
F: (303) 382-6210

Specially Appearing Attorneys for
LAIRD SUPERFOOD, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWRENCE SCHALLERT, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>LAIRD SUPERFOOD, INC.<br><br>Defendant. | Case No.: 2:25-CV-12407-SPG-PVC<br><br>**Assigned to District Judge: Sherilyn Peace Garnett**<br><br>**DEFENDANT LAIRD SUPERFOOD, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*[Filed concurrently with Declaration of Annie Ticknor, Request for Judicial Notice, and (Proposed) Order]*<br><br>**Date: May 20, 2026**<br>**Time: 1:30 p.m.**<br>**Courtroom: 5C** |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 20, 2026, or as soon thereafter as the matter may be heard before Honorable Sherilyn Peace Garnett of the above-entitled Court, located at 350 W. 1st Street, Courtroom 5C, 5th Floor, Los Angeles, California 90012, Defendant Laird Superfood, Inc. ("Laird") will and hereby does move the Court to dismiss Plaintiff Lawrence Schallert's First Amended Complaint. This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (the "Motion"), on the grounds that: (1) no personal jurisdiction exists, (2) no standing exists, and (3) that the Complaint fails to state a claim upon which relief can be granted for several independent reasons.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on March 18, 2026, when the parties discussed the potential resolution of the filed motion. Declaration of Annie Ticknor, ¶¶ 2-3. The parties discussed the substance and potential resolution of this Motion via Zoom. *Id.*

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the declaration of Annie Ticknor, the Request for Judicial Notice, the pleadings and papers on file in this action, all matters of which the Court may take judicial notice, and such other evidence and argument as may be properly received by the Court. A Proposed Order is filed simultaneously herewith for the Court's consideration.

Date: March 25, 2026

HAYNES AND BOONE, LLP

By: */s/ Annie Ticknor*
Annie Ticknor
Brent Owen
Specially Appearing for Defendant
LAIRD SUPERFOOD, INC.

# TABLE OF CONTENTS


I. INTRODUCTION. .......... 1
II. SCHALLERT'S ALLEGATIONS RELEVANT TO DISMISSAL. .......... 2
III. SCHALLERT DOES NOT HAVE STANDING TO SUE UNDER ARTICLE III. 3
A. Schallert does not allege a particularized injury in fact. .......... 3
B. Schallert does not allege a traditionally recognized injury. .......... 5
C. Schallert has no reasonable expectation of privacy. .......... 6
IV. THIS COURT LACKS PERSONAL JURISDICTION OVER LAIRD UNDER Fed. R. Civ. P. 12(b)(2). .......... 7
A. Laird is not subject to general jurisdiction. .......... 8
B. Laird is not subject to specific jurisdiction. .......... 8
1. Laird did not purposefully avail itself to California. .......... 9
2. Schallert's claims do not arise out of Laird's California-related activities. .......... 11
3. Exercising jurisdiction over Laird would be unreasonable .......... 12
V. SCHALLERT FAILS TO STATE A CLAIM. .......... 13
A. Schallert fails to provide a coherent short and plain statement. .......... 13
B. Schallert's claims are barred by issue preclusion. .......... 14
1. Two courts have already decided the same legal issue against Schallert on the merits .......... 15
2. All four elements of issue preclusion are satisfied. .......... 15
C. Section 638.51 applies only to telephone communications. .......... 16
D. The Software does not qualify as a "Trap and Trace Device" under California Penal Code § 638.50(c). .......... 18
E. Schallert fails to stat a claim under CDAFA. .......... 19
F. Schallert's invasion of privacy and intrusion upon seclusion claims fail. .......... 20
1. Schallert has no reasonable expectation of privacy in the information allegedly collected. .......... 21
2. The alleged conduct is not highly offensive. .......... 22
G. Schallert fails to state a claim under the UCL. .......... 23
VI. THE DEFICIENCIES IN THE COMPLAINT CANNOT BE CURED. .......... 24

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 13

*BHRS Group, LLC v. Brio Water Technology, Inc.*,
553 F. Supp. 3d 793 (C.D. Cal. 2021) .......... 24

*Border Bus. Park, Inc. v. City of San Diego*,
142 Cal. App. 4th 1538 (2006) .......... 16

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) .......... 8

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .......... 11

*Browning v. Am. Honda Motor Co.*,
549 F. Supp. 3d 996 (N.D. Cal. 2021) .......... 13

*In re Bugna*,
33 F.3d 1054 (9th Cir. 1994) .......... 15

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 6

*Carolus v. Nexstar Media Inc.*,
No. 24-CV-07790-VC, 2025 WL 1338193 (N.D. Cal. Apr. 9, 2025) .......... 5

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Sept. 9, 2024) .......... 17

*Chevron Corp. v. Donziger*,
No. 12-MC-80237, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) .......... 21

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 8

*Digit Shape Techs., Inc. v. Glassdoor, Inc.*,
No. 3:16-MC-80150, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) .......... 21

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 21

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08-05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) .......... 20

*Ferry v. DF Growth REIT*,
No. 22-cv-02001, 2024 WL 5011949 (S.D. Cal. Dec. 6, 2024) .......... 3

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 8

*In re Google Android Consumer Priv. Litig.*,
No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) .......... 20

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 23

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 21, 23

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 23

*Heiting v. FKA Distrib. Co.*,
No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 5, 20

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 21, 22

*Hughes v. Vivint, Inc.*,
No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12, 2024) .......... 5

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 23

*Janicki Logging Co. v. Mateer*,
42 F.3d 561 (9th Cir. 1994) .......... 24

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 23

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ..... *passim*

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
No. 8:24-CV-00569-FWS-JDE, 2024 WL 4800695 (C.D. Cal. Sept. 3, 2024) .......... 7

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......... 23

*Leavitt v. Int'l Paper Co.*,
No. 2:14-CV-03706-ODW, 2015 WL 262990 (C.D. Cal. Jan. 21, 2015) ... 15, 16

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .......... 17

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 21, 23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 3

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) .......... 13

*Mejia v. Reed*,
31 Cal. 4th 657 (2003) .......... 18

*MGA Ent., Inc. v. Cabo Concepts Ltd.*,
No. CV2010170FMOJPRX, 2021 WL 4733784 (C.D. Cal. June 7, 2021) ....... 12

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ...... *passim*

*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) .......... 9

*Moody v. Textron Inc.*,
No. 2:25-CV-01032-MWC-E, 2025 WL 2828109 (C.D. Cal. Sept. 24, 2025) .......... 9, 10

*Motors, Inc. v. Times Mirror Co.*,
102 Cal. App. 3d 735 (1980) .......... 24

*Nationwide Biweekly Admin., Inc. v. Super. Ct.*,
462 P.3d 461 (Cal. 2020) .......... 23

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .......... 23

*Palacios v. Fandom, Inc.*,
No. 24STCV11264, 2024 WL 5494527 (Cal. Super. Sep. 24, 2024) .......... 17

*Perea v. Walgreen Co.*,
939 F. Supp. 2d 1026 (C.D. Cal. 2013) .......... 24

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) .......... 20

*Popa v. Microsoft Corporation*,
153 F.4th 784 (9th Cir. 2025) .......... 23

*Rodriguez v. Autotrader.com, Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .......... 6

*Rodriguez v. Autotrader.com. Inc.*,
No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387 (C.D. Cal. Mar. 14, 2025) .......... 7

*Rodriguez v. Culligan Int'l Co.*,
No. 25-CV-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 5

*Rounds v. Case-Mate Inc.*,
No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999 (C.D. Cal. July 2, 2025) .......... *passim*

*San Diego County Credit Union v. Citizens Equity First Credit Union*,
325 F. Supp. 3d 1088 (S.D. Cal. 2018) .......... 1, 7, 11, 15

*San Remo Hotel, L.P. v. San Francisco City & Cnty.*, 364 F.3d 1088 (9th Cir. 2004) .......... 14

*Sanchez v. Cars.com Inc.*, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) .......... 17, 18

*Scharon v. Paramount Global*, No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Oct. 03, 2025) .......... 17

*Schroeder v. United States*, 569 F.3d 956 (9th Cir. 2009) .......... 23

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......... 3

*Steinle v. City & Cnty. of San Francisco*, 230 F. Supp. 3d 994 (N.D. Cal. 2017) .......... 16

*United States v. Forrester*, 512 F.3d 500 (9th Cir. 2007) .......... 22

*In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 22

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 21

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014) .......... 21

**Statutes**

28 U.S.C. § 1738 .......... 15

Cal. Bus. & Prof. Code § 17204 .......... 23

Cal. Pen. Code § 638.50(c) .......... 17, 18

Cal. Pen. Code § 638.52 .......... 17

Cal. Penal Code 502 .......... 19

Cal. Penal Code 638.51 .......... 2, 16, 17

California's Comprehensive Computer Data Access and Fraud Act .................. 1, 19

**Other Authorities**

California Constitution ........................................................................................ 21

California Constitution Article I, Section 1 ...................................................... 20, 21

Federal Rule of Civil Procedure 8(a)(2) ................................................................ 13

Federal Rule of Civil Procedure 12 ..................................................... *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

The First Amended Complaint ("FAC") is just one among a deluge of virtually identical lawsuits that Schallert, together with other plaintiffs represented by the law firm Tauler Smith LLP, are currently flooding into courts across California. *See Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *2 (N.D. Cal. June 24, 2025) (describing this phenomenon); *Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413, at *2, *4–5 (N.D. Cal. Aug. 6, 2025) (same). In the FAC, Schallert alleges that Laird Superfood, Inc. ("Laird"), a plant-based nutrition company, violated California Invasion of Privacy Act ("CIPA"), California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), California's Unfair Competition Law ("UCL"), and committed the torts of invasion of privacy and intrusion upon seclusion, by purportedly deploying software on its website. Although Schallert originally alleged only that TikTok Software was deployed, he now alleges that Laird installed software from TikTok, Meta, Google, Snap, LiveRamp, and "others" on its Website (collectively, the "Software"). This expansion changes nothing of substance. The FAC is nothing more than a repackaged version of the same complaint that two courts have already rejected in the last four months. This Court should not permit such an end-run around those rulings. Laird respectfully requests that the Court dismiss the FAC with prejudice for several, independently sufficient reasons.

***First,*** the FAC should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because Schallert fails to allege a concrete, particularized injury; the information allegedly collected does not implicate a legally protected privacy interest; and, as a serial plaintiff who actively seeks out the very violations he alleges, Schallert cannot establish a reasonable expectation of privacy.

***Second,*** the FAC should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. Schallert does not make a prima facie case of why Laird is subject to the

jurisdiction of California courts merely for allegedly using the Software on its Website.

***Third,*** the FAC should be dismissed under Rule 12(b)(6) because Schallert fails to state a claim upon which relief can be granted. Each of Schallert's five causes of action is independently deficient. The FAC fails to provide a short and plain statement of Schallert's claims. His CIPA claim fails because two courts have already determined that website tracking software does not constitute a "trap and trace device" under California Penal Code § 638.51, and issue preclusion bars him from relitigating that question. Even absent preclusion, Section 638.51 applies only to telephonic communications and not to internet technologies, and the FAC's own allegations establish that the Software captures content—placing it outside the statutory definition. His CDAFA claim fails because voluntarily visiting a website does not constitute unauthorized access, and the FAC does not allege cognizable damage to any computer system. His invasion of privacy and intrusion upon seclusion claims fail because the data at issue is generic technical metadata in which no reasonable expectation of privacy exists, and the alleged conduct does not rise to the level of a "highly offensive" intrusion. Finally, his UCL claim is entirely derivative of the foregoing claims and fails for the same reasons, and Schallert independently lacks UCL standing because he has not alleged any loss of money or property.

Because none of these defects can be cured by amendment, dismissal should be with prejudice.

## II. SCHALLERT'S ALLEGATIONS RELEVANT TO DISMISSAL.

Schallert is a California citizen and resident. FAC ¶ 18. Laird is a Nevada corporation with its principal place of business in Boulder, Colorado. *Id.* at ¶ 19. Laird retails plant-based creamers, supplements, and functional food products, and operates a commercial website at www.lairdsuperfood.com (the "Website"). *See id.* at ¶ 2. Schallert alleges that Laird embedded invisible tracking code—including pixels, third-party cookies, and scripts provided by TikTok, Meta, Microsoft, Google, Adobe, Snap, and LiveRamp, and 33 plus "others". *Id.* at ¶¶ 3, 22–23. According to the FAC, the Tracking Software

activates automatically when a consumer accesses the Website, capturing a digital record of the consumer and the consumer's visit and transmitting it in real time to advertising platforms, analytics companies, and data brokers—without the consumer's knowledge or consent. *Id.* at ¶¶ 3, 27.

Schallert alleges he visited the Website on April 2, 2025, while physically located in California, after the Tracking Software was installed. *Id.* at ¶¶ 6, 66, 67. He alleges that the Tracking Software captured his "routing, addressing, and signaling information". *Id.* at ¶ 70. Schallert brings five claims (outlined above) on behalf of himself and a putative class of all persons located in California whose routing, addressing, or signaling information was allegedly captured through the Tracking Software. *Id.* at ¶¶ 73, 85–152.

## III. <u>SCHALLERT DOES NOT HAVE STANDING TO SUE UNDER ARTICLE III.</u>

Under Federal Rule 12(b)(1), this Court must dismiss any action in which the plaintiff lacks Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). Standing requires three elements: (1) an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." *Ferry v. DF Growth REIT*, No. 22-cv-02001, 2024 WL 5011949, at *3 (S.D. Cal. Dec. 6, 2024).

### A. <u>Schallert does not allege a particularized injury in fact.</u>

To establish the injury prong of standing, Schallert must plausibly allege that he "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Kishnani*, 2025 WL 1745726, at *2 (cleaned up). This requires Schallert to show that he was injured "in a personal and individual way." *Id.* (quoting *Spokeo*, 578 U.S. at 339). In the privacy context, "the nature of the injury turns on whether a plaintiff has a legitimate expectation of privacy." *Id.* at *3 (citation omitted). Thus, "[t]o survive a motion to dismiss, [Schallert] must identify the

'specific personal information [he] disclosed that implicates a protectable privacy interest.'" *Id.* at *3 (citation omitted). Schallert fails to allege any harm – physical, economic, or otherwise – resulting from his use of the Laird's website.

As an initial matter, the vast majority of the FAC's substantive allegations are directed not at Schallert, but at hypothetical "individuals," "visitors," and "consumers" described in the abstract. For example, FAC devotes twelve paragraphs to describing how tracking technologies generally operate when "an individual visits a website," FAC ¶¶ 21–32, and another four paragraphs to describing how such technologies allegedly function on Laird's Website with respect to unnamed "individual[s]," *Id.* at ¶¶ 62–65. It is unclear what tracking technology is being referred as the definition of tracking software lists seven companies' technology and "others". *Id.* at ¶¶ 3, 22. This framing underscores the FAC's deficiency: the allegations describe generally about what tracking technologies are theoretically capable of doing to anyone who visits any website, not what Laird did to Schallert.

Schallert still fails to allege basic facts from which this Court could infer a concrete injury. Schallert's own allegations are limited to a single visit "[o]n or about April 2, 2025," during which he "visited the Website to view information concerning Defendant's products and related nutrition and wellness content." FAC ¶ 66. He alleges only, in conclusory fashion, that Laird's alleged Software "captured routing, addressing, and signaling information" during his visit, *Id.* at ¶¶ 67–68, and that this information was "transmitted . . . to third-party advertising and analytics platforms." *Id.* ¶ 68. He does not identify how many times he visited the Website, which products he viewed, which pages he accessed, what specific content he interacted with, what particular information about him was captured and transmitted, which third party any information was transferred to, whether any third party actually received identifiable information about him, or whether he was in fact de-anonymized by anyone.

At least four courts within this circuit have dismissed complaints with similar

allegations. *See Heiting v. FKA Distrib. Co.*, No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (dismissing for failure to allege basic facts from which the court could infer a concrete injury, such as when the plaintiff visited the site, what information she provided, and what personal information the defendant captured); *see also Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (dismissing where the complaint was vague as to the plaintiff's use of the website and what information was captured, and contained only conclusory allegations of statutory violations insufficient to confer standing); *Kishnani*, 2025 WL 1745726, at *3 (same); *Mitchener*, 2025 WL 2272413, at *3-4 (same).

**B. Schallert does not allege a traditionally recognized injury.**

Schallert also fails to allege the invasion of a legally protected right. In privacy cases, "whether that interest is infringed depends on whether the information at issue is actually personal and private" and whether it bears a "'close relationship' to a 'harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *Carolus v. Nexstar Media Inc.*, No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025). Indeed, courts are clear that "[t]he mere collection of basic contact information by ... software[,] or where the plaintiffs merely visited the website[,] are not concrete harms." *Kishnani*, 2025 WL 1745726, at *4.

Schallert's allegations fall squarely within this category of non-actionable data collection. As to him, Schallert alleges that Laird's Software "captured routing, addressing, and signaling information" during his visit, FAC ¶¶ 67–68, and that this information was "transmitted to third-party advertising and analytics platforms." *Id.* ¶ 68. This is not enough. Stripped of the FAC's loaded framing, these are precisely the types of technical routing data that multiple courts have held do not implicate a legally protected interest. *Kishnani*, 2025 WL 1745726, at *4 ("device and browser information" and "geographic information" do not implicate a legally protected interest."); *see also Mitchener*, 2025 WL 2272413, at *4; *Rodriguez v. Culligan Int'l Co.*, No. 25-CV-00225-AJB-KSC, 2025 WL

3064113, at *5 (S.D. Cal. Nov. 3, 2025) ("courts have rejected the idea that an internet user's contact information that is 'designed to be exchanged to facilitate communication'—such as their email address or webpage username—constitutes private information.").

The FAC attempts to dress up this deficiency by asserting that because Laird's Website relates to "health, nutrition, and wellness," the captured information "can reveal highly sensitive health-related information, including an individual's dietary restrictions, nutritional needs, potential medical conditions, and personal health goals." FAC ¶ 65. This allegation fails for two independent reasons. First, it is implausible on its face. Laird is a nutritional website that sells supplement products. It does not collect any medical or health information. Visiting a supplement website does not mean that a person has a dietary restriction or medical condition, any more than visiting a sporting-goods website means that a person is an athlete. Second, Schallert does not allege that any health-related information about him was actually collected or transmitted to third parties. Courts have recognized similar deficiencies in privacy complaints filed by Plaintiff's counsel. *See Kishnani*, 2025 WL 1745726, at *4; *see also Mitchener*, 2025 WL 2272413, at *5.

**C. <u>Schallert has no reasonable expectation of privacy.</u>**

Courts dismiss privacy claims for lack of standing where serial plaintiffs actively "seek[] out privacy violations." *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025). This is because privacy claims "depend on the plaintiff's reasonable expectations". *Id.* A plaintiff "that visited and entered information into [a] Defendant's website expecting the information to be accessed, recorded, and disclosed, [] cannot claim an injury when [their] expectations were ultimately met." *Id.* (dismissing serial plaintiff's CIPA claim); *see also Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 n. 4 (C.D. Cal. Apr. 5, 2023) (dismissing privacy claims for lack of standing because the serial plaintiff had no expectation of privacy stating the Court's analysis did not depend on the plaintiff being a self-described "tester" as "the undisputed fact that she filed numerous similar lawsuits

before visiting Defendant's website casts doubt on any suggestion that she was surprised by surreptitious recording of her information."); *see also Rodriguez v. Autotrader.com. Inc.*, No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387, at *3 (C.D. Cal. Mar. 14, 2025) ("Plaintiff's injury squarely depends on her expectations, as an invasion of privacy requires a reasonable expectation of privacy to have been violated. And as a tester seeking to file lawsuits for invasions of her privacy, she had no expectation of privacy, and thus, no injury in fact.")

There is no doubt that Schallert seeks out privacy violations. Schallert has filed at least thirty-six CIPA lawsuits since January 2025—five other cases in the Central District and thirty in California state court—averaging roughly one new case every ten days. *See* Request for Judicial Notice ("RJN"), Ex. 1-35 (outlining each of Schallert's filed cases). On at least one occasion, he has filed as many as three CIPA actions premised on the same core Tracking Software theory in a single day. *Id.* at Ex. 31, 32, 33. Although Schallert now alleges that he did not expect "information" would be "disclosed to unrelated third parties," FAC ¶ 66, "[t]he court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-CV-00569-FWS-JDE, 2024 WL 4800695, at *2 (C.D. Cal. Sept. 3, 2024). Schallert—who chooses to visit websites and then sues companies about that very information—had no reasonable expectation of privacy and therefore suffered no injury in fact.

## IV. <u>THIS COURT LACKS PERSONAL JURISDICTION OVER LAIRD UNDER Fed. R. Civ. P. 12(b)(2).</u>

Schallert bears the burden of establishing personal jurisdiction over Laird. *See San Diego County Credit Union v. Citizens Equity First Credit Union*, 325 F. Supp. 3d 1088, 1094-95 (S.D. Cal. 2018). Because California's long-arm statute is coextensive with federal due process limits, the inquiry reduces to whether Laird has minimum contacts with the forum state such that exercising jurisdiction does not offend traditional notions of fair

play and substantial justice. *See Rounds v. Case-Mate Inc.*, No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999, at *3 (C.D. Cal. July 2, 2025); *see also* Cal. Civ. Proc. § 410.10; *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021).

**A. <u>Laird is not subject to general jurisdiction.</u>**

General personal jurisdiction can be established only if defendant's contacts with the forum state are "continuous and systematic," such that a defendant is considered "at home" in the state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). For a corporation, like Laird, the place of incorporation and principal place of business are "paradig[m] ... bases for general jurisdiction." *Id.* at 137. Only "in an exceptional case" will a corporation's forum operations be "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19. Laird is a Nevada corporation with its principal place of business in Colorado. FAC ¶ 19. Schallert does not allege that Laird is "at home", nor could he. Because Laird is not "at home" in California it is not subject to the general jurisdiction of this Court.

**B. <u>Laird is not Subject to specific jurisdiction.</u>**

Nor is Laird subject to specific jurisdiction in California based on Schallert's allegation that he visited Laird's website. Specific jurisdiction over a defendant exists only where there is "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Rounds*, 2025 WL 1873999, at *4. The Ninth Circuit has established a three-part test for analyzing a claim of specific personal jurisdiction: (1) the defendant must have purposefully availed itself of the privilege of conducting activities in the forum; (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; (3) third, the exercise of jurisdiction must be reasonable. *See Rounds*, 2025 WL 1873999 at *4. Schallert bears the burden of proving the first two prongs, but the burden then shifts to Laird for prong three. *Id.* However, if plaintiff fails to carry its burden, then "the jurisdictional inquiry ends and the case must be dismissed." *Boschetto v. Hansing*,

539 F.3d 1011, 1016 (9th Cir. 2008).

**1. Laird did not purposefully avail itself to California.**

Schallert fails to establish specific personal jurisdiction under the purposeful direction test. In the Ninth Circuit, purposeful direction is analyzed under the "effects" test, which requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Rounds*, 2025 WL 1873999, at *4. "[A]n interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are 'its own choice and not random, isolated, or fortuitous." *Moody v. Textron Inc.*, No. 2:25-CV-01032-MWC-E, 2025 WL 2828109, at *4 (C.D. Cal. Sept. 24, 2025). Operating a website accessible in California is not sufficient; the case law demands "something more," assessed by considering "the interactivity of the defendant's website," "the geographic scope of the defendant's commercial ambitions", and "whether the defendant individually targeted a plaintiff known to be a forum resident." *Id.* Schallert cannot satisfy this test.

In *Rounds v. Case-Mate Inc.*, No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999, at *2, *5-6 (C.D. Cal. July 2, 2025), Tauler Smith, representing Rounds, brought a privacy claim based on TikTok Software collection. Rounds alleged that he "visited Defendant's Website on March 4, 2024," while "physically located in the state of California," and that the "TikTok Software had already been installed and was operational." *Id.* Like Laird, the defendant was not a California corporation, and the court held that it lacked personal jurisdiction over that defendant because Rounds did not "plausibly allege that [defendant] purposefully directed its conduct at California." *Id.*

Similarly, in *Moody*, the court dismissed a tracking-software privacy claim brought against a nonresident defendant, holding that the FAC "alleges no reason for the contact between Plaintiff and Defendant other than Plaintiff's choice to utilize the website, lacking an allegation that it was Defendant's own choice that caused its contacts with California." *Moody*, 2025 WL 2828109, at *5; *see also Moledina v. Marriott Int'l, Inc.*, 635 F. Supp.

3d 941, 950 (C.D. Cal. 2022) (granting motion for judgment on the pleadings for lack of personal jurisdiction stating "the Court finds Plaintiff's unilateral decision to reach out of California to contact Defendant located elsewhere and Defendant's recording of that communication, without more, cannot satisfy the express aiming requirement.")

Schallert's allegations mirror the deficient claims rejected in *Rounds* and *Moody*. The parallels between the above-precedent, specifically *Rounds*, and this case are inescapable: (a) the plaintiff alleges a single visit to a nonresident defendant's website while located in California, (b) the plaintiff claims that tracking software embedded on the website captured personal data without consent, (c) the challenged software operated uniformly for all website visitors, and (d) the plaintiff's only connection to the forum is his own unilateral decision to access the website from California. As such, the result here should be the same. Simply put, Schallert alleges that Laird operated a website. He does not allege that he ordered anything or entered any information. This is not a chatbot case. "Something more" does not exist here.

Further, the FAC's new allegations of general commercial activity do not cure the jurisdiction defect. The FAC attempts to cure the jurisdictional defects identified in the original Complaint by alleging that Laird markets products in California retail locations, engages in digital advertising campaigns targeting California consumers, and operates a website with a store locator and subscription purchasing options. FAC ¶¶ 10–11. But these general commercial contacts are irrelevant because Schallert does not allege that he purchased a Laird product, visited a Laird retail location, or was prompted to visit the Website by any California-targeted advertisement. His claims arise solely from the alleged deployment of Tracking Software, and the FAC's own allegations confirm that the Tracking Software operates identically for all Website visitors regardless of location. *See id.* at ¶ 89. General commercial activity in California cannot substitute for a showing that the challenged conduct was purposefully directed at California. *See Moody*, 2025 WL 2828109, at *5.

Further, there are no allegations that Laird knew Schallert was a California resident. Schallert does not allege that Laird sold or shipped products to him in California, or that Laird took any action based on knowledge of his location. Without such allegations, the FAC cannot satisfy the third prong of the effects test. And the FAC's new allegations that Laird can determine a visitor's geographic location through IP addresses and retains the technical capability to geo-block California consumers, FAC ¶¶ 14–15, do not salvage the jurisdictional theory for three independent reasons. *First*, the FAC does not allege that Laird actually determined Schallert's location or took any action based on his IP address. It alleges only a theoretical capability. *Second*, even if Laird had identified Schallert's approximate location, the mere ability to discern a visitor's geographic origin does not constitute conduct expressly aimed at the forum state. The Ninth Circuit has squarely rejected the notion that a plaintiff's location at the time of the alleged harm, standing alone, can establish express aiming. *See Briskin v. Shopify, Inc*., 135 F.4th 739, 756 n.12 (9th Cir. 2025) (expressly disavowing "look[ing] only to where [the plaintiff] was located at the time" to subject a defendant to specific personal jurisdiction). Adopting Schallert's theory would establish personal jurisdiction in any state where a plaintiff happened to be located when visiting a website. *Third*, the allegation that Laird could have geo-blocked California visitors but chose not to is irrelevant. A failure to block access is not the same as affirmatively targeting a state.

**2. Schallert's claims do not arise out of Laird's California-related activities.**

Schallert cannot satisfy the second prong for specific jurisdiction because none of his claims arise out of or relate to any California-specific conduct by Laird. "The second prong of the test requires that the plaintiff's claim arises out of or relates to the defendant's contacts with the forum." *Rounds*, 2025 WL 1873999, at *7. As discussed in the previous section, every claim in the FAC is predicated on the alleged deployment of the Tracking Software on the Website—not on any retail sale, in-store interaction, disclosures or targeted marketing communication. The FAC's new allegations about Laird's California

retail presence and digital advertising campaigns are irrelevant because Schallert does not allege any causal link between those activities and the Tracking Software at issue. The FAC attempts to manufacture an "arising out of" connection by alleging the Software executed on Schallert's device in California, FAC ¶ 67, but that is a function of Schallert's own unilateral decision to access the Website from California, not any California-directed activity by Laird. *See Rounds*, 2025 WL 1873999, at *7–*8 (dismissing similar Tauler Smith privacy complaint for lack of personal jurisdiction under second prong).

Moreover, allegations that Laird's website includes an interactive store locator and subscription purchasing options fail to establish jurisdiction. FAC ¶ 11. There are no allegations that Schallert or anyone else used these tools. Regardless, these features are standard, nationwide e-commerce functionalities ubiquitous across modern commercial websites, and none reflects any deliberate effort to target California in particular. A store locator that responds to a user's own input by identifying retail locations in any state does not transform a nationally accessible website into one that specifically "targets" California. Such a tool is, by its very nature, geographically neutral — it serves users in all fifty states equally. Nor does the FAC's passing reference to "disclosures and policies directed specifically to California" salvage the deficiency. *Id.* The FAC does not identify which disclosure or policy is supposedly at issue, much less explain how any such disclosure establishes jurisdiction.

**3. Exercising jurisdiction over Laird would be unreasonable.**

Operating a commercial, interactive website that is merely accessible from—but does not specifically target—a forum state is insufficient to establish personal jurisdiction over the website operator in that state. *See MGA Ent., Inc. v. Cabo Concepts Ltd.*, No. CV2010170FMOJPRX, 2021 WL 4733784, at *5 (C.D. Cal. June 7, 2021). Here, Schallert has alleged no facts suggesting that Laird's alleged deployment of the Software specifically targeted him or California users or contained any California-specific tracking functionality.

## V. SCHALLERT FAILS TO STATE A CLAIM.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive dismissal, a complaint must allege sufficient factual matter to state a facially plausible claim; conclusory statements alone do not suffice. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

### A. Schallert fails to provide a coherent short and plain statement.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *Browning v. Am. Honda Motor Co*., 549 F. Supp. 3d 996, 1002 (N.D. Cal. 2021).

First, the FAC lumps together dozens of distinct tracking technologies as a monolithic whole, leaving Laird to guess at what it is actually accused of doing. The FAC defines "Tracking Software" as "invisible code, including pixels, third-party cookies, and scripts provided by TikTok, Meta, Google, Snap, LiveRamp, and others." FAC ¶ 3. This definition is immediately qualified by the phrase "and others," which the FAC never identifies. In a footnote to paragraph 22, Schallert then lists no fewer than 40 separate tracking technologies from laundry list of different companies. Having dumped this laundry list of technologies into the FAC, Schallert then treats them as a single, undifferentiated mass. He never distinguishes between them. He never describes how any individual technology works. He never identifies which tracking technologies deploy which tools—pixels, cookies, or scripts—or whether they all operate in the same manner. He never specifies which particular technology allegedly captured what data from Schallert's device during his April 2, 2025 visit. Instead, all 40-plus tracking technologies are treated interchangeably under the single umbrella of "Tracking Software," and every allegation in the FAC is directed at this amorphous collective without differentiation. Laird cannot reasonably be expected to respond to a complaint that identifies upwards of 40

tracking technologies, acknowledges there may be more, and never explains what any of them do or any of them did individually did to Schallert.

Second, the FAC is impermissibly prolix, burying the operative allegations in pages of irrelevant surplusage. The FAC spans 33 pages and 152 paragraphs to describe what is, at its core, a single website visit on a single day. Rather than setting forth a clear statement of Schallert's claims, the FAC meanders through extensive background material that has nothing to do with what Laird allegedly did to Schallert: multi-paragraph descriptions of data broker practices, government surveillance investigations by CBP and ICE, a European regulator's €530 million fine against TikTok, information about the Federal Trade Commission, and a data broker CEO's public comments about consumer profiling. FAC ¶¶ 40–47, 52–54, 57–58. None of this material identifies what Laird actually did to Schallert, and none of it is necessary to state the claims.

Third, the FAC is riddled with vague, undefined references that deprive Laird of fair notice of the claims against it. As non-limiting examples, the FAC repeatedly invokes broad categories of unnamed actors and unspecified conduct without ever identifying who they are or what they did: "network of advertising platforms, analytics companies, and data brokers", "financial institutions, to political operatives, and to government agencies", "Regulators and policymakers", "third parties whose own data practices have drawn significant regulatory scrutiny", "advertising and analytics platforms", "platforms, analytics companies, and marketing services", "the resulting data", "value of these profiles", "[t]hese companies collect browsing data from millions of websites and combine it with information gathered from mobile applications, advertising networks, and commercial databases." FAC ¶¶ 3, 4, 32, 35, 36, 44, 45. What profiles? What companies? What government agencies? What financial institutions? What data, specifically, was transmitted to whom? The FAC never says.

**B. <u>Schallert's claims are barred by issue preclusion.</u>**

Issue preclusion bars relitigation of issues actually and necessarily decided in prior

proceedings. *See San Remo Hotel, L.P. v. San Francisco City & Cnty.*, 364 F.3d 1088, 1094 (9th Cir. 2004). Federal courts must apply California's preclusion law to determine the effect of a state court judgment. 28 U.S.C. § 1738; *In re Bugna*, 33 F.3d 1054, 1057 (9th Cir. 1994). The doctrine requires: (1) a full and fair opportunity to litigate the issue; (2) actual litigation of the issue; (3) a final judgment; and (4) the party against whom preclusion is asserted was a party to the prior action. *Leavitt v. Int'l Paper Co.*, No. 2:14-CV-03706-ODW, 2015 WL 262990, at *1 (C.D. Cal. Jan. 21, 2015).

**1. Two courts have already decided the same legal issue against Schallert on the merits.**

If website tracking software constitutes a "trap and trace device" has been squarely decided against Schallert in two separate courts. ***First,*** on December 15, 2025, in *Lawrence Schallert v. Orkin, LLC*, Judge Nicholas F. Daum granted judgment on the pleadings without leave to amend. RJN, Ex. 37. Schallert—represented by the same counsel, Tauler Smith LLP—alleged that Orkin violated CIPA by deploying TikTok's tracking software on its website. After exhaustive analysis of CIPA's text, statutory structure, legislative history, canons of construction, and public policy, Judge Daum concluded that "website software akin to that alleged here is not a 'trap and trace' device." *Id.* ***Second,*** on March 6, 2026, in *Lawrence Schallert v. Palo Alto Networks, Inc.*, Case No. 25STCV17109, Judge Robert B. Broadbelt sustained a demurrer to Schallert's complaint without leave to amend. RJN, Ex. 36. Judge Broadbelt likewise concluded that "the deployment of software on a website does not constitute a trap and trace device." *Id.*

**2. All four elements of issue preclusion are satisfied.**

**Identical issue.** The legal question decided in *Orkin* and *Palo Alto Networks* is the same question presented here: whether website tracking software qualifies as a "trap and trace device." Although the FAC expands upon the original complaint, the tracking-software theory remains functionally indistinguishable from those already rejected. The plaintiff, the legal theory, and the statutory provisions are identical.

**Full and fair opportunity to litigate.** Schallert was the named plaintiff in both prior

actions and was represented by the same counsel. In *Orkin*, the court considered full briefing—including opposition and reply papers—and heard oral argument. In *Palo Alto Networks*, the court likewise considered complete briefing on the demurrer. Schallert had every opportunity to present his best arguments on this issue, and did so twice.

**Actually litigated.** Both courts engaged in thorough, substantive analyses and rendered reasoned decisions on the merits. The *Orkin* ruling addressed the statutory text, cross-referenced provisions, legislative history, canons of construction, and public policy at length. RJN, Ex. 37. The *Palo Alto Networks* ruling similarly analyzed CIPA's text and legislative history. RJN, Ex. 36. These were adjudications on the merits.

**Final judgment**. A demurrer sustained without leave to amend is "sufficiently firm to be accorded conclusive effect" for purposes of issue preclusion. *Border Bus. Park, Inc. v. City of San Diego*, 142 Cal. App. 4th 1538, 1564 (2006). Both the *Orkin* ruling (judgment on the pleadings without leave to amend) and the *Palo Alto Networks* ruling (demurrer sustained without leave to amend) satisfy this requirement.

**Party identity.** Schallert was the plaintiff in both prior actions and is the plaintiff here. There is no question that issue preclusion may be asserted against him.

Allowing Schallert to relitigate this issue would be a gross misuse of judicial resources. *See Leavitt v. Int'l Paper Co.*, No. 2:14-CV-03706-ODW, 2015 WL 262990, at *2 (C.D. Cal. Jan. 21, 2015). Schallert should not be permitted a third bite at this apple.

**C. <u>Section 638.51 applies only to telephone communications.</u>**

Even if this Court were to find issue preclusion inapplicable, Schallert's CIPA claim fails on the merits. Because this claim presents a question of state law, this Court should look to state court decisions to predict how the California Supreme Court would decide the issue. *See Steinle v. City & Cnty. of San Francisco*, 230 F. Supp. 3d 994, 1014 n. 8 (N.D. Cal. 2017) ("Federal district courts confronted with questions of state law must follow precedent set by the state's highest court or, where no such precedent exists, predict how that court would decide the issue."). Lower California courts have consistently and

overwhelmingly recognized that Section 638.51 does not regulate the collection of internet data. *See Schallert*, No. 24STCV31224, at *2 (Cal. Super. Dec. 15, 2025) (described above); *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025); *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *2 (Cal. Super. Sept. 9, 2024); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *3 (Cal. Super. Mar. 13, 2024); *See Scharon v. Paramount Global*, No. 25STCV10585, 2025 WL 2996812, at *2 (Cal. Super. Oct. 03, 2025); *see also Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Sep. 24, 2024).

The statutory text and structure confirm this interpretation. Specifically, Cal. Penal Code 638.51 states that "a person may not install or use a … trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." A trap and trace device is a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Pen. Code § 638.50(c). Although this definition does not expressly reference website technologies, the statutory scheme makes clear that a trap and trace device can only operate on a telephone line.

Section 638.52 sets forth the procedure for obtaining a court order to install a trap and trace device. Such an order must specify, among other things, "[t]he identify, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached" and "[t]he number and, if known, physical location of ***the telephone line*** to which the pen register or trap and trace device is to be attached." Cal. Pen. Code § 638.52(d) (emphasis added). Additionally, Section 638.52(c) provides that "[i]nformation acquired solely pursuant to the authority for . . . a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the ***telephone number***." (emphasis added). These provisions, when read together, clearly

indicate the legislature's understanding that trap and trace devices can only be attached to telephone lines—that is, lines or wires associated with telephone numbers—and not to computers accessing the internet. *See Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003) (Related statutory provisions "must be read together and so construed as to give effect, when possible, to all the provisions thereof."). And California courts have accordingly held that "the legislative history of the CIPA suggests that 'pen register' and 'track and trace devices' refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites." *Sanchez*, 2025 WL 487194, at *3. This Court should likewise decline to extend the statute beyond its intended scope.

### D. <u>The Software does not qualify as a "Trap and Trace Device" under California Penal Code § 638.50(c).</u>

Schallert's CIPA claim fails because the FAC's own allegations establish that the Software is not a "trap and trace device" within the meaning of California Penal Code § 638.50(c). A "trap and trace device" captures identifying information about a communication "but not the contents of a communication." § 638.50(c); *Mitchener*, 2025 WL 2272413, at *5 (same). Here, the FAC identifies over 40 tracking technologies, yet treats them all as a monolithic "trap and trace device" without differentiating among them or explaining how any individual technology satisfies the definition. This alone is fatal.

*Mitchener* is on point. There, Tauler Smith brought a similar CIPA claim alleging that TikTok's Software "fingerprints" website visitors to collect data about otherwise anonymous users, and that the Software runs on virtually every page. *Id.* The court granted the motion to dismiss with prejudice, reasoning:

> Though neither party discusses the distinction between information ***about*** a communication versus information ***within*** a communication, it crystalizes the futility of Plaintiff's suit (and the myriad identical cases Plaintiff's counsel has filed in both federal and state courts). If Defendant only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of

> privacy as to that type of data (e.g., his IP address or general geographic location). If Defendant instead collects content information from communication between the parties (e.g., information provided from Plaintiff to Defendant directly), then the TikTok software is not a trap and trace device and § 638.50 does not apply.

*Id.* (granting motion to dismiss with prejudice); *see also Kishnani*, 2025 WL 2943080 at *4-5 (same). Schallert here is caught in the same trap. The FAC's own description of what the Tracking Software collects demonstrates that it captures the contents of communications, not merely routing metadata. The FAC alleges that the Tracking Software records users' browsing activity on the Website—including pages viewed, links clicked, URLs requested, and resources loaded—enabling third parties to build behavioral profiles revealing personal interests, purchasing habits, and lifestyle choices, and that it captures information capable of exposing intimate details about individuals' health concerns and personal habits. *See* FAC ¶ 26, 29, 37, 64. This is paradigmatic content information—the substance of a user's communications with a website—not mere routing or addressing data. And if the Software captures only non-content metadata, then Plaintiff has no cognizable privacy interest in that data. Either way, the claim fails.

**E. <u>Schallert fails to stat a claim under CDAFA.</u>**

Schallert's claim under California's Comprehensive Computer Data and Access Fraud Act ("<u>CDAFA</u>") is even weaker. CDAFA creates a private cause of action against any person who: (1) "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any . . . computer network to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property or data." Alternatively, liability attends a person who "[k]nowingly accesses and without permission takes copies, or makes use of any data from a computer, computer network, or computer system[.]" Cal. Penal Code 502(c)(1)-(2); Cal. Penal Code 502(e)(1). Schallert's CDAFA theory is that his access to the Laird website—which then

allegedly tracks and records information about Schallert—is the equivalent for wrongful access, wrongful control, or the similar misconduct CDAFA prohibits. Not so.

*Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023) is instructive. There, the plaintiff, like Schallert, alleged that a pharmaceutical company's website tracked her personal identifying information and thus violated CDAFA. The Court dismissed the claims, holding that such conduct does not constitute: (1) access without permission, nor does it (2) cause cognizable damage. *Id.* at 1020-21. As that decision correctly reasons, the CDAFA defines "access" to mean "cause output from" the "logical, arithmetical, or memory function resources of a computer." *Id.* at 1020 (quoting Cal. Penal Code 502(b)(1)). This is consistent with the CDAFA's purpose—to prevent hacking. Schallert's claims fail for the same reason. Though flourished with hyperbole and innuendo, Schallert essentially alleges that he accessed Laird's website. This is not hacking, and the Court should dismiss the claims.

Even if the Court accepts Schallert's argument that him visiting Laird's website is the equivalent of "hacking," the claim also fails because there are no damages. Accepting his allegations as true, Schallert alleges only that he lost some data, IP address and similar information communicated while voluntarily visiting Laird's website. Again, the Court in *Heiting* reached the same conclusion on similar facts. That Court—following "the majority of courts to consider the issue"—held that "CDAFA's private right of action contemplates some damage to the computer system, network, program, or data contained on that computer, as opposed to the data generated by a plaintiff while engaging with the defendant's website." *Id.* at 1021 (citing Cal. Penal Code 502(e)(1).[1]

**F. <u>Schallert's invasion of privacy and intrusion upon seclusion claims fail.</u>**

Schallert's claims for invasion of privacy under Article I, Section 1 of the California

[1] *See also Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014); *In re Google Android Consumer Priv. Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *11 (N.D. Cal. Mar. 26, 2013); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011); *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010).

Constitution and intrusion upon seclusion both fail because Schallert has not alleged a reasonable expectation of privacy or a serious invasion of that interest. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) a serious invasion of the privacy interest. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021). To state a claim for intrusion upon seclusion under California common law, a plaintiff must allege: (1) an intentional intrusion into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy; and (2) that the intrusion occurred in a manner highly offensive to a reasonable person. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). "Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). "The California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

**1. Schallert has no reasonable expectation of privacy in the information allegedly collected.**

The data the FAC identifies—page addresses, referrer fields, browser type, operating system, screen resolution, session identifiers, and timestamps, FAC ¶ 29—is generic technical metadata generated by every website visit. Courts that have addressed whether the disclosure of such routing information violates the privacy clause of the California Constitution have concluded it does not. *Chevron Corp. v. Donziger*, No. 12-MC-80237, 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). "There is no reasonable expectation of privacy when the data collection is within users' common-sense expectation or when the information is not sensitive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022). The Ninth Circuit has held that there is no reasonable expectation of privacy in URLs that reveal only basic identification and address information. *In re Zynga Privacy Litig.*, 750 F.3d

1098, 1108–09 (9th Cir. 2014). An IP address "does not provide any personal identifying information," *Digit Shape Techs., Inc. v. Glassdoor, Inc.*, No. 3:16-MC-80150, 2016 WL 5930275, at *5 (N.D. Cal. Oct. 12, 2016), and there can be no "expectation of privacy" in IP addresses because they "are voluntarily turned over in order to direct the third party's servers." *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007).

The FAC does not identify any intimate, sensitive, or otherwise protected personal information that was actually collected from Schallert. His attempt to manufacture a privacy interest by noting that Laird sells health-related products, FAC ¶ 65, is unavailing: the FAC does not allege that any health-related information about Schallert was actually collected or transmitted to third parties. Schallert alleges only that "routing, addressing, and signaling information" was captured during his visit—technical data about his browser and device, not substantive content about his health or any other private matter.

**2. The alleged conduct is not highly offensive.**

Even if Schallert could demonstrate a reasonable expectation of privacy, the conduct alleged is not sufficiently "serious" to support either claim. California courts require that the invasion constitute an "egregious breach of the social norms" that is "highly offensive" to a reasonable person. *Hernandez*, 47 Cal. 4th at 287. Courts have been "hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications," holding that only the "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion." *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017). Absent such intimate or sensitive information, "more routine data collection practices may be highly offensive" only "if a defendant disregards consumers' privacy choices while simultaneously 'h[olding] itself out as respecting them.'" *Id.* (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 292 (3d Cir. 2016)).

Schallert's allegations satisfy neither standard. He does not allege that Laird collected intimate or sensitive personally identifiable information—only generic routing

metadata. And he does not allege that Laird disregarded his privacy choices while holding itself out as respecting them. There is no allegation that Laird accessed Schallert's device, installed malware, or circumvented any technical barrier. There is no allegation that Laird collected the contents of any private communication, search query, or form submission. *Popa v. Microsoft Corporation*, 153 F.4th 784, 791 (9th Cir. 2025), at *5, is directly on point, finding a complaint which "identifies no embarrassing, invasive, or otherwise private information collected" insufficient to establish either claim. Courts have consistently "refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014); *see also Hammerling*, 615 F. Supp. 3d at 1090; *Low*, 900 F. Supp. 2d at 1025; *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). The use of third-party cookies and tracking pixels on a commercial website "does not strike us as sufficiently offensive, standing alone, to survive a motion to dismiss." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 294-95.

**G. <u>Schallert fails to state a claim under the UCL.</u>**

Schallert lacks standing to bring his California Unfair Competition Law ("<u>UCL</u>") claim because he does not allege he paid anything, was denied anything he paid for, or suffered any out-of-pocket loss. Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). The "mere misappropriation of personal information" does not establish compensable damages under the UCL. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023); *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) ("[J]ust because Plaintiffs' data is valuable in the abstract, and because [the software provider] might have made money from it, does not mean that Plaintiffs have 'lost money or property' as a result."). The claim must be dismissed because Schallert's equitable UCL claim is barred where he has an adequate legal remedy under his other claims. *See Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009); *Nationwide Biweekly Admin., Inc. v. Super. Ct.*, 462 P.3d

461, 488 (Cal. 2020) (UCL is an equitable claim).

Schallert's UCL claim also fails on the merits under both the "unlawful" and "unfair" prongs. The "unlawful" prong "'borrows' violations of other laws and treats them as independently actionable." *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1040 (C.D. Cal. 2013) (citation omitted). Because each of Schallert's claims fails for the reasons set forth above, this claim fails. *BHRS Group, LLC v. Brio Water Technology, Inc.*, 553 F. Supp. 3d 793, 802 (C.D. Cal. 2021). Under the "unfair" prong, the FAC does not identify any legislatively declared policy that Laird's conduct contravenes, nor does it allege facts establishing that the gravity of harm outweighs the utility of Laird's practices. *See Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *Cel-Tech Commc'ns*, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 184 (1999).

## VI. THE DEFICIENCIES IN THE COMPLAINT CANNOT BE CURED.

The Court should dismiss Plaintiff's claim with prejudice because of the above fatal pleading deficiencies. See *Janicki Logging Co. v. Mateer*, 42 F.3d 561, 566 (9th Cir. 1994).

Date: March 25, 2026

HAYNES AND BOONE, LLP

By: */s/ Annie Ticknor*
Annie Ticknor
Brent Owen
Specially Appearing for Defendant
LAIRD SUPERFOOD, INC.