Robert Tauler (SBN 241964)
robert@taulersmith.com
J. Evan Shapiro (SBN 218481)
eshapiro@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff Lawrence Schallert*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LAWRENCE SCHALLERT, individually and on behalf of all others similarly situated,

Plaintiff,

v.

LAIRD SUPERFOOD, INC., a Nevada corporation; and DOES 1 through 25, inclusive,

Defendants.

Case No.: 2:25-CV-12407-SPG-PVC

*[Assigned to Hon. U.S.D.J. Sherilyn Peace Garnett]*

**PLAINTIFF LAWRENCE SCHALLERT'S OPPOSITION TO DEFENDANT LAIRD SUPERFOOD, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with Plaintiff's Req. for Judicial Notice in Oppo. to Defendant's Mot. to Dismiss First Amend. Complaint]*

Hearing
Date: May 20, 2026
Time: 1:30 pm
Courtroom: 6D

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... 3
I. INTRODUCTION .......... 6
II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT .......... 6
III. ADDITIONAL RELEVANT JURISDICTIONAL FACTS .......... 9
IV. LEGAL STANDARDS .......... 10
V. THE COURT SHOULD DENY THE MOTION TO DISMISS .......... 11
A. The Court Has Personal Jurisdiction over Laird in this Action. .......... 11
1. Purposeful Direction: Intentional Act & Harm in California .......... 11
2. Purposeful Direction: Express Aiming at California .......... 11
3. Minimum Contacts: The Controversy Relates to or Arises Out of Laird's Contacts with California .......... 15
4. Minimum Contacts: Reasonableness of Exercising Personal Jurisdiction over Laird in California .......... 15
B. Plaintiff Has Article III Standing to Bring His Claims .......... 16
C. The FAC Sufficiently States Claims Against Laird .......... 19
1. The FAC Sufficiently Complies with Fed. R. Civ. P. 8(a)( .......... 20
2. Plaintiff's Claims Are Not Barred by Issue Preclusion. .......... 20
3. The Tracking Software is a Trap and Trace Device .......... 21
a. Cal. Penal Code Section 638.51 Applies to Software & Websites .......... 21
b. The FAC Does Not Allege that the Tracking Software Transfers the "Contents" of Communications .......... 23
4. The FAC States a Claim Under CDAFA. .......... 25
5. The FAC States a Claim For Intrusion Upon Seclusion. .......... 25
VI. CONCLUSION .......... 26

# TABLE OF AUTHORITIES

Cases

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) .................................. 11

*Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908 (C.D. Cal. Mar. 25, 2026) .................................. 16

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) .................................. 9

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .................................. 16

*Calder v. Jones*, 465 U.S. 783 (1984) .................................. 10

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016) ................ 9

*Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025) ........................ 16

*Casillas v. Six Flags Ent. Corp.*, No. 2:25-cv-6824-CBM-PD, 2025 LX 518344 (C.D. Cal. Dec. 15, 2025) .................................. 12, 20

*Conohan v. Rad Power Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .................................. 20

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) .................. 9

*Evox Prods., LLC v. Lemberg Law LLC*, No. CV 21-7875 PA (AGRx), 2022 U.S. Dist. LEXIS 96897 (C.D. Cal. Feb. 15, 2022) .................................. 14

*First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438 (C.D. Cal. Feb. 14, 2025) .................................. 9

*Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .................................. 17

*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276 (N.D. Cal. Aug. 29, 2025) .................................. 9, 18

*Gabrielli v. Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. Jul. 14, 2025) .................................. 13, 18, 20

*Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sep. 2, 2025).. 20

*Haleon US*, 2025 U.S. Dist. LEXIS 169503 .................................. 15, 18

*Hassid v. Alex and Ani, LLC,* No. CV 25-0679 FMO (JCx), 2026 U.S. Dist. LEXIS 11238 (Jan. 20, 2026) .................................. 12, 16, 20

*Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) ..... 20

*In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589 (9th Cir. 2020).............15, 17

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3rd Cir. 2019) .................................. 17

*Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303 (S.D. Cal. Mar. 12, 2026) ... 16

*Kishnani v. Royal Caribbean Cruises Ltd.* (N.D. Cal. June 24, 2025) 2025 U.S. Dist. LEXIS 120002 ... 24

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ... 9

*Krzyzek v. Openx Techs., Inc.*, No. 25-CV-5588-SI, 2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026) ... 16

*Lewis v. Magnite, Inc.,* No. 2:25-cv-03448-MWC-SSCx, 2025 LX 509487 (C.D. Cal. Dec. 4, 2025) ... 12, 20

*LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F. 4th 852 (9th Cir. 1977) ... 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ... 15

*Martinez v. Choose Your Horizon, Inc.,* No. 24-cv-02798-LB, 2025 LX 367073 (N.D. Cal. Aug. 31, 2025) ... 13

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011) ... 12, 14

*Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 LX 193021 (9th Cir. June 20, 2025) ... 12

*Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ... 20

*Mitchener v. Curiositystream, Inc.* (N.D. Cal. Aug. 6, 2025) 2025 U.S. Dist. LEXIS 155489 ... 24

*Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. July 25, 2024) ... 20, 22

*Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017) ... 17

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ... 15

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744 (N.D. Cal. Nov. 24, 2025) ... 16, 18

*Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. July 18, 2025) ... 20

*San Remo Hotel, L.P. v. San Francisco City & Cnty.*, 364 F.3d 1088 (9th Cir. 2004) ... 19

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. October 21, 2024) ... 20

*Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) ... 16

*Thomas v. Papa John's Int'l, Inc.,* Nos. 24-3557, 24-3834, 2025 LX 192037 (9th Cir. June 18, 2025) ... 12

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ... 15

*Wolf v. Strankman*, 392 F.3d 358 (9th Cir. 2004) .......... 9
*Zarif v. Hwareh.com, Inc.* (S.D. Cal. 2025) 789 F. Supp. 3d 880 .......... 22, 23

Statutes

18 U.S. Code § 3127(4) .......... 22
Cal. Pen. Code § 638.50 (b) .......... 23
Cal. Penal Code § 629.51(a)(2) .......... 8
Cal. Penal Code § 631(a) .......... 20
Cal. Penal Code § 638.50(c) .......... 7

Other Authorities

147 Cong. Rec. S10990-02, SI 1006, 2001 WL 1297566 (Oct. 25, 2001) .......... 21
Assemb. Com. Pub. Safety, Analysis of AB 929, at K (Apr. 7, 2015) .......... 21
Pub. L. 99–508, title III, § 301(a), 100 Stat. 1868 (Oct. 21, 1986) .......... 20

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Lawrence Schallert ("Plaintiff") opposes Defendant Laird Superfood, Inc. ("Laird or Defendant") Motion to Dismiss the First Amended Complaint (ECF No. 18) (the "FAC") (the "Motion"). The FAC alleges that Laird uses the software of numerous third parties, including but not limited to TikTok, Meta, Google, Snap, LiveRamp (the "Tracking Software") on its website, located at www.lairdsuperfood.com (the "Website").

For all the reasons set forth below, the Court should deny the Motion in its entirety.

## II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

The FAC alleges that Laird operates a highly interactive commercial website selling food and supplement products tied to health and fitness directly to consumers. ECF No. 18, ¶¶ 10-11. The Website contains content regarding "functional ingredients, recipes, and other topics associated with personal health." *Id.*, ¶ 65. Accordingly, a visitor's interaction with the Website "can reveal highly sensitive health-related information, including an individual's dietary restrictions, nutritional needs, potential medical conditions, and personal health goals." *Id.*

The Website is directed at California consumers specifically, as it allows them to search for retail locations in the state where Laird's products are sold. *Id.*, ¶¶ 10-11. The FAC alleges that Laird promotes and advertises its products to Californians through social media advertising and "brand collaborations emphasizing" the availability of Laird's products at physical California locations. *Id.* The Website sells product directly to consumers in California, and allows them to enroll in recurring product shipments. *Id.* The Website also includes "disclosures and policies directed specifically to California consumers." *Id.*, ¶ 11.

The FAC explains that Laird is aware of the geolocation of visitors to the Website before the Website transmits content to the visitors' devices. *Id.*, ¶ 14. Using this knowledge, and with its technical ability to control access to the Website based on device data, Laird "could prevent California consumers from accessing the Website" or from

being subjected to the Tracking Software; however Laird has chosen not to do so. *Id.*, ¶ 15. In other words, Laird intentionally allows individuals located in California to visit the Website and receive the Tracking Software. *Id.*

The Tracking Software consists of software provided by social media companies including Meta (Facebook), TikTok and Snap, technology companies such as Google and Microsoft, and data broker LiveRamp on the Website. *Id.*, ¶¶ 3, 22-32. It further alleges that the Tracking Software was in operation when Plaintiff visited the Website from a physical location in California, on April 2, 2025. *Id.*, ¶ 6, 66-70. Plaintiff had no knowledge of, and did not consent to, the operation of the Tracking Software on him and his device; nor had Laird obtained a court order or any other authorization to use the Tracking Software at the time. *See id.*, ¶¶ 6, 60, 68, 79, 86, 94, 97-98.

The FAC further alleges that during his visit, "Plaintiff reasonably understood that his interaction with the Website would occur between his device and [Laird] as the Website operator and did not expect that information generated through those communications would be disclosed to unrelated third parties." *Id.*, ¶ 66. However, as "Plaintiff's browser requested and loaded webpages [on] the Website," and unknown to Plaintiff, the Tracking Software caused the URLs of webpages Plaintiff visited on the Website, along with information about him, his location, his browser and his device that can be used to identify him, to be transmitted to the "third-party advertising and analytics platforms" that provided the Tracking Software. *Id.*, ¶¶ 29, 67-68. Further, the Tracking Software acting on Plaintiff includes "third-party tracking cookies that assign ***persistent identifiers*** enabling advertising and analytics platforms to recognize the same individual across multiple pages, browsing sessions, and even across entirely different websites." *Id.*, ¶ 25. (These are placed on the individual visitor's browser.) These operations serve Laird's "advertising operations", enabling "Defendant and its advertising and analytics partners [to] measure user activity, analyze consumer behavior, and facilitate targeted advertising and marketing analytics." *Id.*, ¶ 13. They also benefit both Laird and the advertising/analytic partners such as Meta and LiveRamp commercially. *Id.*, ¶¶ 13, 127.

The FAC alleges that, as the result of being subjected to the Tracking Software on the Website, Plaintiff sustained numerous injuries. His interactions with the Website were transmitted to third parties who likely integrated it into behavior profiles of him that can be used for unknown purposes, and used it, with the help of "persistent identifiers" to track his internet browsing beyond his visit to the Website; he lost control over how information that can identify him is collected and disseminated; Laird and its advertising/analytics partners obtained commercial value from the operation of the Tracking Software on him, diminishing the economic value of Plaintiff's personal information; and he is at substantial risk of having the information extracted from his visit "retained, aggregated with other data sources, and used for purposes far removed from the reason Plaintiff visited the Website." *Id.*, ¶¶ 68-72, 114, 128, 148-150

The FAC asserts that Laird's actions, detailed above constitutes a violation of Cal. Penal Code § 638.51. Section 638.51 prohibits the installation or use of a "trap and trace device" as defined in Cal. Penal Code § 638.50(c), without a court order. Section 638.50(c) defines "trap and trace device" as

> a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

Here, the FAC asserts that the Tracking Software meets the above definition because it captures information about Plaintiff, his location, his device and his browser contained on "electronic impulses" that are "incoming" to third parties and the Website, and the information constitutes "routing, addressing or signaling information" that is "reasonably likely to identify" Plaintiff and his device the source of electronic communications. ECF No. 18, ¶¶ 88-99. The electronic communications in question are the data and/or signals exchanged between Plaintiff's device, on the one hand, and the Website – or the servers of the third parties to which the Tracking Software directs the

information about Plaintiff and his visit – on the other hand, during Plaintiff's visit.[1]

The FAC asserts that the operation of the Tracking Software on the Website constitutes a violation of California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502. It alleges that with use of the Software, Laird caused Plaintiff's device – and those of individuals in California similarly situated to Plaintiff who visited the Website during the relevant limitations period – to generate and transmit data stored on or generated by the devices, namely the information sent to the third-party advertising and analytics platform companies. *Id.* ¶¶ 104-115. The FAC alleges that Laird knowingly and without permission accessed Plaintiff's device and took copied and made use of the data generated by it. *Id.* ¶ 104. It further alleges that the execution of the Tracking Software caused Plaintiff's device "to produce output from the logical, memory and network resources" of his computer and browser. *Id.* ¶ 104. Based on these allegations, Plaintiff asserts that Laird violated §§ 502(c)(1), (c)(2) and (c)(4). The FAC notes that Laird caused damage and loss within the meaning of § 502(e) by, consuming computing resources on Plaintiff's device and causing his browser to generate outbound communications to tracking servers that were unrelated to the webpages Plaintiff viewed on the Website. *Id.* ¶ 111. Laird also caused the alteration of data stored on Plaintiff's device through the use of persistent tracking identifiers, and the alteration of how Plaintiff's browser communicated with servers. *Id.* ¶ 12.

## III. ADDITIONAL RELEVANT JURISDICTIONAL FACTS

The Website contains a specific webpage setting forth privacy policies directed specifically at consumers located in California. *See* https://privacy.lairdsuperfood.com/privacy-policy#california-privacy-notice (last visited 4/29/2026); *see also* Plaintiff's Req. for Jud. Notice, filed concurrently herewith ("Pltf.

---

[1] The term "electronic communication" as used in Cal. Penal Code § 638.50(c) (definition of "trap and trace device") is defined in pertinent part as "any transfer of signs, signals, [ ] data, or intelligence of any nature [ ] by a wire, radio [or] electromagnetic [. . .] system." Cal. Penal Code § 629.51(a)(2).

RJN"), at 1.; Pltf. RJN Ex. 1. Laird Hamilton is the Co-Founder and Chief Innovator of Laird, and has been a Member of Laird since 2015. *See* Pltf. RJN, at 2.; Laird's Form 10-K for the Fiscal Year ending Dec. 31, 2025, Pltf. RJN Ex. 2.

There is a substantial amount of content on the internet available to consumers in California associating Mr. Hamilton with a residence in Malibu, California, activities in California, and California surf culture. *See* Pltf. RJN, at 3; Pltf. RJN Exs. 3-5.

## IV. LEGAL STANDARDS

"On a motion to dismiss for lack of personal jurisdiction, the court 'take[s] as true all uncontroverted allegations in the complaint.'" *First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438, at *2 n.1 (C.D. Cal. Feb. 14, 2025) (quoting *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F. 4th 852, 858 (9th Cir. 1977)).

A facial attack to the Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is confined to the allegations in the complaint. *Wolf v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested." *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276, at *8 (N.D. Cal. Aug. 29, 2025) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## V. THE COURT SHOULD DENY THE MOTION TO DISMISS

### A. The Court Has Personal Jurisdiction over Laird in this Action.

The Ninth Circuit applies a 3-part ***"minimum contacts" test*** for specific personal jurisdiction over a non-resident Defendant. That requires "(1) the non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *See, e.g., Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). "For claims sounding in tort, like the privacy and data use violations [ ], we most often employ a purposeful direction analysis." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (footnote omitted). "[T]he ***purposeful direction test*** requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751 (citation omitted) (emphasis supplied). This test, also known as the effects test, is drawn from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).

#### 1. Purposeful Direction: Intentional Act & Harm in California

Here, there is no question that that the FAC alleges intentional acts by Laird, vis-à-vis Plaintiff and his device located in California in connection with Plaintiff's April 2025 visit. Further, the FAC alleges that the operation of the Tracking Software upon Website visitors and devices in California causes harm to the visitors that is sustained in California, where they are located. Moreover, the type of harm alleged in the FAC is of the kind that Laird would know would be suffered in California.

#### 2. Purposeful Direction: Express Aiming at California

The key question before the Court is whether Laird "expressly aimed" at California by choosing to subject visitors to its Website known to be in California to the Tracking

Software, including the depositing of third-party cookies on the devices of those visitors.

Two principles espoused in *Briskin*, and its progeny, should be central to the Court's analysis of the question. First, the depositing of "tracking software" on devices in a forum state, an "entry into the state of California by electronic means," causing the transmission of data relating to the device and its owner to support the depositing party's business practices, can establish express aiming at the state, as long as such action is not "random, fortuitous, or attenuated." 135 F.4th at 756-57. Second, a defendant's operation of an interactive website that is disseminated to a nationwide audience may entail express aiming at a particular forum state even where it does not target consumers in that state in a manner different from how it targets consumers elsewhere. *See id.*, at 757 ("Express aiming does not require differential targeting").

In *Briskin*, the defendant was found to have purposely directed its conduct toward California because the defendant was "alleged to target California consumers to extract, collect, maintain, distribute, and exploit for its own profit," where the defendant's "business model [was] to . . . obtain valuable personal data about California consumers for its own commercial gain." *Id.* at 755-56. The defendant "[knew] about its California consumer base, conduct[ed] its regular business in California, contact[ed] California residents, interact[ed] with them as an intermediary for its merchants, install[ed] its software onto their devices in California, and continue[d] to track their activities." *Id.* at 759. The Ninth Circuit rejected the defendant's argument that the defendant's conduct was "mere happenstance arising from the California consumers' choice to do business with [the defendant]," because the defendant's "intentional activities constitute[d] express aiming toward California and its consumers to obtain and use their personal data for its own commercial gain." *Id.* at 756.

In *Briskin*, the Ninth Circuit expressly overruled the holding, set forth in *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), that express aiming required a "forum-specific focus" or "differential targeting." *See Briskin*, 135 F.4th at 757-58. In particular, the *Briskin* Court held: "[R]equiring differential targeting would have the

perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state that injure that state's residents." *See id.* at 758. Therefore, "an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." *See id.* at 758 (cleaned up) (quotations omitted).

Ninth Circuit appellate and district court decisions handed down in *Briskin*'*s* aftermath make clear that operators running retail operations on nationally available interactive websites may be subject to personal jurisdiction in California under *Briskin's* key holdings. *See, e.g., Thomas v. Papa John's Int'l, Inc.,* Nos. 24-3557, 24-3834, 2025 LX 192037, at *2-3 (9th Cir. June 18, 2025) ("Because Thomas also alleges that Papa John's uses its website to intentionally collect information that invades the privacy of users, knowing that any alleged harm will be suffered in California, the allegations satisfy the purposeful direction test."); *Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 LX 193021, at *2-3 (9th Cir. June 20, 2025) ("Defendants' website 'appeals to, and profits from, an audience in' California [(citing *Briskin*, 135 F. 4th, at 754 (quoting *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011)),] and is used to collect information intentionally from users, knowing that privacy harms will be suffered in California" (citing *Briskin*, 135 F. 4th, at 756)); *Hassid v. Alex and Ani, LLC,* No. CV 25-0679 FMO (JCx), 2026 U.S. Dist. LEXIS 11238, at *10-12 (Jan. 20, 2026) ("Plaintiff would not have suffered an invasion of privacy had defendant not contracted with TikTok to install TikTok Software on its Website to collect and send plaintiff's private information to TikTok in California."); *Lewis v. Magnite, Inc.,* No. 2:25-cv-03448-MWC-SSCx, 2025 LX 509487, at *21-22 (C.D. Cal. Dec. 4, 2025); *Casillas v. Six Flags Ent. Corp.*, No. 2:25-cv-6824-CBM-PD, 2025 LX 518344, at *7-10 (C.D. Cal. Dec. 15, 2025) ("Plaintiff alleges Defendant's Website is an interactive website [ . . . ] which sells amusement park tickets targeted at California residents, and Defendant's Website expressly refers to California

residents and California privacy laws [ . . . ] The FAC therefore sufficiently alleges Defendant expressly aimed its conduct at California to satisfy the second prong of the *Calder* effects test because Defendant's alleged conduct was 'targeted at a plaintiff whom the defendant kn[ew] to be a resident of the forum state' and the 'geographic scope' of Defendant's 'commercial ambitions' for its Website extended to California residents."); *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 LX 273067, at *18-23 (N.D. Cal. July 14, 2025) ("Gabrielli alleges that Motorola knowingly collected the data of California residents because its website allegedly collected IP addresses and geolocation data that revealed where the users resided."); *Martinez v. Choose Your Horizon, Inc.*, No. 24-cv-02798-LB, 2025 LX 367073, at *11-14 (N.D. Cal. Aug. 31, 2025).

This facts in this action are analogous to those in the above-cited cases. Here, Laird installed and used the Tracking Software on the Website with knowledge that visitors in California were being subjected to it – and chose not to prevent that from happening. Further, the FAC alleges that this was done as part of Laird's "business model" – in other words, for the purpose of engaging in targeted advertising directed at these California visitors by transmitting their data to advertising and analytics platforms. This activity must be viewed in the context of the Website's content. First, the Website appeals to individuals browsing the internet from California, because it allows them to retrieve over 1,000 retail locations in the state selling Laird's products. Second, Laird's name is associated with Laird Hamilton, its co-founder, who, through webpages on the internet is associated with California, due to his history of surfing in the state, as well as his residence and activities here. This association, which must be known to Laird, means that the Laird brand, and the Website, is particularly attractive to internet browsers in California. Further, that the Website has a specific privacy policy page for California visitors confirms Laird's knowledge of and interest in attracting California visitors to the Website. These facts make it virtually impossible for Laird to argue that the operation of the Tracking Software on California visitors to the Website is "random, fortuitous, or attenuated."

Relevant to the Court's determination of "express aiming" is also the question of

whether a defendant "anticipated, desired, and achieved a substantial California viewer base." *Evox Prods., LLC v. Lemberg Law LLC*, No. CV 21-7875 PA (AGRx), 2022 U.S. Dist. LEXIS 96897, at *18-21 (C.D. Cal. Feb. 15, 2022) (citing *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1229-30 (9th Cir. 2011)). The contents of the Website, as well as Hamilton Laird's well-established connection with the surf scene in California, make clear that Laird anticipated and desired individuals in California to visit its Website and buy its products either online or at retail locations.

Accordingly, the Court should find that Laird's conduct underlining Plaintiff's claims in this action was expressly aimed at California.

**3. Minimum Contacts: The Controversy Relates to or Arises Out of Laird's Contacts with California.**

Just as with Briskin's claim against Shopify, Plaintiff's claim against Laird, for subjecting him to the Tracking Software, arises out of "[Laird]'s contact with [his] device, which [Laird] allegedly knew was in California." *Briskin*, 135 F.4th, at 760. Here, the FAC alleges that Laird had at the very least constructive knowledge that Plaintiff was in California at the time of the tortious conduct (the Website visit). Moreover, as alleged in the FAC, Laird had the capacity to exclude visitors from California from use of the Tracking Software, but chose not to. Further, just as with Briskin's claim against Shopify, Plaintiff's § 638.51 claim is related to Laird's California conduct because Plaintiff has alleged injury of the type that would tend to be caused by the "extracti[on] of personal data" from devices in California. *Briskin*, 135 F.4th, at 760. In other words, Plaintiff's injury – the invasion of his privacy and the destruction of his anonymity while browsing the internet – is of the type that would likely be caused by the capturing data that is located on his device.

**4. Minimum Contacts: Reasonableness of Exercising Personal Jurisdiction over Laird in California.**

The only basis upon which Laird claims that the exercise of personal jurisdiction over it in this state is that the website "does not specifically target" California. *See* Mot.,

ECF No. 20, at 12:20-26. The notion that it would such exercise would be unfair is almost laughable in light of the numerous contacts between Laird and California identified in the FAC and Plaintiff's RJN. The FAC explains that California residents can discover "more than 1,200 retail locations" where they can buy Laird products from the Website. ECF No. 18, ¶ 10. Laird trades off of the name of its co-founder, Laird Hamilton, who is widely associated with California, Malibu and surfing.

**B. Plaintiff has Article III Standing to Bring His Claims.**

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). Here, contrary to DDI's assertion, Plaintiff has shown, through his allegations, that he has suffered an injury in fact meeting the requirements of *TransUnion*.

The FAC alleges that Laird's subjection of Plaintiff to the Tracking Software both violated his privacy and caused him a particularized, concrete injuries. The injuries include loss of control of his identifying information, and the record of the webpages he visited, including this data's use to create behavioral profiles of him, and to track his ongoing internet activity; the diminution of the economic value of such data to Plaintiff; and the exposure to the likely use of the data for purposes far removed from the circumstances of Plaintiff's visit to the Website.

Violations of individuals' rights to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). "A right to privacy 'encompass[es] the individuals' control of information concerning his or his person.'" *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 598-599 (9th Cir. 2020) (*"In re Facebook"*); *accord Haleon US*, 2025 U.S. Dist. LEXIS 169503, at *12-13 (holding that "the Ninth Circuit has not disavowed *[In re] Facebook* in

the wake of *TransUnion*"). Binding Ninth Circuit precedent explains that various rights codified in CIPA ***are substantive and not procedural rights*** that are sufficient for Article III standing. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) ("The Ninth Circuit has found that each of the statutory claims brought here codify substantive rights to privacy.") (citations omitted).

A body of Ninth Circuit caselaw finding Article III standing in cases based on the privacy harms engendered by the use of tracking software on websites is growing by the day. *See, e.g., Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193, at *3 (N.D. Cal. Jan. 27, 2026) (finding standing where third parties "surreptitiously obtained" a wide range of information about the plaintiffs, including their "browsing history, visit history, [and] website interactions")*; Krzyzek v. Openx Techs., Inc.*, No. 25-CV-5588-SI, 2026 U.S. Dist. LEXIS 15195, at *3 (N.D. Cal. Jan. 27, 2026) (finding standing where the defendant allegedly "compiled detailed user profiles" by collecting cookies, IP addresses, email addresses, and "information regarding the users' activity on the websites and communications with the websites")*; Alex and Ani,* 2026 U.S. Dist. LEXIS 11238, at *5-7 (finding plaintiff asserting a claim under § 638.51 based on surveillance by TikTok software on a website had Article III standing where he had alleged that his private information had been disclosed and that the tracking of him by TikTok "would cause harm or a material risk of harm to [his] controlling [his] personal information"); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744, at *2, *22 (N.D. Cal. Nov. 24, 2025) ("Plaintiff's allegations [t]hat Defendants deprived him of control over his personal information constitute a sufficiently concrete injury for Article III standing,…", as did Plaintiff's assertion that such loss of control "diminished [the] value [of such information]"); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) (finding injury-in-fact where trackers on defendant's website "collected a broad set of their personal identifying and addressing information without their consent and in violation of CIPA"); *Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908, at *18-21 (C.D. Cal. Mar. 25, 2026); *Jones v. Skullcandy,*

*Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303, at *14-16 (S.D. Cal. Mar. 12, 2026); *Six Flags Ent. Corp. ("Six Flags*"), 2025 LX 518344, at *22-23; *Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024).

In *In re Facebook*, the Ninth Circuit found that Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." *Id.* at 599. The Ninth Circuit concluded that such surreptitious "unauthorized exploration" of someone's private life and information constituted a cognizable and concrete Article III injury: "Here, Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm ***or a material risk of harm*** to their interest in controlling their personal information. As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information." *Id.* (emphasis added).

Similarly, the Second and Third Circuits have determined that plaintiffs sufficiently alleged concrete, particularized injuries in fact for purposes of Article III and statutory standing where they alleged that defendants had caused monitoring of plaintiffs' web browsing across multiple websites, the building of detailed profiles based on plaintiffs' internet activity, and the related dissemination of such browsing data – precisely the type of activity Plaintiff alleges here. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3rd Cir. 2019) ("*In re Google*") (court found standing where plaintiffs alleged unauthorized tracking and sale of browsing histories, reasoning that the loss of control over personal data was itself an injury); *Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017) (affirming district court's finding that plaintiffs had sufficiently alleged a concrete injury for purposes of Article III standing where they alleged that defendant had engaged in the unauthorized accessing and monitoring of their web-browsing activity, noting that such activity "implicates harms similar to those associated with the common law tort of intrusion upon seclusion").

Numerous California district courts have followed the approach of *In re Facebook*, *In re Google*, and *Pulsepoint*. For example, in July and August of this year, two Northern

District courts rejected standing-based dismissal motions remarkably similar to DDI's – ones based on the contention that the plaintiff had "fail[ed] to allege the collection of any particular information during his visits to [ ] Websites, let alone the collection of sensitive, personal information . . ." *Haleon US*, 2025 U.S. Dist. LEXIS 169503, at *12; *see also Gabrielli v. Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *14 (N.D. Cal. Jul. 14, 2025) ("Motorola argues that Gabrielli has failed to plead an injury-in-fact—including by failing to identify what specific information was transmitted or what damages he suffered—and thus has no standing.")

In both these Northern District cases, the court held that the plaintiff's allegation that cookies and tracking technology were used to collect, track and compile his or her internet activity – providing information on such things as website interactions, interests and preferences and shopping behaviors – established a concrete, particularized injury in fact grounding Article III standing. *See Haleon US*, 2025 U.S. Dist. LEXIS 169503, at *14-15; *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16-*17. The *Haleon* and *Motorola* courts determined that the plaintiffs' allegations that the defendants' actions had deprived them of control over personal information regarding their internet activity and profiles were sufficient to support their Article III standing. *See Haleon US*, 2025 U.S. Dist. LEXIS 169503, at *15; *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *16. The Complaint in this action contains similar allegations.

In November, 2025, Judge Jacqueline Scott Corley of the Northern District of California found that Plaintiff had established standing to bring a claim under § 638.51 where Plaintiff alleged that his visit to the Burger King website had diminished the value of his personal information because third-party cookies on that website had disseminated that information to third parties for tracking and other purposes. *See Pemberton*, 2025 LX 598744, at *8-*12.

**C. The FAC Sufficiently States Claims Against Laird.**

Plaintiff has sufficiently alleged that DDI violated § 638.51. None of DDI's arguments asserting that Plaintiff has failed to state a cause of action withstands basic

scrutiny.

**1. The FAC Complies With Fed. R. Civ. P. 8(a)(2)**

The FAC is not "prolix" or "confusing" as Laird claims. *See* ECF No. 20, at 13:6-12. It provides a short and plain statement of what software Laird installed on its Website does with the identifying and browsing data of visitors from California, the harm the software creates, and the reasons why these facts demonstrate Laird's violation of California statutes and common law duties. Nothing more is required. Tellingly, Laird's section on this topic is utterly devoid of any apposite caselaw. Laird both complains about "surplusage" but suggests that Plaintiff must file a complaint hundreds of pages long to detail all of the software the Laird itself chose to place on its Website. That seems unworkable. However, if the Court believes such detail is necessary, Plaintiff requests leave to amend to include it in a Second Amended Complaint. Plaintiff has all of the details. The only question is whether Rule 8(a)(2) actually requires such a detailed and lengthy pleading.

**2. Plaintiff's Claims Are Not Barred by Issue Preclusion.**

As Laird notes, "issue preclusion bars relitigation of issues actually and necessarily decided in prior proceedings." *See id.*, at 14-15 (citing *San Remo Hotel, L.P. v. San Francisco City & Cnty.*, 364 F.3d 1088, 1094 (9th Cir. 2004). The problem with Laird's arguments is that there has been no prior proceeding in which a court determined that Plaintiff had not stated a claim under the California statutes at issue in this case, or for common law violations, based on the installation and use of software from TikTok, Meta, Google, Snap, LiveRamp, ***on Laird's Website***. Laird frames the issue as "whether website tracking software constitutes a 'trap and trace device'." *See* ECF No. 20, at 15:9-10; 23-25. The framing is self-serving but ignores the nature of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). It is a challenge to a specific pleading. Further, the Court should decline to use its discretion to apply non-mutual issue preclusion to rulings on a highly disputed pure question of law issued in an order dismissing a complaint.

### 3. The Tracking Software is a Trap and Trace Device.

#### *a. Cal. Penal Code Section 638.51 Applies to Software & Websites*

Software or code running on websites that "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication" constitutes a trap and trace device under §§ 638.50-51. *See, e.g., Alex & Ani, LLC*, 2026 U.S. Dist. LEXIS 11238, at *4-7 (C.D. Cal. Jan. 20, 2026); *Casillas v. Six Flags Ent. Corp.*, 2025 U.S. Dist. LEXIS 260100, at *21-22 (C.D. Cal. Dec. 15, 2025); *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *39-42 (C.D. Cal. Dec. 4, 2025); *Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745, at *10-15 (N.D. Cal. Sep. 2, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075, 1093-1094 (N.D. Cal. July 18, 2025); *Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *30-32 (N.D. Cal. July 14, 2025); *Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076, at *8 (C.D. Cal. Feb. 3, 2025); *Conohan v. Rad Power Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246, at *16 (C.D. Cal. Apr. 3, 2025); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930-931 (N.D. Cal. October 21, 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076-1077 (C.D. Cal. July 25, 2024). This is because the plain wording of the sections is unambiguously broad, encompassing internet technology and software.

Moreover, the history of these statutory provisions establishes that the language used therein – particularly with respect to the definition of a "trap and trace device" – was enacted in 2015, and was copied from federal statutes that were intended by Congress to apply to the internet, and which courts have held to apply to software.

CIPA was enacted in 1967, including a provision (Cal. Penal Code § 631(a)) prohibiting eavesdropping. Cal. Penal Code §§ 630 *et seq.*

In 1986, Congress enacted the Electronic Communications Privacy Act, which includes a prohibition on the use of a trap and trace device "without first obtaining a court

order under section 3123 of this title, of under the Foreign Intelligence Surveillance Act of 1978…". Pub. L. 99–508, title III, § 301(a), 100 Stat. 1868 (Oct. 21, 1986). In 2001, Congress, determining that the currently-existing definitions of pen registers and trap and trace were antiquated, modified them in the USA Patriot Act of 2001 so as to expressly include electronic communications beyond telephonic communications within their ambit. *See* Pub. L. No. 107-56, § 216, 115 Stat. 272 (2001). The legislative history of the Patriot Act establishes that the modifications were made to "ensure[ ] that the pen register and trap and trace provisions apply to facilities other than telephonic lines." 147 Cong. Rec. S10990-02, SI 1006, 2001 WL 1297566 (Oct. 25, 2001), also available at https://www.congress.gov/107/crec/2001/10/25/147/144/CREC-2001-10-25-pt1-PgS10990-2.pdf (last viewed 4/9/2026).

Nearly a decade after Congress revised the federal definitions of pen registers and trap and trace devices, the Trap and Trace law was enacted as Assembly Bill 929 on August 13, 2015. *See* https://legiscan.com/CA/bill/AB929/2015. It added to Chapter 1.5, Invasion of Privacy Cal. Penal Code §§ 638.50-51. The California Legislature was aware of the federal definitions when enacting §§ 638.50-51: In considering AB 929 in 2015, the California Assembly quoted directly from the federal definitions of pen registers and trap and trace devices enacted in the USA Patriot Act – in particular, their use of the words "dialing, routing, addressing, and signaling information" and their reference to "electronic communication." *See* Assemb. Com. Pub. Safety, Analysis of AB 929, at K (Apr. 7, 2015), available at: https://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html (last viewed 4/23/2026).

The definition of a "trap and trace device" set forth in § 638.50(c) adopts nearly identically the definition of "trap and trace device" used in applying federal privacy statutes, set forth in 18 U.S. Code § 3127(4). The federal definition reads:

> the term "trap and trace device" means a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing,

> addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information shall not include the contents of any communication; . . .

18 U.S. Code § 3127(4).

*b. The FAC Does Not Allege that the Tracking Software Transfers the "Contents" of Communications.*

First, the FAC alleges that the Tracking Software captured *technical, device-level identifying signals*—the kind of source-identifying signaling information the trap and trace statute directly addresses. Further, Courts applying § 638.50(c) recognize that technical identifiers are classic "addressing" information and are not "contents." *See, e.g., Greenley*, 684 F. Supp. 3d at 1050 (holding "a private company's surreptitiously embedded software" that "identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" can be a pen register); *Zarif v. Hwareh.com, Inc.* (S.D. Cal. 2025) 789 F. Supp. 3d 880, 898 (same); *Moody*, 742 F. Supp. 3d at 1076 ("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51.").

Under relevant caselaw, the fact that software captures the contents of visitors' communications with the website neither means that the software cannot *also* be identifying visitors so as to create liable under Penal Code § 638.51(a) for doing so. *See, e.g., Shahnaz Zarif v. Hwareh.com, Inc.* (S.D. Cal. Feb. 12, 2025), No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519, at *39 (denying a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) claims filed under Cal. Pen. Code §§ 631(a) and 638.51 based on a website's use of related software).

In *Hwareh,* the Plaintiff, on behalf of herself and a proposed class, alleged that a website-based pharmacy, employed "the Facebook Pixel, a tracking tool, to record her activity and redirect the activity to Facebook for 'business purposes.'" *Id.* at *3 (internal quotation marks omitted). She further alleged that the pharmacy "'deployed numerous

other spyware software devices on its website that, much like Facebook Pixel,' captured 'real-time communications' and transmitted 'them in real time to these third-party spyware companies.'" *Id.* (citations omitted). The court rejected the pharmacy's motion to dismiss the claim that the Facebook Pixel on the website constituted a *pen register* prohibited under Cal. Penal Code § 638.51, which the court noted is defined as recording or decoding "dialing, routing, addressing, or signaling information [ … ] but not the contents of a communication." *Id.* at *30 (quoting Cal. Pen. Code § 638.50 (b)).

The *Hwareh* court also rejected the pharmacy's motion to dismiss the interception claim under Cal. Penal Code § 631(a), which requires that the "contents of a communication" be recorded, intercepted or eavesdropped upon. *Id.* at *26. The pharmacy argued that the Plaintiff's " 'mouse clicks and movements, keystrokes, search terms, and pages and content viewed by [her]'" did not constitute the contents of an electronic communication under either the federal Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(c)-(d), or Cal. Penal Code § 631(a). *Id.* at *17 (citations omitted); *26. The court rejected this argument, finding that while Plaintiff alleged that the Facebook Pixel on the pharmacy's website did capture her "record information," she also alleged that it captured her "searches [i.e. the entering of search terms on the website] for prescription medications for herself, her infant, and her elderly father." *Id.* at *19-20; *26.

Thus, under *Hwareh*, where a website operator like Blis deploys software that both captures identifying record information and search queries constituting the contents of a communication, and where this process involves the sharing of this information with third parties, a plaintiff may assert claims (1) under § 631(a) regarding the capturing of the contents of a communication, and (2) under § 638.51(a) for unauthorized devices to identify the source of a communication. The fact that a website may be capturing the content of a communication does not immunize the website operator for its use of device that without a party's consent identifies their identity.

Finally, Laird's reliance on *Mitchener v. Curiositystream, Inc.* and *Kishnani v. Royal Caribbean Cruises Ltd.* is both unavailing and misleading. *Mitchener* and *Kishnani*

expressly limit their reasoning to a particular type of fingerprint, one that reveals *biographical* information. *See Mitchener v. Curiositystream, Inc.* (N.D. Cal. Aug. 6, 2025) 2025 U.S. Dist. LEXIS 155489, at 11 ("Any 'fingerprint' that reveals *biographical* information is 'the content' of any communication between visitor and Website." (emphasis added); *Kishnani v. Royal Caribbean Cruises Ltd.* (N.D. Cal. June 24, 2025) 2025 U.S. Dist. LEXIS 120002, at 10-11 (same). That limitation matters: those cases address a fingerprint that discloses biographical facts about the person, whereas Plaintiff alleges a fingerprint built from *technical* device identifiers and parameters, not the substance of a message or biographical content. Compl., ¶¶ 23, 28. Defendant's argument therefore rests on a misreading of its authorities and a mischaracterization of the Complaint's allegations, neither of which provides a basis to sustain a demurrer.

**4. The FAC States a Claim Under CDAFA.**

At least one California district court has held that the operation of tracking software a commercial website constitutes a violation of CDAFA. *See e.g. Esparza v. Koll's, Inc.*, 723 F. Supp. 3d 934, 945 (S.D. Cal. 2024). In *Koll's*, the Court held that the plaintiff had established CDAFA's "without permission" requirement by alleging that the defendant had installed tracking and surveillance software with obtaining the plaintiff's prior consent. Further, the Court held that plaintiff had established damage or loss under Cal. Penal Code § 502(e) where he alleged that the defendant and the software provider "all profit from secretly exploiting their ability to identify anonymous individuals who have visited [the d]efendant's website" and that the software provider used the data it received to engage in targeted marketing for the defendant's benefit. *Id.*

**5. The FAC States a Claim For Intrusion Upon Seclusion.**

The FAC alleges that Plaintiff had an expectation of privacy in his interactions with the Website, which includes webpages that have health-related products. Plaintiff's choices of products might reveal sensitive and confidential facts about his life. Further, use of identifying data and the URLS of webpages about health products considered by Plaintiff

to build a consumer profile on him and track him on an ongoing basis would be considered highly offensive to a reasonable person and an egregious breach of social norms.

## VI. CONCLUSION

For the reasons stated herein, the Court should deny in its entirety Defendant's Motion to Dismiss the First Amended Complaint.

DATED: April 29, 2026 **TAULER SMITH LLP**

By: */s/ J. Evan Shapiro*
J. Evan Shapiro, Esq.
Attorneys for Plaintiff
Lawrence Schallert