**STEPTOE LLP**
Carol Brophy (SBN 155767)
*cbrophy@steptoe.com*
One Market Plaza
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6699

**STEPTOE LLP**
Melanie A. Ayerh (SBN 303211)
*mayerh@steptoe.com*
John P. Wallan (SBN 353689)
*jwallan@steptoe.com*
633 W. Fifth St., Suite 1900
Los Angeles, California 90071
Telephone: 213-439-9400
Facsimile: 213-439-9599

Attorneys for Defendant
LAIRD SUPERFOOD, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE SCHALLERT, an individual,<br>Plaintiff,<br>v.<br>LAIRD SUPERFOOD, INC.,<br>Defendant. | Case No. 2:25-CV-12407-SPG-PVC<br><br>Assigned to Hon. Sherilyn Peace Garnett<br><br>**DEFENDANT LAIRD SUPERFOOD, INC.'S REPLY TO PLAINTIFF'S OPPOSTION TO MOTION TO DISMISS**<br><br>Hearing Date: May 20, 2026<br>Time: 1:30 p.m.<br>Courtroom 5C |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

a. This Court Lacks Personal Jurisdiction Over Laird. ..... 2

b. Plaintiff Lacks Standing Under Article III. ..... 6

c. Plaintiff Fails to State Any Cause of Action ..... 9

1. The Complained Of Software is Not a Trap and Trace Device under California Law ..... 9

2. Plaintiff has not Stated a Trap and Trace Claim ..... 11

3. Plaintiff has Not Adequately Alleged a CDAFA Claim ..... 12

4. Plaintiff's Common Law Invasion of Privacy and Intrusion Upon Seclusion Claims Fail. ..... 14

5. Plaintiff Concedes that He Cannot State a Claim Under the UCL. ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. NCAA*,
No. 2:25-cv-11576-MWC-MBK, 2026 WL 925519 (C.D. Cal. Mar. 25, 2026)....................8

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .................................................................... *passim*

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023)............................7

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025)..........................................................................8

*Casillas v. Six Flags Entertainment Corp.*,
812 F. Supp. 3d 1016 (C.D. Cal. 2025) ....................................................................5, 8

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .........................................................................13

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal.2023) .......................................................................13

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024)..........................................................................13

*In re Facebook Priv. Litig.*,
572 F. App'x 494 (9th Cir. 2014) ................................................................................15

*In re Facebook Privacy Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) .........................................................................13

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08–05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010)...............................14

*Frasco v. Flo Health, Inc.*,
No. 21-cv-00757-JD, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) ..............................8

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) ...........................................................................9

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025)............................5, 6, 9

*GeoSolutions B.V. v. Sina.com Online*,
700 F. Supp. 3d 821 (N.D. Cal. 2023) ...........................................................................3

*In re Google Android Consumer Privacy Litig.*,
No. 11–MD–02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013)..............................13

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ..........................................................................15

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ........................................................................................15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)..........................................................................14

*Hassid v. Alex & Ani, LLC*,
816 F. Supp. 3d 1196 (C.D. Cal. 2026) .......................................................................5, 8

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ..........................................................................13

*Jones v. Skullcandy, Inc.*,
No. 25-CV-1759 JLS (BLM), 2026 WL 699819 (S.D. Cal. Mar. 12, 2026)........................4, 8

*Krzyzek v. OpenX Techs., Inc.*,
No. 25-cv-05588-SI, 2026 WL 206855 (N.D. Cal. Jan 27, 2026)............................................8

*Lewis v. Magnite, Inc.*,
No. 2:25-cv-03448-MWC-SSCx, 2025 WL 368756 (C.D. Cal. Dec. 4, 2025)........................5

*Martinez v. Choose Your Horizon, Inc.*,
No. 24-cv-02798-LB, 2025 WL 2498138 (N.D. Cal. Sept. 1, 2025) .......................................6

*Mikulsky v. Bloomingdale's, LLC*,
3:23-cv-00425-L-VET, 2024 WL 3091395 (S.D. Cal. May 14, 2024) ....................................4

*Mikulsky v. Bloomingdale's, LLC*,
Nos. 24-3564, 24-3837, 2025 WL 1718225 (9th Cir. June 20, 2025)................................4, 5

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025)......................................................................11, 12

*Moody v. Textron Inc.*,
No. 2:25-cv-01032, 2025 WL 2828109 (C.D. Cal. Sept. 24, 2025).....................................2, 3

*Pemberton v. Rest. Brands Int'l, Inc.*,
No. 25-cv-03647-JSC, 2025 WL 3268404 (N.D. Cal. Nov. 24, 2025) ....................................8

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014)..............................................................................13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ..........................................................................................8

*Pratt v. Higgins*,
No. 22-cv-04228-HSG, 2023 WL 4564551 (N.D. Cal. July 17, 2023) .................................. 13

*Rodriguez v. Brushfire Recs.*,
No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ...................... 7

*Rodriguez v. Culligan Int'l Co.*,
No. 25-cv-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .............................. 7

*Rounds v. Case-Mate Inc.*,
No. 2:24-cv-08531-WLH-RAO, 2025 WL 1873999 (C.D. Cal. July 2, 2025) ................ 2, 3, 6

*Rounds v. Dev. Dimensions Int'l, Inc.*,
No. 8:25-cv-01975-DOC-ADS, 2025 WL 4055402 (C.D. Cal. Dec. 15, 2025) ........................ 6

*Schallert v. Orkin LLC*,
No. 24STCV31244, 2025 WL 4332757 (Cal. Sup. Ct. Dec. 15, 2025) .................................. 10

*Shagoofa v. Eshaqzi*,
No. 8:22-cv-01824-FWS-JDE, 2024 WL 1600657 (C.D. Cal. Feb 26, 2024) ........................ 15

*Shah v. MyFitnessPal, Inc.*,
No. 25-cv-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ....................................... 8

*Shu v. Toyota Motor Sales USA, Inc.*,
669 F. Supp. 3d 888 (N.D. Cal. 2023) ......................................................................................... 3

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ..................................................................................................... 15

*Thomas v. Papa John's Int'l, Inc.*,
No. 22cv2012 DMS (MSB), 2023 WL 6370641 (S.D. Cal. Aug. 14, 2023) ............................ 4

*Thomas v. Papa John's Int'l, Inc.*,
Nos. 24-3557, 24-3834, 2025 WL 1704437 (9th Cir. June 18, 2025) .................................. 4, 5

*Zarif v. Hwareh.com, Inc.*,
789 F. Supp. 3d 880 (S.D. Cal. 2025) ........................................................................................ 12

*In re Zynga Privacy Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................................................................................................... 14

**Statutes**

Cal. Penal Code § 638.50(c) ............................................................................................. 10, 11, 12

Cal. Penal Code § 638.51 ........................................................................................................... 1, 10

Cal. Penal Code § 638.52(d)(1) ....................................................................................................... 10

Cal. Penal Code § 502 ........ 1, 12, 13, 14

Cal. Bus. & Prof. Code § 17200, *et seq.* ........ 1

Federal Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(c)-(d) ........ 12

**Other Authorities**

AB 929, 2015 Cal. Assemb. Comm. on Pub. Safety, Bill Analysis (Cal. 2015) https://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html ........ 10

https://www.lairdhamilton.com/about/ (last visited May 5, 2026) ........ 3

https://lairdsuperfood.com/ (last visited May 5, 2026) ........ 1

## I. INTRODUCTION

Any reasonably experienced user of e-commerce web sites knows that internet-based retail platforms collect certain basic information about their customers' visits for marketing purposes. This routine practice is neither "highly offensive" nor actionable under California law. Plaintiff Lawrence Schallert ("Schallert") — who has filed at least 37 nearly identical lawsuits in the past 18 months (Dkt. 20-2) cannot plausibly claim otherwise based on a single, non-interactive visit to Defendant Laird Superfoods' ("Laird") website.

Schallert claims that Laird intruded into his "private affairs" and violated his "reasonable expectation" of digital privacy when, on April 2, 2025, he visited the Laird's website. FAC, Dkt. 18. On its website, Laird sells instant and ground coffees, coffee creamers, prebiotic fiber blends, brownie mixes, snack bars, and similar food items containing healthy plant based fats and other ingredients designed for a healthy lifestyle.[1] Schallert does not allege that he clicked on any product descriptions on the website, purchased any Laird products, or otherwise gave the website any personal information about himself. He alleges only that the Laird website captured his "routing, addressing, and signaling information." Dkt. 18, ¶¶ 16, 95. He claims that the Laird website *could have* captured additional information about him (had he chosen to give it) and *could have* sold that information to third parties, but he doesn't contend that any of that *actually* happened to him.

As set forth in Laird's Motion to Dismiss and further discussed below, Schallert's FAC does not plausibly state causes of action under CIPA (California Penal Code § 638.51), CDAFA (California Penal Code § 502), the UCL (California Business & Professional Code § 17200, *et seq.*), or common law theories of

---

[1] https://lairdsuperfood.com/ (last visited May 5, 2026).

invasion of privacy or intrusion upon seclusion. This Court should dismiss Schallert's FAC with prejudice.

## II. ARGUMENT

### a. This Court Lacks Personal Jurisdiction Over Laird.

As an initial matter, Plaintiff's Opposition (Dkt. 25) does not contend that Laird is subject to general jurisdiction in California. The Opposition argues only that this Court has specific jurisdiction because Laird's website has a store locator that allows users to find third-party retail locations selling Laird products in California and because there is information elsewhere "on the internet" regarding Laird Hamilton, Laird's co-founder, including that he has a home in Malibu and is allegedly connected to California surf culture. None of these arguments are compelling.

To establish specific jurisdiction over Laird, Plaintiff must show (1) purposeful availment, and (2) that his claim arises out of or results from Laird's forum-related activities. Jurisdiction must also be reasonable. Under the purposeful direction test, Plaintiff must show that Laird (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that defendant knows is likely to be suffered in the forum state. A website's mere accessibility from California is not enough, Plaintiff must show "something more." As in *Rounds* and *Moody*, the FAC does not allege that Plaintiff interacted with the website, such as by ordering something or inputting information.[2]

In fact, Plaintiff does not attempt to differentiate *Rounds* or *Moody*. Instead, Plaintiff relies on *Briskin* to no avail. In *Briskin*, the Ninth Circuit restated that contacts with a forum can be in the form of electronic communications, but, "something more" than a website's mere passive nationwide accessibility is required to show express aiming at the forum state. *Briskin v. Shopify, Inc.*, 135 F.4th 739,

[2] Related, as discussed below, Plaintiff has not suffered any legally recognizable harm.

752-53 (9th Cir. 2025). *Rounds* and *Moody* applied *Briskin* to near identical facts, and found that there was no specific jurisdiction. *See Rounds v. Case-Mate Inc.*, No. 2:24-cv-08531-WLH-RAO, 2025 WL 1873999, at *4-7 (C.D. Cal. July 2, 2025); *Moody v. Textron Inc.*, No. 2:25-cv-01032, 2025 WL 2828109, at *5 (C.D. Cal. Sept. 24, 2025) ("Here the SAC alleges no reason for the contact between Plaintiff and Defendant other than Plaintiff's choice to utilize the website, lacking any allegation that it was Defendant's own choice that caused its contacts with California."). Plaintiff has not cited any authority that including a store locator that shows the location of other businesses who carry Laird products on a website is enough to constitute "something more" under *Briskin* and similar cases. Further, Plaintiff does not allege that he visited a store in California, nor otherwise argues that Laird's website engaged in California-specific marketing.

While Plaintiff's Opposition attaches several magazine articles featuring Laird Hamilton, the FAC does not mention Mr. Hamilton at all. (*Compare* Dkt. 25 *with* Dkt. 18). For that reason, alone this Court may disregard Plaintiff's arguments regarding Mr. Hamilton's alleged personal activities in California.[3] *See*, *e.g.*, *Shu v. Toyota Motor Sales USA, Inc.*, 669 F. Supp. 3d 888, 898 (N.D. Cal. 2023) (dismissing when opposition relied on facts that were not in the complaint) Further, Mr. Hamilton's supposed California connections are irrelevant to this case—Laird Superfoods is a corporation, and under long-standing principles, is a separate entity from its founder and namesake. *See, e.g.*, *GeoSolutions B.V. v. Sina.com Online*, 700 F. Supp. 3d 821, 827 (N.D. Cal. 2023) (explaining that a "corporation and its shareholders are distinct entities" (citation omitted)). Shareholders' and officers' own personal connections to a state are not imputed to the corporation for the purpose of the specific jurisdiction analysis.

---

[3] To the extent it is relevant (and it's not) Laird Hamilton established himself as a world-famous big wave surfer in his home state of Hawaii, not in California. https://www.lairdhamilton.com/about/ (last visited May 5, 2026).

Plaintiff's jurisdictional allegations are conclusory and fail to connect Laird's supposed California contacts with Plaintiff's single visit to the Laird website, other than to claim that he was in California when he accessed it. He does not allege that he accessed the website *because of* any California-specific marketing. The notion that Laird could use Plaintiff's ISP information to determine his approximate location does not, by itself, establish that Laird expressly aimed its activities at the forum. *See Briskin*, 135 F.4th at 752. And in any event, the FAC does not allege that Laird knew where Plaintiff was.

Plaintiff argues that a handful of cases support his arguments, but those decisions actually demonstrate why he has failed to show "something more" than mere nationwide accessibility.

- *Thomas v. Papa John's Int'l, Inc.*, Nos. 24-3557, 24-3834, 2025 WL 1704437 (9th Cir. June 18, 2025)—The Ninth Circuit affirmed personal jurisdiction because Papa John's expressly aimed its conduct at California by operating a website that allowed users to "browse local menus and place and pay for orders for take-out and/or delivery of food from Papa John's brick and mortar locations in California." *Thomas v. Papa John's Int'l, Inc.*, No. 22cv2012 DMS (MSB), 2023 WL 6370641, at *4 (S.D. Cal. Aug. 14, 2023) (citation modified).
- *Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 WL 699819 (S.D. Cal. Mar. 12, 2026)—Plaintiff not only visited the website, but actually purchased a pair of earbuds from it while residing in San Diego. *Id.* at *7-9.
- *Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 WL 1718225 (9th Cir. June 20, 2025)— Similar to *Papa John's*, the underlying district court analysis revealed that "Plaintiff has alleged that Defendants reach into the jurisdiction by maintaining an integrated website that pairs online use of the website with operations of its brick-and-mortar stores in California." *Mikulsky v. Bloomingdale's, LLC*, 3:23-cv-00425-L-VET, 2024 WL

3091395, at * 2 (S.D. Cal. May 14, 2024), *aff'd in part and rev'd in part*, 2025 WL 1718225.

- *Hassid v. Alex & Ani, LLC*, 816 F. Supp. 3d 1196 (C.D. Cal. 2026)—Defendant allegedly contracted with TikTok to send information to TikTok in California, and allegedly used TikTok software to search the internet for data to deanonymize website users. *See id*. at 1203-04. The *Hassid* court, though citing *Briskin*, *Papa John's* and *Mikulsky* as a basis for finding specific jurisdiction, does not appear to have analyzed the "nation[wide] viewership and scope" aspect of the Ninth Circuit's decisions. *Id.*
- *Lewis v. Magnite, Inc.*, No. 2:25-cv-03448-MWC-SSCx, 2025 WL 368756 (C.D. Cal. Dec. 4, 2025)—In *Magnite*, defendant was a data broker whose product was software that collected information on users (somewhat similar to Shopify in *Briskin*). Through its software, defendant would near-immediately know that a user was in California, and then defendant would continue to collect information on them. Thus, the conduct was expressly aimed at California. Here, Defendant is not alleged to be a data broker whose own software is designed to target Californians.
- *Casillas v. Six Flags Entertainment Corp.*, 812 F. Supp. 3d 1016 (C.D. Cal. 2025)—defendant's website sold amusement park tickets targeted at California residents, and the website expressly referred to California residents. *Id.* at 1026. Similar to *Papa John's* and *Mikulsky*, the "something more" was the link between the website and defendant's operations in California. Plaintiff here does not allege that Defendant's website targeted California residents like a website selling tickets for things to do in California would.
- *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025)—In *Motorola*, plaintiff was presented with a pop-up consent banner, and he rejected all non-essential cookies. Despite

this, defendant allegedly continued to place tracking data on his device and collect detailed information. *Id.* at *1. No such allegations are present here.

- *Martinez v. Choose Your Horizon, Inc.*, No. 24-cv-02798-LB, 2025 WL 2498138 (N.D. Cal. Sept. 1, 2025)—The court in *Martinez* observed, "[t]his lawsuit involves known California customers, who completed forms to obtain ketamine treatment, had a consultation with a California clinician, and had their PII intercepted, *all through CYH's online business*, which serves customers in twenty-one states, including California." *Id.* at *5 (emphasis added). Further, the *Martinez* plaintiffs actually used defendant's services, and interacted with the website, instead of merely visiting the website.

In each of these cases, there was "something more" than a simple retail website which plaintiff could view from a location in California. In almost every case, the plaintiff purchased something from the website, otherwise interacted with the website in some way other than simply looking at it, as Schallert allegedly did here, or defendant's website was connected to its in-state operations. *Cf. Rounds*, 2025 WL 1873999, at *6 ("Simply put, there are no allegations in the SAC that Defendant either cultivates *or* exploited a nationwide audience for commercial gain. There is nothing in the SAC that demonstrates Defendant's contacts with California did not merely arise from California *consumers'* choice to purchase goods from Defendant." (citation modified)); *see also Rounds v. Dev. Dimensions Int'l, Inc.*, No. 8:25-cv-01975-DOC-ADS, 2025 WL 4055402, at *4 (C.D. Cal. Dec. 15, 2025) ("[T]he present case is disanalogous to *Briskin*, where the Defendant was not the host website, but the party that was collecting information on Californians (Shopify)." (citation omitted)). Under the facts alleged by Schallert, the required "something more" is absent, and exercising specific judication over Laird would be unreasonable and fail to comport with due process. *See Briskin*, 135 F.4th at 752-53.

**b. <u>Plaintiff Lacks Standing Under Article III.</u>**

Just as merely visiting a website is not enough to establish specific jurisdiction, it is also not enough to give rise to an injury in fact under Article III, particularly in the case of a "tester" who visits various web sites merely to target them for future lawsuits. *Rodriguez v. Autotrader.com*, Inc., No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025); *Byars v. Sterling Jewelers, Inc*., No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 n. 4 (C.D. Cal. Apr. 5, 2023). Here, it is beyond dispute that Schallert did not have any reasonable expectation of privacy when he visited Laird's website. In fact, just the opposite; he obviously seeks out websites that he believes collect specific user information. He has personally filed at least thirty-six CIPA lawsuits since January 2025 averaging roughly one new case every ten days, including as many as three in a single day. *See* Dkt. 20-2, Ex. 1-35. Schallert cannot plausibly claim to have had a reasonable expectation of privacy in his personal information when he visited the Laird website, and therefore has not suffered an injury in fact from the collection of the very information he likely expected (or wanted) Laird to collect.

Moreover, Plaintiff's FAC does not allege that Schallert unwittingly provided any personal information to the website such as his "interests, purchasing behavior, lifestyle choices, and other inferred personal attributes" (Dkt. 18, ¶ 37) but rather only contends that Laird collected his "routing, addressing, and signaling information." Dkt. 18, ¶¶ 16, 95. Collection of this type of "record information" does not constitute an injury and does not give rise to Article III standing. *Rodriguez v. Brushfire Recs.,* No. 2:25-CV-09797-CAS-PDX, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (The court found no Article III standing because "Defendant's acquisition of plaintiff's IP address and other device identifiers from her visit to defendant's website 'does not cause the kind of harm that can be vindicated in federal court.'" (citations omitted)); *Rodriguez v. Culligan Int'l Co.*, No. 25-cv-00225-AJB-KSC, 2025 WL 3064113, at *4 (S.D. Cal. Nov. 3, 2025) (rejecting the

argument the plaintiff had Article III standing because she had a "reasonable expectation of privacy in the IP address of her devices).

The cases Schallert cites are inapposite. In each, the plaintiff supplied, or the defendant collected, something more than the plaintiff's basic record information. *See Shah v. MyFitnessPal, Inc.*, No. 25-cv-04430-PCP, 2026 WL 216334, at *1 (N.D. Cal. Jan. 27, 2026) (publication forthcoming) (cookies from a nutrition and fitness app placed despite plaintiffs' express opt out); *Krzyzek v. OpenX Techs., Inc.*, No. 25-cv-05588-SI, 2026 WL 206855, at *3 (N.D. Cal. Jan 27, 2026) (publication forthcoming) (data broker allegedly compiled plaintiffs' actions across many websites to make detailed profiles); *Hassid*, 816 F. Supp. 3d at 1200-04 (information sent to TikTok, who scanned the internet for details on users, so that the individual could be targeted); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 WL 3268404, at *1-2 (N.D. Cal. Nov. 24, 2025) (Burger King website tracked users despite plaintiff opting out of cookies and sharing of personal information); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1101, 1106 (S.D. Cal. 2025) (defendant did not actively notify users of trackers, and case was distinguishable from *Popa v. Microsoft Corp.,* 153 F.4th 784 (9th Cir. 2025)); *Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 WL 925519, at *5 (C.D. Cal. Mar. 25, 2026) (defendants cookies allowed for "persistent tracking of Plaintiffs across the internet"); *Skullcandy*, 2026 WL 699819, at *4-5 (in case where plaintiff purchased products, and was not given the opportunity to opt out of cookies, Facebook and Google tracking collected detailed browsing histories and purchasing patterns, etc.); *Six Flags*, 812 F. Supp. 3d at 1031 (no analysis of Article III standing, and plaintiff opted out of third-party cookies, which were collected regardless); *Frasco v. Flo Health, Inc.*, No. 21-cv-00757-JD, 2024 WL 4280933, at *1-2 (N.D. Cal. Sept. 23, 2024) (Defendant Google allegedly collected private health information related to women's menstruation cycles and fertility goals without consent).

Further, Plaintiff focuses on *Haleon* and *Motorola*, but these cases explicitly spell out why he lacks standing. In *Haleon*, the key allegation was that defendant "ignored" plaintiff's "rejection of cookies" and "continued to cause the placement" of cookies, permitting third parties to track and collect private communications. *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 865 (N.D. Cal. 2025); *see also Motorola*, 2025 WL 1939957, at *6 ("[T]he complaint alleges that Motorola in fact ignored Gabrielli's rejection of cookies."). In contrast, in a substantially similar case brought by that same plaintiff against another defendant, plaintiff lacked standing because he "*did not allege he had expressly 'rejected' all cookies* and that defendant had installed cookies anyway." *Haleon*, 815 F. Supp. 3d at 865 (emphasis added). Here, Plaintiff does **not** allege that he rejected cookies, nor that they were then collected despite his express denial. Under *Haleon* and *Motorola*, he lacks standing. For the purpose of this Court's standing analysis, it does not matter what information Laird's website allegedly *could have* collected or allegedly *could have* disseminated. All that matters is what the FAC alleges, and Plaintiff's FAC does not adequately allege that Schallert suffered an injury in fact.

**c. <u>Plaintiff Fails to State Any Cause of Action</u>**

1. *<u>The Complained Of Software is Not a Trap and Trace Device under California Law</u>*

CIPA's limitations on trap and trace devices do not apply to the kind of website software described by Plaintiff. The Opposition obfuscates, and claims that the legislative history of a similar Federal law supports his interpretation. But the *California* legislative history he cites contradicts his position, and California courts have rejected his reading. "While some statutory language supports Schallert's reading, the better reading of California's CIPA statute, particularly taken in context and read in the light of particular statutory exceptions, is that website software akin to that alleged here is not a 'trap and trace' device. Rather, a 'trap and trace device'

tracks incoming telephonic communication." *Schallert v. Orkin LLC*, No. 24STCV31244, 2025 WL 4332757, at *1 (Cal. Sup. Ct. Dec. 15, 2025).

In *Orkin*, applying the California Supreme Court's instructions on statutory interpretation, the state court exhaustively considered the plain text of CIPA, surrounding provisions and the statutory scheme, the legislative history, maxims of statutory construction, and public policy concerns. *See id.* at *2-6. The legislative history that the court considered, and Plaintiff now tries to twist into support for his position stated, only referred to trap and trace devices in the context of telephones. For example: "**In addition, another tool law enforcement uses is called a 'trap and trace device' which allows them to record what number have called a specific telephone line, i.e. all incoming phone numbers.** *Id.* at *4 (alteration in original); AB 929, 2015 Cal. Assemb. Comm. on Pub. Safety, Bill Analysis, at p. S (Cal. 2015) https://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html ("AB 929 Bill Analysis"); *cf.* Dkt. 25, at p. 22. "[I]f the legislature intended its definition of 'trap and trace' device[s] to broadly regulate tracking software by websites, there would be at least some discussion of it in the legislative history. There is none." *Orkin*, 2025 WL 4332757, at *5; *see generally* AB 929 Bill Analysis. The plain text itself clearly refers to telephones only. *See* Cal. Penal Code § 638.50(c) (defining "Trap and trace device" with "telephone words" like "originating number," "dialing", and "routing").[4] Further, section 638.51 cross-references section 638.52, which provides the procedure to obtain authorization to use a pen register or trap and trace device; section 638.52 clearly only contemplates application to telephones. *See* Cal. Penal Code § 638.52(d)(1) (requiring the identity of the person whose "telephone line" the device will be attached to, and the telephone line's physical location). As

---

[4] Generic terms in the definition like "routing," "address," and "signaling information" are given meaning under noscitur a sociis and ejusdem generis by the preceding "telephone" terms, and so do not expansively refer to the internet.

shown in the Motion to Dismiss, California state courts overwhelmingly reject Plaintiff's interpretation, *a fact that the Opposition does not even contest*. *Compare* Dkt. 20, at 17:1-8 (collecting cases), *with* Dkt. 25, at 21:6-19 (ignoring state court decisions).

2. *Plaintiff has not Stated a Trap and Trace Claim*

Even if this Court expands the applicability of CIPA's trap and trace limits beyond its statutory scheme, and beyond what the legislature intended, Plaintiff still fails to state a claim. Plaintiff's Opposition argument with respect to California Penal Code § 638.50(c) is confusing, and not only because he seems to have forgotten which of his 37 cases he is arguing.[5] The bottom line is that, by alleging only that Larid collected his "record information," but that it could have collected the "contents" of his communications with the web site (had he engaged in any such communications), Schallert has placed himself on the horns of a dilemma. The information he claims was actually collected is not enough to give rise to an injury, and the information he claims Laird could have collected takes this case outside of a "trap and trace" claim.

A "[t]rap and trace device" captures identifying information about a communication "but not the contents of a communication." Cal. Penal Code § 638.50(c). *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 851 (N.D. Cal. 2025) ("Even if Plaintiff did allege that additional information about *him* was collected by the Website, the FAC still fails because, if that type of information is collected, the statute ceases to apply . . . By definition, a "trap and trace device" captures identifying information ***about*** a communication "***but not the contents*** of a communication." (alterations in original) (citation omitted)); *Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (same). In his FAC, Schallert alleges that the Laird website collects data used to "construct behavioral profiles of internet users—

[5] (See Dkt. 25, at 19, 24, 25 referring to Laird as "DDI" and "Blis" and calling Laird's Motion to Dismiss a "demurrer")

profiles that may contain detailed information about a person's interests, purchasing behavior, lifestyle choices, and other inferred personal attributes." Dkt. 18, ¶ 37. In other words, *content*. Again, Schallert does not allege that he personally gave the Laird website enough data to construct such a behavioral profile, but that other hypothetical users *might*, and their data could be so used.

Plaintiff tries to distinguish *Mitchener* and *Kishnani* on the basis that the "contents" information at issue in those cases was "biographical", whereas "[p]laintiff alleges a fingerprint built from technical device identifiers and parameters, not the substance of a message or biographical content." Dkt. 25, at 25:7-9. It is not at all clear what Schallert means by "technical devise identifiers and parameters," but his FAC clearly alleges that the Laird website collects content about its users if the users (unlike Schallert himself) actively engage with the website. As such, his FAC does not state a "trap and trace" claim.

Schallert's reliance on *Zarif v. Hwareh.com, Inc*., 789 F. Supp. 3d 880 (S.D. Cal. 2025) is misplaced for several reasons. First, the section of *Zarif* on which Plaintiff relies had to do with the Federal Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(c)-(d), not California Penal Code § 638.50(c). Second, the *Zarif* decision did not address the record information versus content issue under California Penal Code § 638.50(c). Try as he might to characterize the information allegedly collected by Laird's website as merely "routing, addressing and signaling information" (Dkt. 18, ¶¶ 16, 95), the gravamen of Plaintiff's FAC is that the website obtains and transmits information on users' "interests, purchasing behavior, lifestyle choices, and other inferred personal attributes." Dkt. 18, ¶ 37. Plaintiff cannot have it both ways. His CIPA claim should be dismissed.

3. *Plaintiff has Not Adequately Alleged a CDAFA Claim*

California's Comprehensive Computer Data and Access Fraud Act, Cal. Penal Code § 502 ("CDAFA") is an anti-hacking statute. Even accepting Schallert's claims at face value, this is not a case about hacking.

In his one paragraph response to Laird's Motion to Dismiss his CDAFA claim, Schallert cites a single district court opinion which he characterizes as holding that the operation of tracking software a commercial website constitutes a violation of CDAFA. *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 945 (S.D. Cal. 2024). The majority view, however, is that the alleged "loss" of Plaintiff's IP address and other record information does not give rise to a CDAFA claim. *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1020-21 (C.D. Cal. 2023); *see also Doe v. Meta Platforms, Inc.* , 690 F. Supp. 3d 1064, 1081-83 (N.D. Cal.2023) (finding allegations that protected information was diminished in value did not qualify as damage or loss under CDAFA); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (finding damage or loss under CDAFA did not include "loss of the right to control [Plaintiffs'] own data, the loss of the value of their data, and the loss of the right to protection of the data"); *Pratt v. Higgins,* No. 22-cv-04228-HSG, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023) (finding access to communications, notes, and medical information did not create the type of loss contemplated by the CDAFA's private civil cause of action).

Further, several courts have held that "individuals may only be subjected to liability for acting "without permission" under Section 502 if they access or use a computer, computer network, or website in a manner that overcomes technical or code-based barriers." *Perkins v. LinkedIn Corp*., 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014) (quoting *In re iPhone Application Litig.*, No. 11–2250, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011)); *see also In re Google Android Consumer Privacy Litig*., No. 11–MD–02264 JSW, 2013 WL 1283236, at *11 (N.D. Cal. Mar. 26, 2013) ("Courts within this District have interpreted without permission to require that a defendant access a network in a manner that circumvents technical or code based barriers in place to restrict or bar a user's access." (citation modified)); *In re Facebook Privacy Litig*., 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) ("Individuals may only be subjected to liability for acting

without permission under Section 502 if they access or use a computer, computer network, or website in a manner that overcomes technical or code-based barriers." (citation modified)); *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08–05780 JW, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010) (concluding after detailed statutory analysis that "accessing or using a computer, computer network, or website in a manner that overcomes technical or code-based barriers is 'without permission,' and may subject a user to liability under Section 502"). Plaintiff has not alleged that Laird overcame any "code-based barriers" to collect his record information. His CDAFA claim should be dismissed.

4. *Plaintiff's Common Law Invasion of Privacy and Intrusion Upon Seclusion Claims Fail.*

In his less than perfunctory response to Laird's Motion to Dismiss his common law privacy claims, Plaintiff argues that his "choices of products might reveal sensitive and confidential facts about his life." Dkt. 25, at 25:26-27. But Schallert never alleges that he made any such selections or revealed any such information.

More importantly, as set forth above, this is the thirty-eighth such case Schallert has filed in the last 18 months. The only reasonable conclusion is that Schallert has no expectation of privacy, but rather specifically seeks out web sites he thinks might be susceptible to these sorts of lawsuits. Finally, "there is no reasonable expectation of privacy when the data collection is within users' common-sense expectation or when the information is not sensitive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022). The Ninth Circuit has held that there is no reasonable expectation of privacy in URLs that reveal only basic identification and address information. *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014).

5. *Plaintiff Concedes that He Cannot State a Claim Under the UCL.*

In his Opposition, Plaintiff does not even contest that his UCL claim is viable. *See generally* Dkt. 25. "A failure to oppose moving arguments in a motion, as to a claim or an issue may be deemed a waiver, abandonment, concession of that claim or issue." *Shagoofa v. Eshaqzi*, No. 8:22-cv-01824-FWS-JDE, 2024 WL 1600657, at *3 (C.D. Cal. Feb 26, 2024) (citation modified). Again, Plaintiff lacks UCL standing because his alleged loss of private data and diminution of its value are not an "economic injury." *Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 977-98 (C.D. Cal. 2023); *In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) Additionally, the Court must dismiss the UCL claim because it lacks equitable jurisdiction. The FAC does not allege that Plaintiff lacks an adequate legal remedy, and Plaintiff has an adequate remedy because he seeks legal damages through his other causes of action. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313-15 (9th Cir. 2022).

## III. CONCLUSION

Plaintiff Lawrence Schallert cannot state a valid claim against Defendant Laird Superfoods. He appears to be a professional "tester" plaintiff, who allegedly visited Laird's website a single time in April 2025, but did not interact with the site at all. Under prevailing law, Schallert's fleeting interaction with Laird's website is not enough to allow him to gin up a statewide privacy class action on behalf of every California resident who visited Laird's website over a period of years. His First Amended Complaint should be dismissed with prejudice.

Dated: May 6, 2026

STEPTOE LLP

By: */s/ Melanie A. Ayerh*
Carol Brophy
Melanie A. Ayerh

Attorneys for Defendant
LAIRD SUPERFOOD, INC.

# CERTIFICATE OF SERVICE

I hereby certify that, on May 6, 2026, a copy of the foregoing **DEFENDANT LAIRD SUPERFOOD, INC.'S REPLY TO PLAINTIFF'S OPPOSTION TO MOTION TO DISMISS** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

*/s/ Melanie A. Ayerh*
Melanie A. Ayerh