**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWRENCE SCHALLERT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LAIRD SUPERFOOD, INC., a Nevada corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:25-cv-12407-SPG-PVC<br><br>**ORDER GRANTING DEFENDANT LAIRD SUPERFOOD, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [ECF NO. 20]** |

Before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint, (ECF No. 20 ("Motion")), filed by Defendant Laird Superfood, Inc. ("Defendant"). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

# I. BACKGROUND

## A. Factual Background

The following allegations are taken from Plaintiff Lawrence Schallert's ("Plaintiff") First Amended Complaint ("FAC"). (ECF No. 18 ("FAC")). Plaintiff alleges that Defendant is a Nevada corporation, headquartered in Colorado, engaged in the business of selling health and wellness products. (*Id.* ¶¶ 19, 62). In addition to selling its products at more than 1,200 retail locations in California, Defendant operates a website—lairdsuperfood.com—through which it directly markets and sells its products to consumers nationwide, including in California. (*Id.* ¶¶ 10, 11).

Plaintiff alleges that, as part of its marketing and advertising operations, Defendant embedded tracking software into its website. (*Id.* ¶ 13). Plaintiff has identified 40 different tracking technologies present on Defendant's website, provided by various third-party companies, including TikTok, Meta, Microsoft, and Google. (*Id.* ¶ 22). This tracking software is designed to monitor individuals and capture information about their interactions with the website, which is then transmitted to third parties. (*Id.* ¶ 23). Plaintiff alleges that this tracking software is not necessary for the performance of Defendant's website and is used solely to transform website visits into commercially valuable behavioral data. (*Id.* ¶¶ 32-34). This data is then transmitted to advertising and analytics platforms and incorporated into broader identity profiles maintained by third-party data brokers. (*Id.* ¶ 42). This information may be misused in various ways, including setting individualized prices for different consumers, enabling warrantless government surveillance, and exposing sensitive user data to foreign state actors. (*Id.* ¶¶ 46, 52, 54, 56). Plaintiff asserts that the data on Defendant's website is particularly sensitive because it reveals private health information. (*Id.* ¶ 65).

On or around April 2, 2025, Plaintiff visited Defendant's website while physically located in California using a device and web browser operating in California. (*Id.* ¶ 66). At the time of his visit, Plaintiff was unaware of the tracking software and believed that his interactions with the website would occur solely between his device and the website. (*Id.*).

When Plaintiff's browser loaded webpages from the website, Defendant's tracking software executed within Plaintiff's browser. (*Id.* ¶ 67). Defendant captured information regarding Plaintiff's interactions with the website, which Defendant then transmitted to third-party advertising and analytics platforms without Plaintiff's knowledge or consent. (*Id.* ¶ 68). Plaintiff asserts that he suffered a concrete injury because Defendant intruded upon his private affairs by converting his data into a trackable record, which may be retained, aggregated with other data sources, and used for purposes far removed from the reason Plaintiff visited the website. (*Id.* ¶¶ 71-72).

Plaintiff seeks to represent a class of similarly situated persons located in California whose routing, addressing, or signaling information was captured through Defendant's tracking software while visiting Defendant's website during the applicable limitations period. (*Id.* ¶ 73). On behalf of the proposed class, Plaintiff asserts claims for a violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 638.51; violation of the Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; invasion of privacy; intrusion upon seclusion; and violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. (*Id.* at 21-31). Among other forms of relief, Plaintiff seeks statutory and compensatory damages, restitution, and injunctive relief requiring Defendant to cease use of the tracking software, delete information previously captured, and take reasonable steps to direct its service providers and third-party partners to do the same. (*Id.* at 32).

**B. Procedural History**

Plaintiff initiated this action on December 2, 2025, in Los Angeles County Superior Court. (ECF No. 1-3). On December 31, 2025, Defendant removed the action to this Court. (ECF No. 1). Defendant then filed a motion to dismiss the complaint on February 20, 2026. (ECF No. 14). However, on March 11, 2026, Plaintiff filed the FAC, thereby mooting the motion to dismiss. (FAC; ECF No. 19).

Defendant filed the instant Motion on March 25, 2026. (Mot.). The Motion is accompanied by a request for judicial notice of 37 documents. (ECF No. 20-2

("Defendant's RJN")). Plaintiff filed an opposition to the Motion on April 29, 2026, (ECF No. 25 ("Opposition")), which is also accompanied by a request for judicial notice of five documents, (ECF No. 25-1 ("Plaintiff's RJN")). Defendant filed a reply in support of the Motion on May 6, 2026. (ECF No. 29 ("Reply")).

## II. REQUESTS FOR JUDICIAL NOTICE

As an initial matter, the parties have both filed requests for judicial notice of certain documents. In its Request, Defendant seeks judicial notice of 37 court filings, consisting of (1) 35 similar complaints filed by Plaintiff against other companies; and (2) court orders dismissing Plaintiff's claims in *Schallert v. Palo Alto Networks, Inc.*, Case No. 25STCV17109 (Cal. Super. Ct. June 13, 2025), and *Schallert v. Orkin, LLC*, Case No. 24STCV31244 (Cal. Super. Ct. Nov. 26, 2024). (Defendants' RJN). In his Request, Plaintiff requests judicial notice of (1) the privacy policy for California residents on Defendant's website; (2) Defendant's Form 10-K for 2025, listing Laird Hamilton as Defendant's Co-Founder and Chief Innovator; and (3) three articles allegedly tying Laird Hamilton to a residence in Malibu, California. (Plaintiff's RJN). Neither party has objected to the other's request for judicial notice.

Generally, at the motion to dismiss stage, courts may not consider any material beyond the pleadings when assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6). *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("[R]eview is limited to the complaint." (citation omitted)). If a court considers such extrinsic evidence, "the motion must be treated as one for summary judgment under Rule 56" and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). However, courts have recognized certain exceptions to this rule, including the doctrine of judicial notice. Under Federal Rule of Evidence 201, courts may take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1), (2). "A court may

take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 689 (internal quotation marks and citation omitted). A court, however, may not "take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Starting with Defendant's Request, all 37 of the documents are public court records from other cases and are therefore properly subject to judicial notice as matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (Courts "may take judicial notice of court filings and other matters of public record"). As to Plaintiff's Request, the Court agrees that the Form 10-K disclosure is properly subject to judicial notice. *See In re New Century*, 588 F. Supp. 2d 1206, 1219 (C.D. Cal. 2008) ("It is well-established that courts may take judicial notice of SEC filings."). The other documents put forth by Plaintiff—a portion of Defendant's website and news articles about Defendant's Co-Founder—are subject to judicial notice only for the narrow purpose of indicating "what was in the public realm at the time, not whether the contents of those [web pages and] articles were in fact true." *Reynolds v. Binance Holding Ltd.*, 481 F. Supp. 3d 997, 1002 (N.D. Cal. 2020) (citation omitted). For all of these records, the Court notes that judicial notice is limited, and that the Court will not accept the truth of facts within the records that are subject to reasonable dispute. *See Khoja*, 899 F.3d at 999; *see also Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) ("[W]hen resolving disputes, courts may not take judicial notice of court documents provided for the truth of the facts asserted therein when such documents contain facts essential to support a contention in a cause then before it." (internal quotation marks and citation omitted)).

## III. MOTION TO DISMISS

Defendant raises several bases for dismissal of the FAC, including challenges to standing, personal jurisdiction, and the sufficiency of the complaint under Rule 12(b)(6). For the reasons discussed below, the Court agrees that Plaintiff has not adequately pleaded

a concrete and particularized injury and DISMISSES the FAC for lack of subject matter jurisdiction. As such, the Court does not reach the other arguments raised in Defendant's Motion.

**A. Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal of a complaint for lack of subject matter jurisdiction. Article III of the U.S. Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" and the constitutional doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992); *see* U.S. Const., Art. III, § 2. At an "irreducible constitutional minimum," to establish standing to assert a claim in federal court, a plaintiff must show: (i) an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (ii) a causal connection between the injury and the conduct complained of; and (iii) that the injury would be redressable through a favorable decision. *Id.* at 560-61 (internal quotation marks and citations omitted). As the party invoking federal jurisdiction, Plaintiff bears "the burden of demonstrating that [he has] standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021). "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks and citation omitted). "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

**B. Discussion**

Defendant raises three challenges to the sufficiency of Plaintiff's allegations of a concrete and particularized injury. First, Defendant argues that Plaintiff has not demonstrated an injury in fact because the FAC alleges only general information about the capabilities of tracking technologies, rather than specific information about his own interactions with Defendant's website. (Mot. at 13). Defendant argues that, absent

allegations about "what particular information about him was captured and transmitted, which third party any information was transferred to, whether any third party actually received identifiable information about him, or whether he was in fact de-anonymized by anyone," the FAC is too conclusory for the Court to infer any concrete injury. (*Id.*). Second, Defendant argues that Plaintiff has failed to allege a "traditionally recognized injury" because the tracking of "routing, addressing, and signaling information" does not implicate a legally protected privacy interest. (*Id.* at 14). Defendant argues that the Court should reject the allegations about Defendant's collecting of "health, nutrition, and wellness" information because these allegations are facially implausible and because the FAC does not allege that any such information was actually collected or transmitted. (*Id.* at 15). Third, Defendant argues that Plaintiff lacks standing to bring any invasion of privacy claims because he is a serial "tester" litigant who seeks out privacy violations, such that he could not have had a "reasonable expectation of privacy" when using Defendant's website. (*Id.* at 15-16).

In his Opposition, Plaintiff argues that Defendant's use of tracking software violated his privacy rights and caused various concrete injuries, including the loss of control of his identifying information, the diminution of the economic value of such data, and the exposure to the likely use of the data for purposes far removed from the circumstances of his visit to the website. (Opp. at 16). Plaintiff argues that the rights codified in the CIPA are substantive and not procedural rights and therefore do not require allegations of any additional harm. (*Id.* at 17). Plaintiff cites numerous cases from other district courts that have recognized privacy harms resulting from the use of tracking software. (*Id.* at 17-19).

For an injury to qualify as "particularized," it must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. A "concrete" harm, meanwhile, is one that is "real, and not abstract." *Spokeo, Inc.*, 578 U.S. at 340 (internal quotation marks omitted). While "tangible harms, such as physical harms and monetary harms" readily qualify as concrete injuries, various "intangible harms can also be concrete." *Ramirez*, 594 U.S. at 425. In assessing whether an intangible harm is sufficiently concrete, courts

consider whether the alleged harm "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc.*, 578 U.S. at 341. While this does not require "an exact duplicate in American history and tradition," courts should not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Ramirez*, 594 U.S. at 424-25. In addition to consideration of historical analogues, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important." *Spokeo, Inc.*, 578 U.S. at 341. However, "Congress's role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* Even where a statute creates a cause of action, courts must "independently decide whether a plaintiff has suffered a concrete harm under Article III." *Ramirez*, 594 U.S. at 426.

Applying the Supreme Court's guidance in *Spokeo*, the Ninth Circuit has adopted a two-step approach to determine whether the violation of a statute causes a concrete injury. Under this test, courts ask "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270-71 (9th Cir. 2019) (citation omitted).

At the first step, the Court agrees with Plaintiff that the CIPA and CDAFA were established to protect concrete privacy interests. The Ninth Circuit has recognized that "[v]iolations of the right to privacy have long been actionable at common law." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *U.S. Dept. of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989). Both the CIPA and CDAFA were passed for the explicit

purpose of protecting the individual right of privacy. *See* Cal. Pen. Code § 502(a) (declaring that "protection of the integrity of all types and forms of lawfully created . . . computer data is vital to the protection of the privacy of individuals"); *id.* § 630 ("The Legislature by this chapter intends to protect the right of privacy of the people of this state."). "Thus, these statutory provisions codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*Facebook*").

At the second step, however, the Court agrees with Defendant that the FAC lacks sufficient facts to demonstrate that the "specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Patel*, 932 F.3d at 1274 (citation omitted). Under *Spokeo* and *Ramirez*, courts "look to the *specific* underlying harm experienced by the plaintiff and compare it, in detail, to a *specific* common-law tort." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Under the analogous common-law privacy torts, such as intrusion upon seclusion and public disclosure of private facts, a violation of the right to privacy requires an intrusion that is "highly offensive." *Id.* (quoting Rest. (Second) of Torts §§ 652B, 652D). As such, to establish a concrete injury, a plaintiff must show not only that personal information was disclosed, but that the information was in some way "embarrassing, invasive, or otherwise private." *Id.*

Here, while the FAC includes detailed allegations about tracking technologies generally, it includes few specific allegations about Plaintiff's particularized injury. The FAC states that Plaintiff used Defendant's website on April 2, 2025; that the website executed tracking software that captured his "routing, addressing, and signaling information," which "reflected the pages Plaintiff accessed and his interactions with the Website"; and that Defendant transmitted this information to third-party advertising and analytics platforms. (FAC ¶¶ 66-68). However, the FAC includes no information about what specifically Plaintiff *did* on Defendant's website or what specific information the website captured *from him*. Plaintiff's allegation that the website took his "routing, addressing, and signaling information" is conclusory, parroting the language of the

statutory definition of a "trap and trace device" without providing any detail about Plaintiff's actual injury. Cal. Pen. Code § 638.50(c); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do."). Meanwhile, absent further factual pleading, Plaintiff's allegation that the website tracked the pages that he accessed does not show any "highly offensive" intrusion on a protectable privacy interest. For example, if Plaintiff did no more than access the website's homepage, it is not clear how public disclosure of this information could reveal any "embarrassing, invasive, or otherwise private" information about Plaintiff. *Popa*, 153 F.4th at 791. "To survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (internal quotation marks and citation omitted); *see also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) ("[C]ourts make their decisions regarding whether a plaintiff has stated a legally protectable privacy interest based on the nature of the information at issue."). Because Plaintiff has not done so here, he has not demonstrated any concrete and particularized injury.

In addition to the allegations discussed above, the FAC includes an allegation that, because Defendant is a nutritional wellness company, interactions with its website "can reveal highly sensitive health-related information, including an individual's dietary restrictions, nutritional needs, potential medical conditions, and personal health goals." (FAC ¶ 65). As an initial matter, however, it is not clear that Defendant's website—a site where users "read about nutrition, explore recipes, and learn about and purchase products designed to support their health," (*id.* ¶ 2)—is capable of capturing the type of "embarrassing, invasive, or otherwise private" information necessary to show a concrete injury to privacy. *Popa*, 153 F.4th at 791. In *Popa*, for example, the Ninth Circuit found that a pet supply website's use of "session-replay technology," which captured users' mouse movements, clicks, keystrokes, and other electronic communications, did not inflict a concrete injury because the gathering of the user's "pet-store preferences and her street

name" did not implicate a "similarly sensitive sphere" to recognized common law privacy claims. *Id.* More fundamentally, however, Plaintiff has not alleged that he personally interacted with the website in a manner that revealed any "highly sensitive health-related information." Allegations about what the website *could* capture, as opposed to what it *did* capture from Plaintiff, are insufficient to confer standing. *See Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) ("And though Plaintiff alleges that Defendants *could* gain 'additional information about [a] visitor such as name, date of birth, and address,' and that allegation *could* intrude on Plaintiff's right to privacy, he fails to convert that hypothetical into a concrete harm to *him*.").

Absent allegations about the specific information that Defendant captured from Plaintiff, the FAC has not shown that the alleged tracking program implicates his "control of information concerning his [] person," *Facebook*, 956 F.3d at 598 (citation omitted), let alone that Defendant's conduct constituted the type of "highly offensive" intrusion sufficient to constitute a concrete injury, *Popa*, 153 F.4th at 791. Accordingly, Plaintiff has not established standing to bring these claims. *See, e.g.*, *Mikulsky*, 682 F. Supp. 3d at 864 ("Without more, the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest."); *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSx, 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024) ("As Plaintiff does not clearly allege what personalized information of hers was actually collected, she does not identify any harm to her privacy."); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (finding no harm to privacy where "Plaintiff does not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest").

While the Court's analysis has focused on Plaintiff's CIPA and CDAFA claims, the conclusion is the same as to Plaintiff's other claims. For Plaintiff's intrusion upon

seclusion claim, common law provides for liability only where "the intrusion would be highly offensive to a reasonable person." Rest. (Second) of Torts § 652B. Thus, to have standing for such a claim, Plaintiff must allege facts showing that he personally suffered a highly offensive intrusion upon his private affairs. As to Plaintiff's invasion of privacy claim under the California Constitution, "[t]he first essential element of a state constitutional cause of action for invasion of privacy is the identification of a specific, legally protected privacy interest." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35 (1994). Informational privacy rights, like those at issue here, are "not absolute" and protect only against "the dissemination or misuse of *sensitive and confidential* information." *Id.* (emphasis added). "A particular class of information is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Id.* Thus, as with his other claims, to establish standing to assert this claim, Plaintiff must allege facts showing that the information disclosed by Defendant was "sensitive and confidential" and would result in "unjustified embarrassment." Finally, Plaintiff's UCL claim under the unlawful prong is derivative of his other claims. To the extent Plaintiff asserts violations of the UCL based on the fraudulent or unfair prongs, the claim fails for the same reason as the CIPA and CDAFA claims.

Accordingly, the Court GRANTS the Motion and DISMISSES Plaintiff's claims for lack of standing. Because it is not yet clear that amendment would be futile, the Court grants Plaintiff leave to amend. To establish standing on these claims in any amended complaint, Plaintiff must allege facts about what information was collected and disclosed by Defendant and must show that the disclosure of this information invaded a protectable privacy interest.

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion and DISMISSES the FAC with leave to amend. Within twenty-one (21) days of the issuance of this Order, Plaintiff may file an amended complaint addressing the deficiencies identified herein. If Plaintiff fails to file an amended complaint within twenty-one (21) days, this action will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: June 5, 2026

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE