**STEPTOE LLP**
Carol Brophy (SBN 155767)
*cbrophy@steptoe.com*
One Market Plaza
Steuart Tower, Suite 1070
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6699

**STEPTOE LLP**
Melanie A. Ayerh (SBN 303211)
*mayerh@steptoe.com*
John P. Wallan (SBN 353689)
*jwallan@steptoe.com*
633 W. Fifth St., Suite 1900
Los Angeles, California 90071
Telephone: 213-439-9400
Facsimile: 213-439-9599

Anthony G. Hopp (*pro hac vice*)
ahopp@steptoe.com
**STEPTOE LLP**
227 West Monroe Street, Suite 4700
Chicago, Illinois 60606
Telephone: (312) 577-1300 / Facsimile: (312) 577-1370

Attorneys for Defendant
LAIRD SUPERFOOD, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LAWRENCE SCHALLERT, an individual,

Plaintiff,

v.

LAIRD SUPERFOOD, INC.,

Defendant.

Case No. 2:25-CV-12407-SPG-PVC

Assigned to Hon. Sherilyn Peace Garnett

**DEFENDANT LAIRD SUPERFOOD, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1), (b)(2), AND (b)(6)**

Hearing Date: August 26, 2026
Time: 1:30 p.m.
Courtroom 5C

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 26, 2026, or as soon thereafter as the matter may be heard before Honorable Sherilyn Peace Garnett of the above-entitled Court, located at 350 W. 1st Street, Courtroom 5C, 5th Floor, Los Angeles, California 90012, Defendant Laird Superfood, Inc. ("Laird") will and hereby does move the Court to dismiss Plaintiff Lawrence Schallert's Second Amended Complaint. This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) on the grounds that: (1) no standing exists, (2) no personal jurisdiction exists, and (3) that the Second Amended Complaint fails to state a claim upon which relief can be granted for several independent reasons.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 9, 2026, when the parties discussed the potential resolution of the filed motion. Declaration of Anthony Hopp, ¶¶ 1-2. The parties discussed the substance and potential resolution of this Motion via video teleconference. *Id.*

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Anthony Hopp, the Request for Judicial Notice, the pleadings and papers on file in this action, all matters of which the Court may take judicial notice, and such other evidence and argument as may be properly received by the Court. A Proposed Order is filed in conjunction for the Court's consideration.

Dated: July 20, 2026

STEPTOE LLP

By: */s/ Anthony G. Hopp*

Carol Brophy
Anthony G. Hopp *(pro hac vice)*
Melanie A. Ayerh
John P. Wallan
Attorneys for Defendant
LAIRD SUPERFOOD, INC.

# TABLE OF CONTENTS


I. INTRODUCTION ..........9

II. REVLEVANT FACTS ..........10

III. ARGUMENT ..........11

A. Schallert Lacks Article III Standing. ..........11

1. Schallert's Single Alleged Non-Interactive Visit to the Laird Website Did Not Cause Any Injury in Fact. ..........12

2. As a Serial Tester, Schallert had No Reasonable Expectation of Privacy. ..........14

B. This Court Lacks Personal Jurisdiction Over Laird. ..........15

1. The SAC's Allegations do not Support Specific Jurisdiction. ..........16

2. Schallert Fails to Satisfy the Purposeful Direction Test. ..........16

3. Schallert Cannot Show that His Claims Arise Out of Laird's Contacts with California. ..........20

4. Subjecting Laird to Jurisdiction Would be Unfair. ..........21

C. Schallert Fails to State Any Claim for Relief. ..........21

1. The Complained of Software is not a Trap and Trace Device Under California Law. ..........21

2. Plaintiff has not Stated a Trap and Trace Claim. ..........24

3. Plaintiff Fails to Allege a CDAFA Claim. ..........26

4. Plaintiff's Common Law Invasion of Privacy and Intrusion Upon Seclusion Claims Fail. ..........28

5. Plaintiff Cannot State a Claim Under the UCL. ..........31

IV. CONCLUSION ..........32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ....................17

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ....................17, 18, 19, 20

*Byars v. Sterling Jewelers, Inc.*,
No. 5:22-cv-01456-SB-SP, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ....................12

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Sept. 9, 2024) ....................22

*Chevron Corp. v. Donziger*,
No. 12-MC-80237, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) ....................30

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................28

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................16

*Digit Shape Techs., Inc. v. Glassdoor, Inc.*,
No. 16-MC-80150, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) ....................30

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....................28

*In re Facebook Priv. Litig.*,
572 F. App’x 494 (9th Cir. 2014) ....................32

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................28

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................12, 29

*Facebook, Inc. v. Power Ventures, Inc.*,
No. C 08–05780 JW, 2010 WL 3291750 (N.D. Cal. July 20, 2010) ....................28

*Ford Motor Co. v. Montana. Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ....................16

*GeoSolutions B.V. v. Sina.com Online*,
700 F. Supp. 3d 821 (N.D. Cal. 2023) ....................18

*In re Google Android Consumer Priv. Litig.*,
No. 11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ............................... 28

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ............................................................................ 31

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) ........................................................................... 32

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022) ....................................................................................... 32

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................... 30, 31

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) .................................. 32

*Heiting v. FKA Distrib. Co.*,
No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594 (C.D. Cal. Feb. 3, 2025) ................. 14, 27

*Heiting v. Taro Pharmaceuticals USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ..................................................................... 27, 28

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ....................................................................................... 17

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ............................................................................................. 29, 30

*Hughes v. Vivint, Inc.*,
No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12, 2024) ........................... 14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................................... 31

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......................................................................... 32

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ..................... 12, 14, 25

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
No. 8:24-CV-00569-FWS-JDE, 2024 WL 4800695 (C.D. Cal. Sept. 3, 2024) ...................... 15

*Kwikset Corp. v. Superior Ct*,
51 Cal. 4th 310 (2011) ................................................................................................ 32

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .................................... 22

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................29, 30, 31

*Lujan v. Defs. Of Wildlife*,
504 U.S. 555 (1992)....................11

*Mejia v. Reed*,
31 Cal. 4th 657 (2003) ....................23

*MGA Ent., Inc. v. Cabo Concepts Ltd.*,
No. CV2010170FMOJPRX, 2021 WL 4733784 (C.D. Cal. June 7, 2021)....................21

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (SD. Cal. 2023)....................14

*Mitchener v. CuriosityStream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ....................14, 25

*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) ....................19

*Moody v. Textron Inc.*,
No. 2:25-CV-01032-MWC-E, 2025 WL 2828109 (C.D. Cal. Sept. 24, 2025) .....17, 18, 19, 20

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................31

*Palacios v. Fandom, Inc.*,
No. 24STCV11264, 2024 WL 5494527 (Cal. Super. Sep. 24, 2024)....................22

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................28

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................9, 12, 31

*Pratt v. Higgins*,
No. 22-cv-04228-HSG, 2023 WL 4564551 (N.D. Cal. July 17, 2023)....................28

*Rodriguez v. Autotrader.com*,
Inc., No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ....................12, 14, 15

*Rounds v. Case-Mate Inc.*,
No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999 (C.D. Cal. July 2, 2025) ............. *passim*

*San Diego Cnty Credit Union v. Citizens Equity First Credit Union*,
325 F. Supp. 3d 1088 (S.D. Cal. 2018)....................16

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ....................................22, 24

*Schallert v. Orkin LLC*,
No. 24STCV31224, 2025 WL 4332757 (Cal. Super. Dec. 15, 2025) ....................................22

*Schallert v. Palo Alto Networks, Inc.*,
No. 25STCV17109, 2026 WL 754028 (Cal. Super. Mar. 6, 2026) ....................................22

*Scharon v. Paramount Global*,
No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Oct. 3, 2025) ....................................22

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................................32

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................................11

*Steinle v. City & Cnty. of San Francisco*,
230 F. Supp. 3d 994 (N.D. Cal. 2017) ....................................22

*Swahili v. Wells Fargo Bank NA*,
2024 WL 4721849 (C.D. Cal. Sept. 27, 2024) ....................................12

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2007) ....................................30

*In re Vizio, Inc. Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................................30, 31

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................................29

*In re Zynga Priv. Litig.*,
750 F.3d1098 (9th Cir. 2014) ....................................30

**Constitutions**

California Constitution....................................29, 30

California Constitution Article I, § 1 ....................................29

**Statutes**

Cal. Bus. & Prof. Code § 17204 ....................................32

Cal. Civ. Code

§ 1798.100(c) ....................................23

§ 140(v)(1),(A), (F), (G) ....24

Cal. Civ. Proc. Code § 410.10 ....16

Cal. Penal Code

§ 638.51 ....22, 23

§ 502(c)(1)–(2), (e)(1) ....26

§ 638.50(c) ....22, 23, 24, 25

§ 638.52(c) ....23

§ 638.52(d) ....23

California Comprehensive Computer Data Access and Fraud Act ....9

California Consumer Privacy Act of 2018 ....24

California's Comprehensive Computer Data and Access Fraud Act ....26, 27, 28, 29

California Unfair Competition Law ....9, 31, 32

California Invasion of Privacy Act .... *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 5, 2026, this Court dismissed Plaintiff Lawrence Schallert's ("Schallert") First Amended Complaint ("FAC") finding that Schallert had failed to adequately allege a concrete and particularized injury: "Absent allegations about the specific information that Defendant captured *from Plaintiff*, the FAC has not shown that the alleged tracking program implicates his 'control of information concerning his [] person[.]'" Dkt # 33 at 11:11-15 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (emphasis added). The Court further held that Schallert had failed to allege that Laird Superfoods, Inc's ("Laird") "conduct constituted the type of 'highly offensive' intrusion sufficient to constitute a concrete injury, *Popa*, 153 F.4th at 791." *Id.* at 11:11-15.

Instead of fixing the FAC's flaws, Schallert's SAC doubles down on the theory that this Court previously rejected, and therefore misses the mark for the same reasons. Schallert still has not specifically identified what personal information he exchanged with Laird's website (the "Website"), what personal data the Website allegedly collected from him, or how the information Laird's Website allegedly collected actually caused him harm. In similar fashion, Schallert's claims under the California Invasion of Privacy Act ("CIPA"), the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), the California Unfair Competition Law ("UCL"), and asserted torts of invasion of privacy and intrusion upon seclusion all fail.

Schallert claims that Laird intruded into his "private affairs" and violated his "reasonable expectation" of digital privacy when, on April 2, 2025, he visited the Laird's Website. SAC, Dkt. 34. On its Website, Laird sells instant and ground coffees, coffee creamers, prebiotic fiber blends, brownie mixes, snack bars, and similar food items containing healthy plant-based fats and other ingredients

designed for a healthy lifestyle.[1] Schallert does not allege that he clicked on any product descriptions on the Website, purchased any Laird products, or otherwise gave the Website any personal information about himself. He alleges only that the Website captured his "routing, addressing, and signaling information", along with other unspecified "data" that was sent to "third parties." SAC, ¶¶ 16, 71. He claims that the Laird website *could have* captured additional information about him and *could have* sold that information to third parties, but he doesn't contend that any of that *actually* happened to him.

Any reasonably experienced user of e-commerce websites knows that internet-based retail platforms collect certain basic information about their customers' visits for marketing purposes. This routine practice is neither "highly offensive" nor actionable under California law. Schallert — who has filed at least 39 nearly identical lawsuits in the past two years (Dkt. 20-2; Request for Judicial Notice, ¶¶ 1-4, Ex. 1-4 ("RJN")) — cannot plausibly claim otherwise based on a single, non-interactive visit to Laird's website. The SAC does not plausibly state any cause of action, and this Court should dismiss this case again, this time with prejudice.

## II. REVLEVANT FACTS

Schallert is a California citizen and resident. SAC ¶ 21. Laird is a Nevada corporation with its principal place of business in Boulder, Colorado. *Id.* at ¶ 22. Laird retails plant-based creamers, supplements, and functional food products, and operates a commercial website at www.lairdsuperfood.com. *See id.* at ¶ 2. Schallert alleges that Laird embedded invisible tracking code on its Website—including pixels, third-party cookies, and scripts provided by TikTok, Meta, Microsoft, Google, Adobe, Snap, and LiveRamp, and "others," including Acxiom. *Id.* at ¶¶ 3, 25–26. According to the SAC, the Tracking Software activates automatically when

[1] https://lairdsuperfood.com/ (last visited May 5, 2026).

a consumer accesses the Website, capturing a digital record of the consumer and the consumer's visit and transmitting it in real time to advertising platforms, analytics companies, and data brokers—without the consumer's knowledge or consent. *Id.* at ¶¶ 3, 32, 33. Schallert alleges he visited the Website on April 2, 2025, while physically located in California, after the Tracking Software was installed. *Id.* at ¶¶ 6, 69–72. He alleges that the Tracking Software captured his "routing, addressing, and signaling information", and sent "data" to third parties whom Plaintiff thinks "on information and belief, identified Plaintiff through browser fingerprinting." *Id.* at ¶¶ 16, 71. Schallert does not specifically identify what exact data was collected personally from him, nor does he allege that he did anything on the website that would have revealed his personal interests or other arguably personal information, such as clicking on a product description or making a purchase. *See generally id.* Schallert brings five claims on behalf of himself and a putative class of all persons located in California "subjected to the Tracking Software." *Id.* at ¶¶ 79, 91–158.

## III. ARGUMENT

This Court should dismiss Schallert's claims with prejudice because he (1) lacks Article III standing, (2) fails to allege facts support personal jurisdiction, and (3) fails to state any claim for relief.

### A. Schallert Lacks Article III Standing.

This Court must dismiss any action where the plaintiff lacks Article III standing. *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 559–61 (1992). The irreducible constitutional minimum of standing requires: (1) an injury in fact, (2) that is fairly traceable to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff must clearly allege **facts** demonstrating standing. *Id.* Schallert again fails to plausibly allege any injury in fact.

1. *Schallert's Single Alleged Non-Interactive Visit to the Laird Website Did Not Cause Any Injury in Fact.*

Merely visiting a website is not enough to give rise to an injury in fact under Article III, particularly in the case of a "tester" who visits various web sites merely to target them for future lawsuits. *Rodriguez v. Autotrader.com*, Inc., No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025); *Byars v. Sterling Jewelers, Inc*., No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 n. 4 (C.D. Cal. Apr. 5, 2023); Dkt. #20-2-37[2]. To establish injury in fact, the "plaintiff must show an invasion of a legally protected interest that is concrete and particularized and actual and imminent, not conjectural or hypothetical." *Id.* at 339 (quotations omitted). In the privacy context, "the nature of the injury turns on whether a plaintiff has a legitimate expectation of privacy." *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025) (citation omitted). Thus, "[t]o survive a motion to dismiss, [Schallert] must identify the 'specific personal information [he] disclosed that implicates a protectable privacy interest.'" *Id.* (citation omitted). Schallert must show that the alleged tracking program implicated his control of information concerning his person, *and* that the conduct constituted a "highly offensive" intrusion sufficient to constitute a concrete injury. *Facebook*, 956 F.3d 589, at 598; *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). But, as this Court previously recognized, Schallert has failed to allege any harm to *himself* – physical, economic, or otherwise – resulting from his one visit to Laird's Website.

[2] Schallert has filed 39 similar internet privacy suits in the past two years. If he continues at his current pace, Schallert will have filed several more before this motion is fully briefed. This Court has already taken judicial notice of Schallert's other boilerplate lawsuits, and may consider them in this Motion to Dismiss. Order at 5:6-9; *Swahili v. Wells Fargo Bank NA*, 2024 WL 4721849, at *5-*6 (C.D. Cal. Sept. 27, 2024) (considering previously noticed documents in a successive motion to dismiss, and denying a repetitive request for judicial notice as moot).

As an initial matter, like the FAC, most of the SAC's allegations are generalized, having to do with hypothetical "individuals," "visitors," and "consumers" described in the abstract, instead of anything that allegedly happened to Schallert. For example, the SAC devotes numerous paragraphs to describing how tracking technologies generally operate when "an individual visits a website," and how any collected data point might be used by third parties. SAC ¶¶ 24–39. The SAC details what "browser fingerprinting" *might* involve, and says that the Website caused Schallert to be "fingerprinted", but does not actually say *how* he was fingerprinted, what personal data he submitted to the Website, or what personal data the Website actually collected from him. *Id.* at ¶¶ 36, 42. Further, it is unclear what tracking technology Schallert is even referring to as the SAC's definition of tracking software lists seven companies' technology and "others". *Id.* at ¶¶ 3, 25. The SAC continues to display a substantial disconnect between the generalized allegations about "consumers" and the specific allegations about what Schallert did while on the Laird Website or what Laird's Website allegedly did to Schallert.

Schallert therefore still fails to allege basic facts from which this Court could infer a concrete injury. Schallert's own allegations are limited to a single occasion "[o]n April 2, 2025," during which he "visited the Website to view information concerning Defendant's products and related nutrition and wellness content." SAC ¶ 69. He alleges only, in conclusory fashion, that Laird's alleged software "captured routing, addressing, and signaling information", that he was "subjected" to the software, that "data" was sent to third parties, and that he "has likely been exposed to the pervasive profiling and prospective tracking of internet activity described above." *Id.* at ¶¶ 16, 69–72. He does not identify how many times he visited the Website, which products he viewed, which pages he accessed, what specific content he interacted with, what particular information about him the Website allegedly captured and transmitted, to which third party the Website allegedly transferred information, whether any third party actually received identifiable information

about him, or whether he was in fact de-anonymized by anyone. As with the FAC, these omissions are fatal.

All the SAC does is put a new bow on the same conclusory allegations that this Court already found defective. Schallert has not shown any "highly offensive" intrusion on a protectable privacy interest. He fails to carry his burden to show that specific personal information he disclosed implicates a protectable privacy interest. *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (SD. Cal. 2023). Again, other courts have dismissed substantially similar complaints. *See Heiting v. FKA Distrib. Co.*, No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025) (dismissing for failure to allege basic facts from which the court could infer a concrete injury, such as when the plaintiff visited the site, what information she provided, and what personal information the defendant captured); *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *4 (C.D. Cal. July 12, 2024) (dismissing where the complaint was vague as to the plaintiff's use of the website and what information was captured, and contained only conclusory allegations of statutory violations insufficient to confer standing); *Kishnani*, 2025 WL 1745726, at *3 (same); *Mitchener v. CuriosityStream, Inc.*, 815 F. Supp. 3d 845, 850–51 (N.D. Cal. 2025) (same). This Court should do likewise, this time with prejudice.

2. *As a Serial Tester, Schallert had No Reasonable Expectation of Privacy.*

Courts dismiss privacy claims for lack of standing where serial plaintiffs actively "seek[] out privacy violations." *Rodriguez*, 2025 WL 1085787, at *1. This is because privacy claims "depend on the plaintiff's reasonable expectations". *Id.* A plaintiff who "visited and entered information into [a] Defendant's website expecting the information to be accessed, recorded, and disclosed, [] cannot claim an injury when [their] expectations were ultimately met." *Id.* (dismissing serial plaintiff's CIPA claim); *see also Byars*, 2023 WL 2996686, at *3 n. 4 (noting that

the "undisputed fact that [plaintiff] filed numerous similar lawsuits before visiting Defendant's website casts doubt on any suggestion that she was surprised by surreptitious recording of her information. . . . [Instead, it appears] that Plaintiff visiting Defendant's website looking for chat features that would track her conversations so that she could allege statutory violations); *Rodriguez*, 2025 WL 1122387, at *3 ("[A]s a tester seeking to file lawsuits for invasions of her privacy, [plaintiff] had no expectation of privacy, and thus, no injury in fact.").

There is no doubt that Schallert seeks out privacy violations. Schallert has filed at least thirty-nine CIPA lawsuits since November 2024—seven other cases in the Central District, thirty in California state court, and one in the Southern District of New York. *See* Dkt. #20-2-37 (outlining each of Schallert's filed cases); RJN at ¶¶ 1-4. On at least one occasion, he has filed as many as three CIPA actions premised on the same core tracking software theory in a single day. Dkt. #20-33, 34, 35. Although Schallert now alleges that he did not expect that his "information" would be "disclosed to unrelated third parties," SAC ¶ 69, "[t]he court need not… accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-CV-00569-FWS-JDE, 2024 WL 4800695, at *2 (C.D. Cal. Sept. 3, 2024). Schallert—who clearly affirmatively seeks out web sites which he believes have the allegedly offending software, and then sues companies about that very software—had no reasonable expectation of privacy when he visited Laird's Website therefore suffered no injury in fact.

**B. <u>This Court Lacks Personal Jurisdiction Over Laird.</u>**

Schallert bears the burden of establishing personal jurisdiction over Laird. *See San Diego County Credit Union v. Citizens Equity First Credit Union,* 325 F. Supp. 3d 1088, 1094–95 (S.D. Cal. 2018). Because California's long-arm statute is coextensive with federal due process limits, the inquiry reduces to whether Laird has

minimum contacts with the forum state such that exercising jurisdiction does not offend traditional notions of fair play and substantial justice. *See Rounds v. Case-Mate Inc.*, No. 2:24-CV-08531-WLH-RAO, 2025 WL 1873999, at *3 (C.D. Cal. July 2, 2025); *see also* Cal. Civ. Proc. Code § 410.10; *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021). Schallert fails to show that this Court has either general jurisdiction or specific jurisdiction over Laird. As an initial matter, Laird is a Nevada corporation with a principal place of business in Colorado. SAC, ¶ 22. Thus, this court lacks general jurisdiction over Laird. *E.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (requiring "continuous and systemic" contacts to find a defendant "at home" in a jurisdiction); *Ford Motor Co.*, 592 U.S. at 358–59 (normally general jurisdiction may only be exercised where a corporation is incorporated and/or has its principal place of business).

*1. The SAC's Allegations do not Support Specific Jurisdiction.*

Schallert's allegation that he visited Laird's Website does not subject Laird to specific jurisdiction in California. Specific jurisdiction over a defendant exists only where there is "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Rounds*, 2025 WL 1873999, at *4. The Ninth Circuit has established a three-part test for analyzing a claim of specific personal jurisdiction: (1) the defendant must have purposefully directed its activities or consummated some transaction with the forum or resident, or availed itself of the privilege of conducting activities in the forum; (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and (3) third, the exercise of jurisdiction must be reasonable. *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). Schallert bears the burden of proving the first two prongs. *Id.* If Schallert fails to carry his burden, then "the jurisdictional inquiry ends and the case must be dismissed." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

*2. Schallert Fails to Satisfy the Purposeful Direction Test.*

The purposeful direction test applies to Schallert's claims. In the Ninth Circuit, purposeful direction is analyzed under the "effects" test, which requires that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Rounds*, 2025 WL 1873999, at *4. "[A]n interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are 'its own choice and not random, isolated, or fortuitous." *Moody v. Textron Inc.*, No. 2:25-CV-01032-MWC-E, 2025 WL 2828109, at *4 (C.D. Cal. Sept. 24, 2025). Contacts with a forum can be in the form of electronic communications, but "something more" than a website's mere passive nationwide accessibility is required to show express aiming at the forum state. *Briskin v. Shopify*, *Inc.*, 135 F.4th 739, 752–53 (9th Cir. 2025). "Something more," is assessed by considering "the interactivity of the defendant's website," "the geographic scope of the defendant's commercial ambitions", and "whether the defendant individually targeted a plaintiff known to be a forum resident." *Moody*, 2025 WL 2828109, at *4. Schallert cannot satisfy this test.

Schallert's jurisdictional allegations are conclusory and fail to connect Laird's supposed California contacts with Plaintiff's single visit to the Laird Website, other than to claim that he was in California when he accessed it. He alleges that Laird has a market in California, that its products are sold in various stores in California, and that it advertises to California. *See* SAC ¶ 10. But he does not allege that he accessed the Website *because of* any California-specific marketing or presence. The notion that Laird could use Plaintiff's ISP information to determine his approximate location does not, by itself, establish that Laird expressly aimed its activities at the forum. *See Briskin*, 135 F.4th at 752. And in any event, the SAC does not allege that Laird knew where Plaintiff was. Further, he does not allege that he purchased anything or did anything on the Website. With seemingly no connection to anything, he alleges that Laird Hamilton, Laird's co-founder, lives in Malibu. It does not appear that Schallert visited the Website due to anything having to do with Mr.

Hamilton or where Mr. Hamilton lived.[3] None of this is enough to establish purposeful direction.

*Rounds* and *Moody* applied the Ninth Circuit's analysis in *Briskin* to near identical facts, and found that there was no specific jurisdiction. In *Rounds*, Tauler Smith, representing Rounds, brought a privacy claim based on data collection by TikTok software. 2025 WL 1873999, at *2, *5–6. Rounds alleged that he "visited Defendant's Website on March 4, 2024," while "physically located in the state of California," and that the "TikTok Software had already been installed and was operational." *Id.* Like Laird, the defendant was not a California corporation, and the court held that it lacked personal jurisdiction over the defendant because Rounds did not "plausibly allege that [defendant] purposefully directed its conduct at California." *Id.* Similarly, in *Moody*, the court dismissed a tracking-software privacy claim brought against a nonresident defendant, holding that the FAC "alleges no reason for the contact between Plaintiff and Defendant other than Plaintiff's choice to utilize the website, lacking an allegation that it was Defendant's own choice that caused its contacts with California." *Moody*, 2025 WL 2828109, at *5*; see also Moledina v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941, 950 (C.D. Cal. 2022) (granting motion for judgment on the pleadings for lack of personal jurisdiction stating "the Court finds Plaintiff's unilateral decision to reach out of California to contact Defendant located elsewhere and Defendant's recording of that communication, without more, cannot satisfy the express aiming requirement.")

In short, allegations fail to support personal jurisdiction when a complaint only alleges that : (a) the plaintiff made a single visit to a nonresident defendant's website while located in California, (b) the plaintiff claims that tracking software

[3] In any event, Laird Superfoods is a corporation, and under long-standing principles, is a separate entity from its founder and namesake. See, e.g., *GeoSolutions B.V. v. Sina.com Online*, 700 F. Supp. 3d 821, 827 (N.D. Cal. 2023) (explaining that a "corporation and its shareholders are distinct entities" (citation omitted)). Shareholders' and officers' own personal connections to a state are not imputed to the corporation for the purpose of the specific jurisdiction analysis.

embedded on the website captured personal data without consent, (c) the challenged software operated uniformly for all website visitors, and (d) the plaintiff's only connection to the forum is his own unilateral decision to access the website from California. But this is all Schallert alleges.

The SAC does not allege that Laird knew Schallert was a California resident. Schallert also does not allege that Laird sold or shipped products to him in California, or that Laird took any action based on knowledge of his location. Without such allegations, the SAC cannot satisfy the third prong of the effects test. And the SAC's allegations that Laird can determine a visitor's geographic location through IP addresses and retains the technical capability to geo-block California consumers, SAC ¶¶ 14–15, does not salvage Schallert's jurisdictional theory for three independent reasons. First, the SAC does not allege that Laird actually determined Schallert's location or took any action based on his IP address. It alleges only a theoretical capability. Second, even if Laird had identified Schallert's approximate location, the mere ability to discern a visitor's geographic origin does not constitute conduct expressly aimed at the forum state. The Ninth Circuit has squarely rejected the notion that a plaintiff's location at the time of the alleged harm, standing alone, can establish express aiming. *See Briskin*, 135 F.4th at 756 n.12 ("We do not look only to where [plaintiff] was located at the time of purchase."). Adopting Schallert's theory would create personal jurisdiction in any state where a plaintiff happened to be located when visiting a website. No court has adopted such an expansive standard. Third, the allegation that Laird could have geo-blocked California visitors but chose not to is irrelevant. A failure to block access is not the same as affirmatively targeting a state. Simply put, Schallert alleges that Laird operated a website and that he visited it. He does not allege that he ordered anything or entered any information. Accordingly, this Court lacks personal jurisdiction over Laird. *See Briskin*, 135 F.4th at 756 n.12; *Rounds*, 2025 WL 1873999, at *6–*7; *Moody*, 2025 WL 2828109, at *5.

3. *Schallert Cannot Show that His Claims Arise Out of Laird's Contacts with California.*

Schallert cannot satisfy the second prong for specific jurisdiction because none of his claims arise out of or relate to any California-specific conduct by Laird. "The second prong of the test requires that the plaintiff's claim arises out of or relates to the defendant's contacts with the forum." *Rounds*, 2025 WL 1873999, at *7. As discussed in the previous section, every claim in the SAC is predicated on the alleged deployment of the tracking software on the Website—not on any retail sale, in-store interaction, disclosures or targeted marketing communication. The SAC's allegations about Laird's products being sold in California retail stores and digital advertising campaigns are irrelevant because Schallert does not allege any causal link between those activities and the software at issue. The SAC attempts to manufacture an "arising out of" connection by alleging the software executed on Schallert's device in California, SAC ¶ 71, but that is a function of Schallert's own unilateral decision to access the Website from California, not any California-directed activity by Laird. *See Rounds*, 2025 WL 1873999, at *7–*8 (dismissing similar Tauler Smith privacy complaint for lack of personal jurisdiction under second prong).

Moreover, allegations that Laird's Website includes an interactive store locator and subscription purchasing options fail to establish jurisdiction. SAC ¶ 11. There are no allegations that Schallert or anyone else used those tools. Regardless, those features are standard, nationwide e-commerce functionalities ubiquitous across modern commercial websites, and none reflects any deliberate effort to target California in particular. A store locator that responds to a user's own input by identifying retail locations where Laird products may be sold in any of the fifty states does not transform a nationally accessible website into one that specifically "targets" California. Such a tool is, by its very nature, geographically neutral — it serves users in all fifty states equally. Nor does the SAC's passing reference to "disclosures and

policies directed specifically to California" cure the deficiency. *Id.* The SAC does not identify which disclosure or policy is supposedly at issue, much less explain how any such disclosure establishes jurisdiction.

4. *Subjecting Laird to Jurisdiction Would be Unfair.*

Operating a commercial, interactive website that is merely accessible from—but does not specifically target—a forum state is insufficient to establish personal jurisdiction over the website operator in that state. *See MGA Ent., Inc. v. Cabo Concepts Ltd.*, No. CV2010170FMOJPRX, 2021 WL 4733784, at *5 (C.D. Cal. June 7, 2021). Here, Schallert has alleged no facts suggesting that Laird's alleged deployment of the software specifically targeted him or California users or contained any California-specific tracking functionality.

**C. Schallert Fails to State Any Claim for Relief.**

1. *The Complained of Software is not a Trap and Trace Device Under California Law.*

CIPA's limitations on trap and trace devices do not apply to the kind of website software described by Schallert, and his CIPA claim fails on the merits. Because this claim presents a question of state law, this Court should look to state court decisions to predict how the California Supreme Court would decide the issue. *See Steinle v. City & Cnty. of San Francisco*, 230 F. Supp. 3d 994, 1014 n. 8 (N.D. Cal. 2017) ("Federal district courts confronted with questions of state law must follow precedent set by the state's highest court or, where no such precedent exists, predict how that court would decide the issue."). Although non-precedential, lower California courts have consistently and overwhelmingly recognized that Section 638.51 does not regulate the collection of internet data. *See Schallert v. Palo Alto Networks, Inc.*, No. 25STCV17109, 2026 WL 754028, at *2 (Cal. Super. Mar. 6, 2026) (dismissing a nearly identical case filed by Schallert, and finding CIPA limits trap and trace devices to telephone lines); *Schallert v. Orkin LLC*, No. 24STCV31224, 2025 WL 4332757, at *2–*6 (Cal. Super. Dec. 15, 2025)

(dismissing another case filed by Schallert and evaluating plain text, statutory framework, legislative history, and public policy); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025); *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *2 (Cal. Super. Sept. 9, 2024); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *3 (Cal. Super. Mar. 13, 2024); *Scharon v. Paramount Global*, No. 25STCV10585, 2025 WL 2996812, at *1–*2 (Cal. Super. Oct. 3, 2025); *Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Sep. 24, 2024).

The statutory text and structure confirm this interpretation. Specifically, Cal. Penal Code 638.51 states that "a person may not install or use a … trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53." A trap and trace device is a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c). The plain text defining "Trap and trace" devices with "telephone words" like "originating number," "dialing", and "routing" clearly refers to telephones only. *See* id.[4] This definition does not expressly reference website technologies, and the statutory scheme makes clear that a trap and trace device can only operate on a telephone line.

Section 638.51 cross-references section 638.52, which provides the procedure to obtain authorization via court order to use a pen register or trap and trace device. Such an order must specify, among other things, "[t]he identify, if known, of the person to whom is leased or in whose name is listed the telephone

---

[4] Generic terms in the definition like "routing," "address," and "signaling information" are given meaning under noscitur a sociis and ejusdem generis by the preceding "telephone" terms, and so do not expansively refer to the internet.

line to which the pen register or trap and trace device is to be attached" and "[t]he number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached." Cal. Penal Code § 638.52(d) (emphasis added). Additionally, Section 638.52(c) provides that "[i]nformation acquired solely pursuant to the authority for . . . a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number." (emphasis added). These provisions, when read together, clearly indicate the legislature's understanding that trap and trace devices can only be attached to telephone lines—that is, lines or wires associated with telephone numbers—and not to computers accessing the internet. *See Mejia v. Reed*, 31 Cal. 4th 657, 663 (2003) (Related statutory provisions "must be read together and so construed as to give effect, when possible, to all the provisions thereof.").

Further, Schallert's interpretation makes impermissible what other California laws allow. California law *authorizes* business to collect, use, retain, and share a consumer's personal information that is reasonably necessary and proportionate to achieve the purposes for which the "personal information" was collected or processed. Cal. Civ. Code § 1798.100(c). "Personal information" includes "Internet Protocol address, email address, . . . or other similar identifiers"; "internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet website application, or advertisement"; and "Geolocation data." Cal. Civ. Code § 1798.140(v)(1), (A), (F), (G). The data Schallert complains about under CIPA, can specifically be collected under the California Consumer Privacy Act of 2018 ("CCPA"). CIPA cannot be read to bar what the CCPA permits.

Further, the legislative history behind CIPA only refers to trap and trace devices in the context of telephones. For example: "**In addition, another tool law enforcement uses is called a 'trap and trace device' which allows them to**

**record what number have called a specific telephone line, i.e. all incoming phone numbers.**" AB 929, Assemb. Comm. on Pub. Safety, Bill Analysis of AB 929, at p. S (Cal. Apr. 6, 2015), https://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html (emphasis added). There is no indication that the legislature had any intention to broadly regulate tracking software on websites via CIPA. *See generally id.*

As such, California courts have held that "the legislative history of the CIPA suggests that 'pen register' and 'track and trace devices' refer to devices or processes that are used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications such as websites." *E.g.*, *Sanchez*, 2025 WL 487194, at *3. This Court should likewise decline to extend the statute beyond its intended scope.

2. *Plaintiff has not Stated a Trap and Trace Claim.*

Even if this Court were to expand the applicability of CIPA's trap and trace limits beyond its statutory scheme, and beyond what the legislature intended (and it should not), Schallert still fails to state a claim because the SAC establishes that the software is not a "trap and trace device" within the meaning of California Penal Code § 638.50(c). A "trap and trace device" captures identifying information about a communication "but not the contents of a communication." Cal. Penal Code § 638.50(c); *Mitchener*, 815 F. Supp. 3d 845, 851 (same). Here, the SAC identifies over 40 tracking technologies, yet treats them all as a monolithic "trap and trace device" without differentiating among them or explaining how any individual technology satisfies the definition. This alone is fatal. *Mitchener* is on point. There, Tauler Smith brought a similar CIPA claim alleging that TikTok's Software "fingerprints" website visitors to collect data about otherwise anonymous users, and that the Software runs on virtually every page. *Id.* The court granted the motion to dismiss with prejudice, reasoning:

> Though neither party discusses the distinction between information about a communication versus information within a communication, it crystalizes the futility of Plaintiff's suit (and the myriad identical cases Plaintiff's counsel has filed in both federal and state courts). If Defendant only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location). If Defendant instead collects content information from communication between the parties (e.g., information provided from Plaintiff to Defendant directly), then the TikTok software is not a trap and trace device and § 638.50 does not apply.

*Id.* (dismissing with prejudice); *see also Kishnani*, 2025 WL 1745726 at *4–*5 (same). Schallert here is caught in the same trap. The facts alleged show that that data captured was merely routing metadata (defeating standing), but Schallert simultaneously argues that this data was actually content information, which would defeat the trap and trace claim. The SAC alleges that the software records users' browsing activity on the Website—including pages viewed, links clicked, URLs requested, and resources loaded—enabling third parties to build behavioral profiles revealing personal interests, purchasing habits, and lifestyle choices. *See* SAC ¶¶ 31, 33, 43. In other words, *content*, not mere routing or addressing data.[5] And if the software captures only non-content metadata, then Plaintiff has no cognizable privacy interest in that data. Either way, the claim fails. The information Schallert claims was actually collected is not enough to give rise to an injury, and the information he claims Laird could have collected takes this case outside of a "trap and trace" claim. Try as he might to characterize the information Laird's Website allegedly collected as merely "routing, addressing and signaling information" or

[5] Again, Schallert does not allege that he personally gave the Laird Website enough data to construct such a behavioral profile, but that other hypothetical users might, and their data could be so used.

"data" (SAC, ¶¶ 6, 16, 95), the gravamen of Schallert's SAC is that the Website obtains and transmits information on users' "interests, purchasing behavior, lifestyle choices, and other inferred personal attributes." (even if he doesn't claim that actually happened to him). SAC ¶ 45. Schallert cannot have it both ways. His CIPA claim should be dismissed.

*3. Plaintiff Fails to Allege a CDAFA Claim.*

California's Comprehensive Computer Data and Access Fraud Act, Cal. Penal Code § 502 ("CDAFA") is an anti-hacking statute. Even accepting Schallert's claims at face value, this is simply not a case about hacking. The CDAFA creates a private cause of action against any person who: (1) "[k]nowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any . . . computer network to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property or data." Alternatively, a person is liable when they "[k]nowingly accesses and without permission takes copies, or makes use of any data from a computer, computer network, or computer system[.]" Cal. Penal Code § 502(c)(1)–(2), (e)(1). Schallert's CDAFA theory is that his access to the Laird Website—which then allegedly tracks and records information about Schallert—is the equivalent of wrongful access, wrongful control, or the similar misconduct CDAFA prohibits. This allegation is simply not plausible.

*Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023) is instructive. There, the plaintiff, like Schallert, alleged that a pharmaceutical company's website tracked her personal identifying information and thus violated CDAFA. The Court dismissed the claims, holding that such conduct does not constitute: (1) access without permission, nor does it (2) cause cognizable damage. *Id.* at 1020–21. As that decision correctly reasons, the CDAFA defines "access" to mean "cause output from" the "logical, arithmetical, or memory function resources of a computer." *Id.* at 1020 (quoting Cal. Penal Code § 502(b)(1)). This is consistent

with the CDAFA's purpose—to prevent hacking. Schallert's claims fail for the same reason. Though couched with flourishes of hyperbole and innuendo, Schallert's SAC essentially only alleges that he accessed Laird's Website. This is not hacking, and the Court should dismiss the claims.

Even if the Court accepts Schallert's argument that his single, non-interactive visit to Laird's Website somehow resulted in the equivalent of "hacking," the claim also fails because he has not plausibly alleged any resulting damages. Accepting his allegations as true, Schallert alleges only that he "lost" some data, IP address and similar information communicated while voluntarily visiting Laird's Website. Again, the Court in *Heiting* reached the same conclusion on similar facts. That Court—following "the majority of courts to consider the issue"—held that the "CDAFA's private right of action contemplates some damage to the computer system, network, program, or data contained on that computer, as opposed to the data generated by a plaintiff while engaging with the defendant's website." *Id.* at 1021 (citing Cal. Penal Code § 502(e)(1).

As illustrated in *Heiting*, the majority view is that the alleged "loss" of Plaintiff's IP address and other record information does not give rise to a CDAFA claim. *Heiting*, 709 F. Supp. 3d 1007, at 1020–21; *see also Doe v. Meta Platforms, Inc.* , 690 F. Supp. 3d 1064, 1081-83 (N.D. Cal. 2023) (finding allegations that protected information was diminished in value did not qualify as damage or loss under CDAFA); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (finding damage or loss under CDAFA did not include "loss of the right to control [Plaintiffs'] own data, the loss of the value of their data, and the loss of the right to protection of the data"); *Pratt v. Higgins,* No. 22-cv-04228-HSG, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023) (finding access to communications, notes, and medical information did not create the type of loss contemplated by the CDAFA's private civil cause of action).

Further, several courts have held that "individuals may only be subjected to liability for acting 'without permission' under Section 502 if they access or use a computer, computer network, or website in a manner that overcomes technical or code-based barriers." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1217 (N.D. Cal. 2014) (quoting *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011)); *see also In re Google Android Consumer Priv. Litig.*, No. 11-MD-02264 JSW, 2013 WL 1283236, at *11 (N.D. Cal. Mar. 26, 2013) ("Courts within this District have interpreted without permission to require that a defendant access a network in a manner that circumvents technical or code based barriers in place to restrict or bar a user's access." (citation modified)); *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011) ("Individuals may only be subjected to liability for acting without permission under Section 502 if they access or use a computer, computer network, or website in a manner that overcomes technical or code-based barriers." (citation modified)); *Facebook, Inc. v. Power Ventures, Inc.*, No. C 08-05780 JW, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010) (concluding after detailed statutory analysis that "accessing or using a computer, computer network, or website in a manner that overcomes technical or code-based barriers is 'without permission,' and may subject a user to liability under Section 502"). Plaintiff has not alleged that Laird overcame any "code-based barriers" to collect his record information. His CDAFA claim should therefore be dismissed.

#### 4. *<u>Plaintiff's Common Law Invasion of Privacy and Intrusion Upon Seclusion Claims Fail.</u>*

Schallert's claims for invasion of privacy under Article I, Section 1 of the California Constitution and intrusion upon seclusion both fail because Schallert has not alleged a reasonable expectation of privacy or a serious invasion of that interest. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation

of privacy under the circumstances; and (3) a serious invasion of that privacy interest. *Yoon v. Lululemon USA, Inc.,* 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021). Similarly, to state a claim for intrusion upon seclusion under California common law, a plaintiff must allege: (1) an intentional intrusion into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy; and (2) that the intrusion occurred in a manner highly offensive to a reasonable person. *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286 (2009). "Because of the similarity of the tests, courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook*, 956 F.3d 589, at 601. "The California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

The SAC establishes that Schallert had no reasonable expectation of privacy in the types of data that were allegedly *potentially* collected. The data the SAC identifies—pages viewed, device type, browser type, operating system, screen resolution, session identifiers, and timestamps, SAC ¶¶ 30, 36, 96—is generic technical metadata generated by every website visit. Courts have concluded that disclosure of such routing information does not violate the privacy clause of the California Constitution. *Chevron Corp. v. Donziger*, No. 12-MC-80237, 2013 WL 4536808, at *10 (N.D. Cal. Aug. 22, 2013); *Low*, 900 F. Supp. 2d 1010, at 1025. "There is no reasonable expectation of privacy when the data collection is within users' common-sense expectation or when the information is not sensitive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1089 (N.D. Cal. 2022). The Ninth Circuit has held that there is no reasonable expectation of privacy in URLs that reveal only basic identification and address information. *In re Zynga Priv. Litig.*, 750 F.3d1098, 1108–09 (9th Cir. 2014). An IP address "does not provide any personal identifying information," *Digit Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-MC-80150, 2016 WL 5930275, at *5 (N.D. Cal. Oct. 12, 2016), and there can

be no "expectation of privacy" in IP addresses because they "are voluntarily turned over in order to direct the third party's servers." *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2007).

As explained above, the SAC does not identify any intimate, sensitive, or otherwise protected personal information that was actually collected from Schallert. Schallert alleges only that "routing, addressing, and signaling information" and "data" was captured during his visit—technical data about his browser and device, not substantive content about any private matter.

Even if Schallert could demonstrate a reasonable expectation of privacy, the conduct alleged is not sufficiently "serious" to support either claim. California courts require that the invasion constitute an "egregious breach of the social norms" that is "highly offensive" to a reasonable person. *Hernandez*, 47 Cal. 4th at 287. Courts have been "hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications," holding that only the "collection of intimate or sensitive personally identifiable information may amount to a highly offensive intrusion." *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017). Absent such intimate or sensitive information, "more routine data collection practices may be highly offensive" only "if a defendant disregards consumers' privacy choices while simultaneously 'h[olding] itself out as respecting them.'" *Id.* (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 292 (3d Cir. 2016)).

Schallert's allegations satisfy neither standard. He does not allege that Laird collected intimate or sensitive personally identifiable information—only generic routing metadata. And he does not allege that Laird disregarded his privacy choices while holding itself out as respecting them. There is no allegation that Laird accessed Schallert's device, installed malware, or circumvented any technical barrier. And there is no allegation that Laird collected the contents of any private

communication, search query, or form submission. *Popa v. Microsoft Corporation*, is directly on point, finding a complaint which "identifies no embarrassing, invasive, or otherwise private information collected" insufficient to establish either claim. 153 F.4th 784 at 791. Courts have consistently "refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014); *see also Hammerling*, 615 F. Supp. 3d at 1090; *Low*, 900 F. Supp. 2d at 1025; *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). The use of third-party cookies and tracking pixels on a commercial website "does not strike us as sufficiently offensive, standing alone, to survive a motion to dismiss." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, at 294–95 (3d Cir. 2016).

More importantly, as described above, Schallert has filed at least thirty-nine such cases in the last two years and continues to file them. The only reasonable conclusion is that Schallert has no expectation of privacy, but rather specifically seeks out web sites he thinks might be susceptible to these sorts of lawsuits.

5. *Plaintiff Cannot State a Claim Under the UCL.*

Schallert lacks standing to bring his California Unfair Competition Law ("UCL") claim because he does not allege he paid anything, was denied anything he paid for, or suffered any out-of-pocket loss. Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Ct*, 51 Cal. 4th 310, 322 (2011). The "mere misappropriation of personal information" does not establish compensable damages under the UCL. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023); *Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) ("[J]ust because Plaintiffs' data is valuable in the abstract, and because [the software provider] might have made money from it, does not mean that Plaintiffs have 'lost money or property' as a result."). Schallert's supposed loss of private data and diminution of its value are not an "economic injury." *Griffith v.*

*TikTok, Inc.*, 697 F. Supp. 3d 963, 977-98 (C.D. Cal. 2023); *In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014). Besides the lack of UCL standing, the Court must also dismiss the claim because it lacks equitable jurisdiction. The SAC does not allege that Schallert lacks an adequate legal remedy, and Schallert clearly has an adequate remedy because he seeks legal damages through his other causes of action. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313–15 (9th Cir. 2022); *see generally* SAC.

## IV. CONCLUSION

Plaintiff Lawrence Schallert's SAC again demonstrates that he cannot state a valid claim against Defendant Laird Superfoods. He appears to be a professional "tester" plaintiff, who allegedly visited Laird's Website a single time in April 2025, but did not interact with the site at all. Under prevailing law, Schallert's fleeting interaction with Laird's Website is not enough to allow him to gin up a statewide privacy class action on behalf of every California resident who visited Laird's Website over the past four years. Further, the SAC does not fix any of the fatal flaws this Court found with his FAC. Schallert's Second Amended Complaint should be dismissed with prejudice.

Dated: July 20, 2026

STEPTOE LLP

By: *\/s/ Anthony G. Hopp*

Carol Brophy
Anthony G. Hopp (*pro hac vice*)
Melanie A. Ayerh
John P. Wallan

Attorneys for Defendant
LAIRD SUPERFOOD, INC.

## CERTIFICATE OF SERVICE

I hereby certify that, on July 20, 2026, a copy of the foregoing **DEFENDANT LAIRD SUPERFOOD, INC.'S REPLY TO PLAINTIFF'S OPPOSTION TO MOTION TO DISMISS** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

*/s/ Anthony G. Hopp*
Anothony G. Hopp