Robert Tauler (SBN 241964)
robert@taulersmith.com
J. Evan Shapiro (SBN 218481)
eshapiro@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff Lawrence Schallert*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAWRENCE SCHALLERT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LAIRD SUPERFOOD, INC., a Nevada corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 2:25-CV-12407-SPG-PVC<br><br>*[Assigned to Hon. U.S.D.J. Sherilyn Peace Garnett]*<br><br>**PLAINTIFF LAWRENCE SCHALLERT'S OPPOSITION TO DEFENDANT LAIRD SUPERFOOD, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>Hearing</u><br>Date: August 26, 2026<br>Time: 1:30 pm<br>Courtroom: 5C |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... 3

I. INTRODUCTION .......... 7

II. ALLEGATIONS OF THE SECOND AMENDED COMPLAINT .......... 6

III. ADDITIONAL RELEVANT JURISDICTIONAL FACTS .......... 9

IV. LEGAL STANDARDS .......... 11

V. THE COURT SHOULD DENY THE MOTION TO DISMISS .......... 12

A. The Court Has Personal Jurisdiction over Laird in this Action .......... 12

1. Purposeful Direction: Intentional Act & Harm in California .......... 13

2. Purposeful Direction: Express Aiming at California .......... 13

3. Minimum Contacts: The Controversy Relates to or Arises Out of Laird's Contacts with California .......... 16

4. Minimum Contacts: Reasonableness of Exercising Personal Jurisdiction over Laird in California .......... 17

B. Plaintiff Has Article III Standing to Bring His Claims .......... 17

C. The SAC Sufficiently States Claims Against Laird .......... 21

1. The Tracking Software is a Trap and Trace Device .......... 21

*a. Cal. Penal Code Section 638.51 Applies to Software & Websites* .......... 21

*b. The SAC Does Not Allege that the Tracking Software Transfers the "Contents" of Communications* .......... 23

2. The SAC States a Claim Under CDAFA. .......... 25

3. The SAC States a Claim For Intrusion Upon Seclusion. .......... 25

VI. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

Cases

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) .......... 11

*Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908 (C.D. Cal. Mar. 25, 2026) .......... 16

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) .......... 9

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 16

*Calder v. Jones*, 465 U.S. 783 (1984) .......... 10

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016) .......... 9

*Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025) .......... 16

*Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016 (C.D. Cal. 2025) .......... 12, 20

*Conohan v. Rad Power Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 20

*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) .......... 9

*Evox Prods., LLC v. Lemberg Law LLC*, No. CV 21-7875 PA (AGRx), 2022 U.S. Dist. LEXIS 96897 (C.D. Cal. Feb. 15, 2022) .......... 14

*First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438 (C.D. Cal. Feb. 14, 2025) .......... 9

*Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .......... 17

*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 LX 326276 (N.D. Cal. Aug. 29, 2025) .......... 9, 18

*Gabrielli v. Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. Jul. 14, 2025) .......... 13, 18, 20

*Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sep. 2, 2025) .......... 20

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 862 (N.D. Cal. 2025) .......... 15, 18

*Hassid v. Alex and Ani, LLC*, 816 F. Supp. 3d 1196 (C.D. Cal. 2026) .......... 12, 16, 20

*Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025) .......... 20

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020) .......... 15, 17

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3rd Cir. 2019) .......... 17

*Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303 (S.D. Cal.

*Krzyzek v. Openx Techs., Inc., 817 F. Supp. 3d 857* (N.D. Cal. 2026) .......... 16

*Kishnani v. Royal Caribbean Cruises Ltd.* (N.D. Cal. June 24, 2025) 2025 U.S. Dist. LEXIS 120002 .......... 24

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .......... 9

16

*Lewis v. Magnite, Inc.,* No. 2:25-cv-03448-MWC-SSCx, 2025 LX 509487 (C.D. Cal. Dec. 4, 2025) .......... 12, 20

*LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F. 4th 852 (9th Cir. 1977) .......... 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 15

*Martinez v. Choose Your Horizon, Inc.,* No. 24-cv-02798-LB, 2025 LX 367073 (N.D. Cal. Aug. 31, 2025) .......... 13

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011) .......... 12, 14

*Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 LX 193021 (9th Cir. June 20, 2025) .......... 12

*Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 20

*Mitchener v. Curiositystream, Inc.* (N.D. Cal. Aug. 6, 2025) 2025 U.S. Dist. LEXIS 155489 .......... 24

*Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. July 25, 2024) .......... 20, 22

*Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017) .......... 17

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) .......... 15

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744 (N.D. Cal. Nov. 24, 2025) .......... 16, 18

*Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. July 18, 2025) .......... 20

*San Remo Hotel, L.P. v. San Francisco City & Cnty.*, 364 F.3d 1088 (9th Cir. 2004) .......... 19

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. October 21, 2024) .......... 20

*Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) .......... 16

*Thomas v. Papa John's Int'l, Inc.,* Nos. 24-3557, 24-3834, 2025 LX 192037 (9th Cir. June 18, 2025) .......... 12

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .......... 15

*Wolf v. Strankman*, 392 F.3d 358 (9th Cir. 2004) .......... 9

*Zarif v. Hwareh.com, Inc.* (S.D. Cal. 2025) 789 F. Supp. 3d 880 .............................. 22, 23

Statutes

18 U.S. Code § 3127(4) .................................................................................... 22

Cal. Pen. Code § 638.50 (b) ................................................................................ 23

Cal. Penal Code § 629.51(a)(2) ............................................................................. 8

Cal. Penal Code § 631(a) .................................................................................... 20

Cal. Penal Code § 638.50(c) .................................................................................. 7

Other Authorities

147 Cong. Rec. S10990-02, SI 1006, 2001 WL 1297566 (Oct. 25, 2001) ....................... 21

Assemb. Com. Pub. Safety, Analysis of AB 929, at K (Apr. 7, 2015) ............................ 21

Pub. L. 99–508, title III, § 301(a), 100 Stat. 1868 (Oct. 21, 1986) ................................. 20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff Lawrence Schallert ("Plaintiff") opposes Defendant Laird Superfood, Inc. ("Laird or Defendant") Motion to Dismiss the Second Amended Complaint (ECF No. 37) (the "SAC") (the "Motion").

In its June 5, 2026 order granting Defendant's Motion to Dismiss the First Amended Complaint (ECF No. 33) (the "FAC Order"), the Court found that Plaintiff lacked standing under Article III with respect to all of his claims in the case. In reaching that conclusion the Court noted that "the FAC alleges only general information about the capabilities of tracking technologies, rather than specific information about his own interactions with Defendant's website." *Id.*, at 6:26-28. Further, the Court noted that "to establish a concrete injury, a plaintiff must show not only that personal information was disclosed, but that the information was in some way 'embarrassing, invasive, or otherwise private.'" *Id.*, at 9:16-18 (quoting *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).) And, it held that "[t]o survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." ECF No. 33, at 10:9-14 (quoting *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023)). Finally, at the center of the Court's granting of Defendant's motion to dismiss, the Court concluded that Plaintiff had failed to identify such information and therefore "had not demonstrated any concrete and particularized injury." ECF No. 33, at 10:14-16.

Plaintiff filed his Second Amended Complaint ("SAC") on June 26, 2026. *See* ECF No. 34. It alleges that third-party tracking software running on Laird's website (the "Tracking Software") subjected Laird to browser fingerprinting. Further, it alleges that such software transmitted Plaintiff's identifying data to the suppliers of the software, and, on information and belief, that the data identified Plaintiff. The SAC alleges that as a result of such identification, Plaintiff "has likely been exposed to pervasive profiling and prospective tracking" of his internet browsing activity. And, it alleges that "pervasive and extensive tracking engaged in by such data brokers as Acxiom and LiveRamp ha[s] likely

resulted in the collection of sensitive, personal or embarrassing information based on Plaintiff's internet activity since his April 2, 2025 visit to the Website."

Plaintiff submits that these new allegations align Plaintiff with plaintiffs in a line of decisions issued within the Ninth Circuit, grounded in the Circuit's 2020 opinion *in In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*Facebook*"), in which courts found Article III standing had been established. Plaintiff further submits that the fact that *pre-discovery* Plaintiff lacks specific information regarding what data brokers collected from their "pervasive and extensive tracking" of him in terms of sensitive or embarrassing information, should not determine the standing question at this juncture. *Facebook*, still good law in the Circuit, does not require dismissal of this action under the amended allegations in the SAC.

For all the reasons set forth below, the Court should deny the Motion in its entirety.

## II. ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

The SAC alleges that Laird operates a highly interactive commercial website selling food and supplement products tied to health and fitness directly to consumers. ECF No. 34, ¶¶ 10-11. It alleges that a visitor's interaction with the Website "can reveal highly sensitive personal information concerning an individual's health conditions, dietary restrictions, nutritional needs, and related private matter." *Id.*, ¶ 128.

The Website is directed at California consumers specifically, as it allows them to search for retail locations in the state where Laird's products are sold. *Id.*, ¶¶ 10-11. The SAC alleges that Laird promotes and advertises its products to Californians through social media advertising and "brand collaborations emphasizing" the availability of Laird's products at physical California locations. *Id.* The Website sells product directly to consumers in California, and allows them to enroll in recurring product shipments. *Id.* The Website also includes "disclosures and policies directed specifically to California consumers." *Id.*, ¶ 11.

The SAC explains that Laird is aware of the geolocation of visitors to the Website before the Website transmits content to the visitors' devices. *Id.*, ¶ 14. Using this

knowledge, and with its technical ability to control access to the Website based on device data, Laird "could prevent California consumers from accessing the Website" or from being subjected to the Tracking Software; however Laird has chosen not to do so. *Id.*, ¶ 15. In other words, Laird intentionally allows individuals located in California to visit the Website and receive the Tracking Software. *Id.*

The Tracking Software consists of software provided by social media companies including Meta (Facebook), and data brokers LiveRamp and Acxiom. *Id.*, ¶¶ 3, 26. The SAC alleges that the Tracking Software was in operation when Plaintiff visited the Website from a physical location in California, on April 2, 2025. *Id.*, ¶ 6, 66-70. Plaintiff had no knowledge of, and did not consent to, the operation of the Tracking Software on him and his device; nor had Laird obtained a court order or any other authorization to use the Tracking Software at the time. *See id.*, ¶¶ 6, 42, 69-78.

The SAC alleges that during his visit the Tracking Software operated upon him. *Id.*, ¶ 70. Further, the Tracking Software that acted upon Plaintiff includes "***third-party*** tracking cookies that assign persistent identifiers enabling advertising and analytics platforms to recognize the same individual across multiple pages, browsing sessions, and even across entirely different websites." *Id.*, ¶ 30. (These are placed on the individual visitor's browser.) These operations serve Laird's "advertising operations", enabling "Defendant and its advertising and analytics partners [to] measure user activity, analyze consumer behavior, and facilitate targeted advertising and marketing analytics." *Id.*, ¶ 13. They also benefit both Laird and the advertising/analytic partners such as Meta and LiveRamp commercially. *Id.*, ¶¶ 13, 27, 133.

The SAC further alleges that "Plaintiff reasonably understood that his interaction with the Website would occur between his device and [Laird] as the Website operator and did not expect that information generated through those communications would be disclosed to unrelated third parties." *Id.*, ¶ 69. However, as "Plaintiff's browser requested and loaded webpages [on] the Website," and unknown to Plaintiff, the Tracking Software caused the URLs of webpages Plaintiff visited on the Website, along with information

about him, his location, his browser and his device that can be used to identify him, to be transmitted to the "third-party advertising and analytics platforms" that provided the Tracking Software. *Id.*, ¶ 71. "As a result of this identification, Plaintiff has likely been exposed to [ ] pervasive profiling and prospective tracking" of his internet browsing activity after his visit. *Id.*, ¶ 72. The SAC further alleges that, "the pervasive and extensive tracking engaged in by such data brokers as Acxiom and LiveRamp have likely resulted in the collection of sensitive, personal or embarrassing information based on Plaintiff's internet activity since his April 2, 2025 visit to the Website." *Id.*, ¶ 75.

The SAC alleges that, as the result of being subjected to the Tracking Software on the Website, Plaintiff sustained numerous injuries. His interactions with the Website were transmitted to third parties who likely integrated it into behavior profiles of him that can be used for unknown purposes, and used it, with the help of "persistent identifiers" to track his internet browsing beyond his visit to the Website; he lost control over how information that can identify him is collected and disseminated; Laird and its advertising/analytics partners obtained commercial value from the operation of the Tracking Software on him, diminishing the economic value of Plaintiff's personal information; and he is at substantial risk of having the information extracted from his visit "retained, aggregated with other data sources, and used for purposes far removed from the reason Plaintiff visited the Website." *Id.*, ¶¶ 71-78, 105.

The SAC asserts that Laird's actions detailed above constitute a violation of Cal. Penal Code § 638.51. It further asserts that the Tracking Software meets the definition of a trap and trace device under Cal. Penal Code § 638.50(c) because it captures information about Plaintiff, his location, his device and his browser contained on "electronic impulses" that are "incoming" to third parties and the Website, and the information constitutes "routing, addressing or signaling information" that is "reasonably likely to identify" Plaintiff and his device the source of electronic communications. *Id.*, ¶¶ 94-97. The electronic communications in question are the data and/or signals exchanged between Plaintiff's device, on the one hand, and the Website – or the servers of the third parties to

which the Tracking Software directs the information about Plaintiff and his visit – on the other hand, during Plaintiff's visit.

The SAC asserts that the operation of the Tracking Software on the Website constitutes a violation of California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502. It alleges that with use of the Software, Laird caused Plaintiff's device – and those of individuals in California similarly situated to Plaintiff who visited the Website during the relevant limitations period – to generate and transmit data stored on or generated by the devices, namely the information sent to the third-party advertising and analytics platform companies. *Id.* ¶¶ 108-115. The SAC alleges that Laird knowingly and without permission accessed Plaintiff's device and took copied and made use of the data generated by it. *Id.* ¶¶ 110, 113, 116. It further alleges that the execution of the Tracking Software caused Plaintiff's device "to produce output from the logical, memory and network resources" of his computer and browser. *Id.* ¶ 114. Based on these allegations, Plaintiff asserts that Laird violated §§ 502(c)(1), (c)(2) and (c)(4). The SAC notes that Laird caused damage and loss within the meaning of § 502(e) by, consuming computing resources on Plaintiff's device and causing his browser to generate outbound communications to tracking servers that were unrelated to the webpages Plaintiff viewed on the Website. *Id.* ¶ 117. Laird also caused the alteration of data stored on Plaintiff's device through the use of persistent tracking identifiers, and the alteration of how Plaintiff's browser communicated with servers. *Id.* ¶ 121.

The SAC contains numerous allegations supporting the existence of ***specific personal jurisdiction*** over Laird with respect to the claims asserted therein. Defendant's products are sold at 1,200 retail locations across California. *Id.* ¶ 10. The SAC alleges:

> Defendant also promotes and advertises its products to California consumers through digital advertising campaigns and social media promotions targeting California consumers, and brand collaborations emphasizing the availability of Defendant's products in California retail locations. Through these activities,

> Defendant has cultivated a substantial market for its products within California.

*Id.* The Website, which is highly interactive, features an interactive store locator that identifies retail locations carrying Defendant's products, provides contact information and directions to those stores. *Id.* ¶ 11. The SAC further alleges that the Website allows California consumers to enroll to have product shipped to them in California on a recurring basis. *Id.* It also describes in detail the way in which Defendant knowingly causes the Tracking Software to operate upon devices of visitors it knows to be located within California. *Id.* ¶¶ 13-14. Additionally, Defendant had the technical capability "to prevent California consumers from accessing the Website or from receiving its Tracking Software but has chosen not to do so." *Id.* ¶15.

The SAC alleges that Laird maintains a webpage privacy policy specifically directed to California residents, which demonstrates that Laird expected and wanted California residents to use the Website. *Id.* ¶ 17. It also alleges that co-founder, director, and "Chief Innovator" Laird Hamilton maintains a highly publicized residence in Malibu. *Id.* ¶ 18. The SAC further alleges that Laird uses Hamilton's association with Malibu and California surf culture to attract California visitors to the Website. *Id.* ¶ 19.

## III. LEGAL STANDARDS

"On a motion to dismiss for lack of personal jurisdiction, the court 'take[s] as true all uncontroverted allegations in the complaint.'" *First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438, at *2 n.1 (C.D. Cal. Feb. 14, 2025) (quoting *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F. 4th 852, 858 (9th Cir. 1977)).

A facial attack to the Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is confined to the allegations in the complaint. *Wolf v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested." *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 862 (N.D. Cal.

2025) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## IV. THE COURT SHOULD DENY THE MOTION TO DISMISS

### A. The Court Has Personal Jurisdiction over Laird in this Action.

The Ninth Circuit applies a 3-part ***"minimum contacts" test*** for specific personal jurisdiction over a non-resident Defendant. That requires "(1) the non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *See, e.g., Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). "For claims sounding in tort, like the privacy and data use violations [ ], we most often employ a purposeful direction analysis." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (footnote omitted). "[T]he ***purposeful direction test*** requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin*, 135 F.4th at 751 (citation omitted) (emphasis supplied). This test, also known as the effects test, is drawn from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).

#### 1. Purposeful Direction: Intentional Act & Harm in California

Here, there is no question that the SAC alleges intentional acts by Laird, vis-à-vis

Plaintiff and his device located in California in connection with Plaintiff's April 2025 visit. Further, the SAC alleges that the operation of the Tracking Software upon Website visitors and devices in California causes harm to the visitors that is sustained in California, where they are located. Moreover, the type of harm alleged in the SAC is of the kind that Laird would know would be suffered in California.

**2. Purposeful Direction: Express Aiming at California**

The key question before the Court is whether Laird "expressly aimed" at California by choosing to subject visitors to its Website known to be in California to the Tracking Software, including the depositing of third-party cookies on the devices of those visitors.

Two principles espoused in *Briskin*, and its progeny, should be central to the Court's analysis of the question. First, the depositing of "tracking software" on devices in a forum state, an "entry into the state of California by electronic means," causing the transmission of data relating to the device and its owner to support the depositing party's business practices, can establish express aiming at the state, as long as such action is not "random, fortuitous, or attenuated." 135 F.4th at 756-57. Second, a defendant's operation of an interactive website that is disseminated to a nationwide audience may entail express aiming at a particular forum state even where it does not target consumers in that state in a manner different from how it targets consumers elsewhere. *See id.*, at 757 ("Express aiming does not require differential targeting").

In *Briskin*, the defendant was found to have purposely directed its conduct toward California because the defendant was "alleged to target California consumers to extract, collect, maintain, distribute, and exploit for its own profit," where the defendant's "business model [was] to . . . obtain valuable personal data about California consumers for its own commercial gain." *Id.* at 755-56. The defendant "[knew] about its California consumer base, conduct[ed] its regular business in California, contact[ed] California residents, interact[ed] with them as an intermediary for its merchants, install[ed] its software onto their devices in California, and continue[d] to track their activities." *Id.* at 759. The Ninth Circuit rejected the defendant's argument that the defendant's conduct was

"mere happenstance arising from the California consumers' choice to do business with [the defendant]," because the defendant's "intentional activities constitute[d] express aiming toward California and its consumers to obtain and use their personal data for its own commercial gain." *Id.* at 756.

In *Briskin*, the Ninth Circuit expressly overruled the holding, set forth in *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020), that express aiming required a "forum-specific focus" or "differential targeting." *See Briskin*, 135 F.4th at 757-58. In particular, the *Briskin* Court held: "[R]equiring differential targeting would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state that injure that state's residents." *See id.* at 758. Therefore, "an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." *See id.* at 758 (cleaned up) (quotations omitted).

Ninth Circuit appellate and district court decisions handed down in *Briskin*'s aftermath make clear that operators running retail operations on nationally available interactive websites may be subject to personal jurisdiction in California under *Briskin's* key holdings. *See, e.g., Thomas v. Papa John's Int'l, Inc.,* Nos. 24-3557, 24-3834, 2025 LX 192037, at *2-3 (9th Cir. June 18, 2025) ("Because Thomas also alleges that Papa John's uses its website to intentionally collect information that invades the privacy of users, knowing that any alleged harm will be suffered in California, the allegations satisfy the purposeful direction test."); *Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 LX 193021, at *2-3 (9th Cir. June 20, 2025) ("Defendants' website 'appeals to, and profits from, an audience in' California [(citing *Briskin*, 135 F. 4th, at 754 (quoting *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011)),] and is used to collect information intentionally from users, knowing that privacy harms will be suffered in California" (citing *Briskin*, 135 F. 4th, at 756)); *Hassid v. Alex and Ani, LLC*, 816 F.

Supp. 3d 1196, 1204 (C.D. Cal. 2026) ("Plaintiff would not have suffered an invasion of privacy had defendant not contracted with TikTok to install TikTok Software on its Website to collect and send plaintiff's private information to TikTok in California."); *Lewis v. Magnite, Inc.,* No. 2:25-cv-03448-MWC-SSCx, 2025 LX 509487, at *21-22 (C.D. Cal. Dec. 4, 2025); *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1025-26 (C.D. Cal. 2025) ("*Six Flags*") ("Plaintiff alleges Defendant's Website is an interactive website [ . . . ] which sells amusement park tickets targeted at California residents, and Defendant's Website expressly refers to California residents and California privacy laws [ . . . ] The FAC therefore sufficiently alleges Defendant expressly aimed its conduct at California to satisfy the second prong of the *Calder* effects test because Defendant's alleged conduct was 'targeted at a plaintiff whom the defendant kn[ew] to be a resident of the forum state' and the 'geographic scope' of Defendant's 'commercial ambitions' for its Website extended to California residents.") (citations omitted)*; Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 LX 273067, at *18-23 (N.D. Cal. July 14, 2025) ("Gabrielli alleges that Motorola knowingly collected the data of California residents because its website allegedly collected IP addresses and geolocation data that revealed where the users resided."); *Martinez v. Choose Your Horizon, Inc.,* No. 24-cv-02798-LB, 2025 LX 367073, at *11-14 (N.D. Cal. Aug. 31, 2025).

The allegations here are analogous to those identified in the above-cited cases. Here, Laird installed and used the Tracking Software on the Website with knowledge that visitors ***in California*** were being subjected to it – and chose not to prevent that from happening, something it was able to do. Further, the SAC alleges that this was done as part of Laird's "business model" – in other words, for the purpose of engaging in targeted advertising directed at these California visitors by transmitting their data to advertising and analytics platforms. This activity must be viewed in the context of the Website's content. First, the Website appeals to individuals browsing the internet from California, because it allows them to retrieve over 1,000 retail locations in the state selling Laird's products. Second, Laird's name is associated with Laird Hamilton, its co-founder, who, through webpages on

the internet is associated with California, due to his history of surfing in the state, as well as his residence and activities here. This association, which must be known to Laird, means that the Laird brand, and the Website, is particularly attractive to internet browsers in California. Further, that the Website has a specific privacy policy page for California visitors confirms Laird's knowledge of and interest in attracting California visitors to the Website. These facts render it unreasonable to find the operation of the Tracking Software on California visitors to the Website is "random, fortuitous, or attenuated."

Relevant to the Court's determination of "express aiming" is also the question of whether a defendant "anticipated, desired, and achieved a substantial California viewer base." *Evox Prods., LLC v. Lemberg Law LLC*, No. CV 21-7875 PA (AGRx), 2022 U.S. Dist. LEXIS 96897, at *18-21 (C.D. Cal. Feb. 15, 2022) (citing *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1229-30 (9th Cir. 2011)). The contents of the Website, as well as Hamilton Laird's well-established connection with the surf scene in California, make clear that Laird anticipated and desired individuals in California to visit its Website and buy its products either online or at retail locations.

Accordingly, the Court should find that Laird's conduct underlining Plaintiff's claims in this action was expressly aimed at California.

**3. Minimum Contacts: The Controversy Relates to or Arises Out of Laird's Contacts with California.**

Just as with Briskin's claim against Shopify, Plaintiff's claim against Laird, for subjecting him to the Tracking Software, arises out of "[Laird]'s contact with [his] device, which [Laird] allegedly knew was in California." *Briskin*, 135 F.4th, at 760. Here, the SAC alleges that Laird had at the very least constructive knowledge that Plaintiff was in California at the time of the tortious conduct (the Website visit). Moreover, as alleged in the SAC, Laird had the capacity to exclude visitors from California from use of the Tracking Software, but chose not to. Further, just as with Briskin's claim against Shopify, Plaintiff's § 638.51 claim is related to Laird's California conduct because Plaintiff has alleged injury of the type that would tend to be caused by the "extracti[on] of personal

data" from devices in California. *Briskin*, 135 F.4th, at 760. In other words, Plaintiff's injury – the invasion of his privacy and the destruction of his anonymity while browsing the internet – is of the type that would likely be caused by the capturing data that is located on his device.

**4. Minimum Contacts: Reasonableness of Exercising Personal Jurisdiction over Laird in California.**

The only basis upon which Laird claims that the exercise of personal jurisdiction over it in this state is ***unreasonable*** is that the website "does not specifically target" California. *See* Def.'s Mot. to Dismiss SAC ("Mot."), ECF No. 37, at 21:5-9. The notion that it would such exercise would be unfair fails to withstand basic scrutiny in light of the numerous contacts between Laird and California identified in the SAC. Laird trades off of the name of its co-founder, Laird Hamilton, who is widely associated with California, Malibu and surfing.

**B. Plaintiff has Article III Standing to Bring His Claims.**

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). Here, contrary to Laird's assertion, Plaintiff has shown, through his allegations, that he has suffered an injury in fact meeting the requirements of *TransUnion*.

Here, as outlined *supra*, the SAC alleges that Laird's subjection of Plaintiff to the Tracking Software both violated his privacy and caused him particularized, concrete injuries. The injuries include loss of control of his identifying information; the recording of the webpages he visited, including this data's use to create behavioral profiles of him; the tracking of his ongoing internet activity; the diminution of the economic value of such data to Plaintiff; and the exposure to the likely use of the data for purposes far removed from the circumstances of Plaintiff's visit to the Website.

Plaintiff relies on arguments he made previously in opposition to Laird's Motion to Dismiss the FAC (ECF No. 20), largely rejected by the Court in the FAC Order. *See* Pltf's. Oppo. to Mot. to Dismiss FAC (ECF No. 25), at 16:22-19:25 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019); *Facebook*, 956 F.3d at 598-599; *Haleon US Inc.*, 815 F. Supp. 3d at 863-65; *Gabrielli v. Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *14, *16-*17 (N.D. Cal. Jul. 14, 2025); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023); *Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193, at *3 (N.D. Cal. Jan. 27, 2026); *Krzyzek v. Openx Techs., Inc.*, 817 F. Supp. 3d 857, 863-64 (N.D. Cal. 2026); *Alex & Ani, LLC*, 816 F. Supp. 3d at 1201-02; *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744, at *2, *22 (N.D. Cal. Nov. 24, 2025); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025); *Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908, at *18-21 (C.D. Cal. Mar. 25, 2026); *Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303, at *14-16 (S.D. Cal. Mar. 12, 2026); *Six Flags*, 812 F. Supp. 3d at 1033; *Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024).

The FAC Order held that the FAC had failed to sufficiently allege facts to establish Plaintiff's standing to bring his claims because he had failed to allege facts analogous to common-law privacy torts such as intrusion upon seclusion. ECF No. 33. Specifically, the Court held that such torts are actionable only where an intrusion upon seclusion is deemed to be "highly offensive." *Id.*, at 9:8-18 (citing *Popa*, 153 F.4th at 791; Rest. (Second) of Torts §§ 652B, 652D). The Court held further that "[a] s such, to establish a concrete injury, a plaintiff must show not only that personal information was disclosed, but that the information was in some way 'embarrassing, invasive, or otherwise private.'" ECF No. 33, at 9:16-18 (quoting *Popa*, 153 F.4th at 791). The Court noted the following about the allegations of the FAC:

> [T]he FAC includes no information about what specifically Plaintiff did on Defendant's website or what specific information

> the website captured from him. Plaintiff's allegation that the website took his "routing, addressing, and signaling information" is conclusory, parroting the language of the statutory definition of a "trap and trace device" without providing any detail about Plaintiff's actual injury. [Citations omitted]. Meanwhile, absent further factual pleading, Plaintiff's allegation that the website tracked the pages that he accessed does not show any "highly offensive" intrusion on a protectable privacy interest. For example, if Plaintiff did no more than access the website's homepage, it is not clear how public disclosure of this information could reveal any "embarrassing, invasive, or otherwise private" information about Plaintiff.

ECF No. 33, at 9:25 – 10:9 (quoting *Popa*, 153 F.4th at 791).

In his SAC, Plaintiff has addressed the deficiencies the Court found in the FAC. The SAC contains allegations explaining specifically the information collected from Plaintiff's device and browser that allowed data brokers LiveRamp and Acxiom to identify him, and track his internet browsing on a future basis. *See* SAC, ¶¶ 33-39. He has effectively identified the "routing, addressing, and signaling information" that was transmitted by the Tracking Software to third parties in a non-consensual manner by the Website. Further, the SAC alleges that the ongoing tracking of Plaintiff by, in particular, LiveRamp and Acxiom, asserted in the SAC, is itself highly offensive, because of its pervasive and extensive nature.

The SAC details the operation of the Acxiom and LiveRamp tracking software that operated on Plaintiff when he visited the Website in April 2025. *See id.*, ¶¶ 58-64. It alleges that "the pervasive and extensive tracking engaged in by such data brokers as Acxiom and LiveRamp have likely resulted in the collection of sensitive, personal or embarrassing information based on Plaintiff's internet activity since his April 2, 2025 visit to the Website." *Id.*, ¶ 75. Plaintiff submits that the very pervasive and extensive nature of

the tracking of him by data brokers Acxiom and LiveRamp caused by Laird renders it inevitable that "sensitive, personal and possibly embarrassing information about [him]" has been gathered by such parties. *Id.*, ¶ 44.

The SAC alleges that data brokers including Acxiom and LiveRamp "have extensive reach into hundreds of thousands of websites." *Id.* It explains that such data brokers "collect browsing data from millions of websites and combine it with information gathered from mobile applications, advertising networks, and commercial databases." *Id.*, ¶ 45. Specifically, the SAC alleges that Acxiom has a "vast database of personally identifiable information and marketing profiles," (*id.*, ¶ 58), meaning that it is present on websites across the internet; and it alleges that LiveRamp itself promotes that it is capable of identifying individuals to whom LiveRamp has assigned a "Ramp ID" across devices as they browse and interact with websites (*id.*, ¶ 64). The SAC further alleges with respect to LiveRamp that individuals' "RampID[s], and the data associated with [them, are] widely shared with dozens of ad tech partners so that all parties who pay for it can identify the user, and see the users' online habits." *Id.*, ¶ 63.

In short, the SAC explains that once these two data brokers identify an individual, as is alleged with respect to Plaintiff, their software will capture his activities across a significant portion of the internet. As the SAC notes, "in contemporary society, individuals conduct much of their lives – including handling their finances, their physical and mental health, their purchases, and their relationships – online." *Id.*, ¶ 44. Thus, the allegations of the SAC form a sufficient predicate for concluding that Plaintiff has alleged that there is a substantial likelihood that Acxiom or LiveRamp has collected – and included in a consumer profile of him for commercial exploitation – highly personal or confidential, and possibly embarrassing information about him.

Numerous decisions by district court judges in California cited in Plaintiff's opposition to the Motion to Dismiss the FAC, and here, support the finding of sufficient allegations of a concrete, particularized injury for purposes of Article III standing here. Those decisions did not require plaintiffs – at the outset of a case, before discovery had

proceeded – to identify specific personal, confidential or embarrassing information that had been collected as a result of third party tracking software on a website. Obtaining such information prior to discovery in a legal action one files would be exceedingly difficult. Data brokers conduct their commercial surveillance stealthily; otherwise, it would hardly be effective. Consumers should not be prohibited from filing data privacy claims in federal court when they are able to allege the way third party tracking software operates, and the extensiveness and pervasiveness of that operation, because they have not yet obtained access to files that third parties may have about them that contain personal, confidential or embarrassing information. They should not be required to have to speculate as to which website interactions they have had after a website visit in which they were subjected to tracking software were captured by the third parties operating the software.

**C. The SAC Sufficiently States Claims Against Laird.**

Plaintiff has sufficiently alleged that Laird violated § 638.51. None of Laird's arguments asserting that Plaintiff has failed to state a cause of action withstands basic scrutiny.

**1. The Tracking Software is a Trap and Trace Device.**

*a. Cal. Penal Code Section 638.51 Applies to Software & Websites*

Software or code running on websites that "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication" constitutes a trap and trace device under §§ 638.50-51. *See, e.g., Alex & Ani, LLC*, 2026 U.S. Dist. LEXIS 11238, at *4-7 (C.D. Cal. Jan. 20, 2026); *Casillas v. Six Flags Ent. Corp.*, 2025 U.S. Dist. LEXIS 260100, at *21-22 (C.D. Cal. Dec. 15, 2025); *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *39-42 (C.D. Cal. Dec. 4, 2025); *Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745, at *10-15 (N.D. Cal. Sep. 2, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075, 1093-1094 (N.D. Cal. July 18, 2025); *Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836, at *30-32 (N.D. Cal. July 14, 2025); *Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS

20076, at *8 (C.D. Cal. Feb. 3, 2025); *Conohan v. Rad Power Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246, at *16 (C.D. Cal. Apr. 3, 2025); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378, at *6-10 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930-931 (N.D. Cal. October 21, 2024); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076-1077 (C.D. Cal. July 25, 2024). This is because the plain wording of the sections is unambiguously broad, encompassing internet technology and software.

Moreover, the history of these statutory provisions establishes that the language used therein – particularly with respect to the definition of a "trap and trace device" – was enacted in 2015, and was copied from federal statutes that were intended by Congress to apply to the internet, and which courts have held to apply to software.

CIPA was enacted in 1967, including a provision (Cal. Penal Code § 631(a)) prohibiting eavesdropping. Cal. Penal Code §§ 630 *et seq*.

In 1986, Congress enacted the Electronic Communications Privacy Act, which includes a prohibition on the use of a trap and trace device "without first obtaining a court order under section 3123 of this title, or under the Foreign Intelligence Surveillance Act of 1978…". Pub. L. 99–508, title III, § 301(a), 100 Stat. 1868 (Oct. 21, 1986). In 2001, Congress, determining that the currently-existing definitions of pen registers and trap and trace were antiquated, modified them in the USA Patriot Act of 2001 so as to expressly include electronic communications beyond telephonic communications within their ambit. *See* Pub. L. No. 107-56, § 216, 115 Stat. 272 (2001). The legislative history of the Patriot Act establishes that the modifications were made to "ensure[ ] that the pen register and trap and trace provisions apply to facilities other than telephonic lines." 147 Cong. Rec. S10990-02, SI 1006, 2001 WL 1297566 (Oct. 25, 2001), also available at https://www.congress.gov/107/crec/2001/10/25/147/144/CREC-2001-10-25-pt1-PgS10990-2.pdf (last viewed 4/9/2026).

Nearly a decade after Congress revised the federal definitions of pen registers and trap and trace devices, the Trap and Trace law was enacted as Assembly Bill 929 on August

13, 2015. *See* https://legiscan.com/CA/bill/AB929/2015. It added to Chapter 1.5, Invasion of Privacy Cal. Penal Code §§ 638.50-51. The California Legislature was aware of the federal definitions when enacting §§ 638.50-51: In considering AB 929 in 2015, the California Assembly quoted directly from the federal definitions of pen registers and trap and trace devices enacted in the USA Patriot Act – in particular, their use of the words "dialing, routing, addressing, and signaling information" and their reference to "electronic communication." *See* Assemb. Com. Pub. Safety, Analysis of AB 929, at K (Apr. 7, 2015), available at: https://www.leginfo.ca.gov/pub/15-16/bill/asm/ab_0901-0950/ab_929_cfa_20150406_093935_asm_comm.html (last viewed 4/23/2026).

The definition of a "trap and trace device" set forth in § 638.50(c) adopts nearly identically the definition of "trap and trace device" used in applying federal privacy statutes, set forth in 18 U.S. Code § 3127(4). The federal definition reads:

> the term "trap and trace device" means a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information shall not include the contents of any communication; . . .

18 U.S. Code § 3127(4).

*b. The SAC Does Not Allege that the Tracking Software Transfers the "Contents" of Communications.*

First, the SAC alleges that the Tracking Software captured *technical, device-level identifying signals*—the kind of source-identifying signaling information the trap and trace statute directly addresses. Further, Courts applying § 638.50(c) recognize that technical identifiers are classic "addressing" information and are not "contents." *See, e.g., Greenley*, 684 F. Supp. 3d at 1050 (holding "a private company's surreptitiously embedded software" that "identifies consumers, gathers data, and correlates that data through unique

'fingerprinting'" can be a pen register); *Zarif v. Hwareh.com, Inc.* (S.D. Cal. 2025) 789 F. Supp. 3d 880, 898 (same); *Moody*, 742 F. Supp. 3d at 1076 ("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51.").

Under relevant caselaw, the fact that software captures the contents of visitors' communications with the website neither means that the software cannot *also* be identifying visitors so as to create liability under Penal Code § 638.51(a) for doing so. *See, e.g., In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1154-55 (N.D. Cal. 2025); ("[g]iven CIPA's purpose to protect Californians' privacy, it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications."); *Gliksman v. Healthline Media, LLC*, No. 24-cv-08650-AMO, 2026 LX 373511, at *15 (N.D. Cal. June 23, 2026) (same); *Haleon US Inc.*, 815 F. Supp. 3d at 872 (N.D. Cal. 2025) (same); *cf. Shahnaz Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 893-94, 896-99 (S.D. Cal. 2025) (denying a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) claims filed under Cal. Pen. Code §§ 631(a) and 638.51 based on a website's use of related software). Under these cases where a website operator like Laird deploys software that both captures identifying record information and search queries constituting the contents of a communication, and where this process involves the sharing of this information with third parties, a plaintiff may assert claims (1) under § 631(a) regarding the capturing of the contents of a communication, and (2) under § 638.51(a) for unauthorized devices to identify the source of a communication. The fact that a website may be capturing the content of a communication does not immunize the website operator for its use of device that without a party's consent identifies their identity.

**2. The SAC States a Claim Under CDAFA.**

At least one California district court has held that the operation of tracking software on a commercial website constitutes a violation of CDAFA. *See, e.g. Esparza v. Koll's, Inc.*, 723 F. Supp. 3d 934, 945 (S.D. Cal. 2024). In *Koll's*, the Court held that the plaintiff had established CDAFA's "without permission" requirement by alleging that the defendant had installed tracking and surveillance software without obtaining the plaintiff's prior consent. Further, the Court held that plaintiff had established damage or loss under Cal. Penal Code § 502(e) where he alleged that the defendant and the software provider "all profit from secretly exploiting their ability to identify anonymous individuals who have visited [the d]efendant's website" and that the software provider used the data it received to engage in targeted marketing for the defendant's benefit. *Id.*

**3. The SAC States a Claim For Intrusion Upon Seclusion.**

The SAC alleges that Plaintiff had an expectation of privacy in his interactions with the Website, which includes webpages that have health-related products. Plaintiff's choices of products might reveal sensitive and confidential facts about his life. Further, use of identifying data and the URLS of webpages about health products considered by Plaintiff to build a consumer profile on him and track him on an ongoing basis would be considered highly offensive to a reasonable person and an egregious breach of social norms.

**V. CONCLUSION**

For the reasons stated herein, the Court should deny in its entirety Defendant's Motion to Dismiss the First Amended Complaint.

DATED: August 5, 2026 **TAULER SMITH LLP**

By: */s/ J. Evan Shapiro*
J. Evan Shapiro, Esq.

*Attorneys for Plaintiff Lawrence Schallert*